Form No. TDF 62-03:5
(03/97 Edition)



**INDIVIDUAL COMPLAINT OF EMPLOYMENT DISCRIMINATION
WITH THE DEPARTMENT OF THE TREASURY**

**FOR OFFICE USE ONLY**

**DEPARTMENT CASE NUMBER**
02-2421T

**FILING DATE**
9/23/02

## Part I Complaint Identification

**1. Name (Last, First, Middle Initial)**
BILLY-LERA, BERNADETTE S.

**2. Telephone/Fax (Include Area Code)**
Home: 301-352-7977    Fax:
Work: 202-874-1785    Fax: 202-874-1808

**3. Present Home Address (You must notify the Department of any changes of address while complaint is pending, or your complaint may be dismissed)**
15910 ELF STONE CT
Street Address
BOWIE        MD        20716
City        State        Zip Code

**4. If you are a current or former employee of the Federal government, list your most recent title, series, and grade.**

Title        Series        Grade

**5. Name and Address of Organization Where You Work (If a Treasury Employee)**
INTERNAL REVENUE AGENT
Bureau
S:C:15:TI:EX:IIII:SBSE
Office and Organizational Component
950 L'ENFANT PLAZA S.S.W. /Promland
Street Address
WASHINGTON        DC        20024
City        State        Zip Code

**6. Employment Status in Relation to this Complaint:**
☐ Applicant  ☐ Probationary  ☒ Career/Career Conditional
☐ Former Employee
Date Left Treasury Employment
☐ Retired
Date of Retirement
☐ Other
Specify

**7. I certify that all of the statements made in this complaint are true, complete, and correct to the best of my knowledge and belief.**

Signature of Complainant or Attorney Representative        9/20/2002
        Date

## Part II Designation of Representative

**8.** You may represent yourself in this complaint or you may choose someone to represent you. Your representative does not have to be an attorney. You may change your designation of a representative at a later date, but you must notify the Department immediately in writing of any change, and you must include the same information requested in this Part.

"I hereby designate MARK LEEMON (Please Print Name) to serve as my representative during the course of this complaint. I understand that my representative is authorized to act on my behalf."

RECEIVED
SEP 23 2002
TREASURY COMPLAINT CENTER

**9. Representative's Mailing Address**
SPECIAL NEEDS LAW
Firm/Organization
11501 GEORGIA AVE. SUITE 305-307
Street Address
WHEATON        MD        20902
City        State        Zip Code

**10. Representative's Employer (If Federal Agency)**
SELF-EMPLOYED/SPECIAL NEEDS LAW

**11. Representative's Telephone/ Fax (Include Area Code)**
301-946-2112
Telephone        Fax

**12. Complainant's Signature**        9/20/02
        Date

1

## Part III Alleged Discriminatory Actions

**13. Name and Address of Treasury Bureau that took the action at issue (if different than Item 5.)**

INTERNAL REVENUE SERVICE / EEOD

Bureau _____ Office and Organizational Component

See Attachment

Street Address

City _____ State _____ Zip Code

**14. If your complaint involves nonselection for a position, please complete the following:**

Position Title _____ Series _____ Grade

Vacancy Announcement Number _____ Date Learned of Nonselection

**15. (A)** Describe the action taken against you that you believe was discriminatory; **(B)** Give the date when the action occurred, and the name of each person responsible for the action; **(C)** Describe how you were treated differently than other employees or applicants because of your race, color, religion, sex, national origin, age, disability, or in retaliation for your participation in the EEO process or opposition to alleged discriminatory practices; **(D)** Indicate what harm, if any, came to you in your work situation as a result of this action. *(You may but are not required to attach extra sheets.)*

SEE   ATTACHMENT   WITH   THIS   FORM

**16. Mark below ONLY the bases you believe were relied on to take the actions described in #15.**

- ☐ Race (State Race) _____
- ☐ Color (State Color) _____
- ☐ Religion (State Religion) _____
- ☐ Sex (Specify) _____
- ☐ National Origin (Specify) _____
- ☐ Age (Date of Birth) _____
- ☐ Physical Disability (Specify) _____
- ☐ Mental Disability (Specify) _____
- ☒ Retaliation Reprisal (Dates of Prior EEO Activity)  Approx. MAY 2001

**17. What remedial or corrective action are you seeking to resolve this matter?**

SEE   NARRATIVE   ATTACHED

## Part IV Counselor Contact

**18. When did the most recent discriminatory event occur?**
August   20   2002
Month   Day   Year

**19. When did you first become aware of the alleged discrimination?**   MAY   2002
Month   Day   Year

**20. When did you contact an EEO counselor?**
MAY   20   2002
Month   Day   Year

**21. Did you discuss all actions raised in Item 15 with an EEO counselor?** ☒ YES ☐ NO
(If no, explain on attached sheet)

**22. Name and telephone number of EEO counselor.**
SHERLANA WATKINS   202-283-4918
Name   Telephone No.

**23. When did you receive your "Notice of Right to File"?**
SEPT   6   2002
Month   Day   Year

**24. On this same matter, have you filed a grievance or appeal under:**

Negotiated grievance procedure ☐ YES ☒ NO
Agency grievance procedure ☐ YES ☒ NO
MSPB appeal procedure ☐ YES ☒ NO

If you filed a grievance or appeal, provide date filed, case number, and present status.

N/A

2

*Enclosure 1*
*Brockman, S.*

Bernadette Billy-Lera
950 L'Enfant Plaza S.SW
Washington, D.C. 20024
S:C:15:T1:SBSE:1111

Director Commission Complaint Unit
1111 Constitution Street
Washington, D.C. 20024
N:ADC:C

Att: Sharon Morris

Dear Ms. Morris:

My name is Bernadette Billy-Lera. I have been a Revenue Agent for the past 14 years, the last 8 of which was at the GS 512/13 level. My experience includes serving in the National Office as a Program Analyst, where I interacted with Criminal Investigation, the Justice Department, and Chief Counsel. I also have significant experience auditing both domestic and international tax returns for large corporations, partnerships, sole proprietorships and individuals. I have always had very good working relationships with my peers and managers. However, recently I have become an object of hatred for a few people who were assigned for short periods to act as manager in my group.

For the last year and a half my working environment became one of mistrust. I am treated unfairly by my manager, Evelyn Stephens, who seeks every opportunity to harass and belittle me. The harassment and petty behavior on the part of Ms. Stephens started after I filed an EEO complaint against two acting managers, who have since gone back to their former positions. The harassment and petty behavior by Ms. Stephens is affecting my health and well being. During June 2001, I filed an EEO complaint that was not resolved on the lower level. I then filed my complaint with the Washington Regional Center that accepted my complaint.

This complaint to the Commissioner's Complaint Unit is separate from the EEO complaint I filed against the two acting managers and was not included in that EEO filing. The issues I bring before you concern retaliation by management (Ms. Stephens). I will appreciate if you can kindly investigate and resolve these issues on an expeditious basis, as the workplace /environment is becoming unbearable for me.

1. I had major surgery the second week of November, 2001. Prior to submitting my sick leave request, I informed Ms. Stephens that I would be out on sick leave at least until December 17, 2001. My manager did not reassign any of my cases. As a matter of fact, I worked on my own time e.g. weekend, nights to complete most of the cases in my inventory.

Due to the seriousness of my illness, the doctor suggested that I do not return to work until mid January 2002. On November 28, 2001, I called Ms. Stephens and left a VMS

*45*

message to ask about sick leave extension. She did not return my call until December 5, 2001.

When the phone rang my answering machine was on and she asked me to turn off the machine. Since I did not have the strength to turn the system off, she stated she will call back immediately and I must answer the phone. She did not want our conversation to be taped.

When she called back, she stated she went through a lot to get the information I needed to extend my leave. She also stated that she herself on leave. I then informed her that I already got the information I needed. She informed me the reason she called my home, which is very important, and was to discuss a case. She stated that it was very important that she had possession of the case immediately.

Even though Ms. Stephens was aware that I was very ill and was on official sick leave, she wanted me to take the case to the office or to have someone bring it to her. I was very upset about the whole ordeal, and sensing this she informed me that she was going to call me at a later time with a solution. I told her I would not be at home, as I was going to New York where my family could take care of me.

Although she had that information, she called my home on two other occasions, each time demanding the case. It appears that an arrangement was made between Ms. Stephens and the territory manager, Jeannie Fisher that Ms. Fisher should come to my home for the case because Ms. Fisher left messages on my answering machine. Since I was in New York, and had no access to my vault where the case was kept, I informed my attorney to call both Ms. Fisher and Ms. Stephens to stop the harassing calls to my home. They were both informed that prior to my surgery, I had given all my personal belongings, including my keys to the vault, to my sister for safekeeping. I informed them of that fact and my attorney advised them that as soon as I could get the keys from my sister, they would be notified. It is important to bear in mind that at this time, I was confined to bed following major surgery, and was on official sick leave.

On December 21, I called the office and left a message for Ms Fisher to come to my home for the case. I left two other messages and never received any responses. No one ever called me back about this "very important" case. Eventually, when I returned to work on Jan 14, 2002, I gave the case to Ms. Stephens. This was more than three weeks after I called and notified Ms. Stephens that she could send someone to pick up the case from my home.

2. Subsequently, I was given a case that had less than nine months on the statute. Even though the case could not be closed because it had a Service Center code over which I have no control, Ms. Stephens forced it in my inventory as of January 16, 2001. As of last week, the case still had the Service Center Code, which means I had no control over it. I therefore could not survey the case as Ms. Stephens recommended. Inspite of this, Ms. Stephens filed a memo in my EPF file pertaining to the case. Since there

46

is an audit trail on both ERCS and AIMS that control all tax returns to the groups, I have all the relevant documentation.

3. Ms. Stephens constantly harasses me for information pertaining to relocation expenses to the National Office that I incurred in January 1995. I gave my manager a memo pertaining to the subject, indicating I was in contact with someone from National Office regarding resolution of the matter, yet she always keeps harassing me for more and more information.

The three issues outlined above can be elaborated and I have information to support my claims. To date I am constantly harassed in the workplace. I have documented other harassment that endures almost on a daily basis.

Please free to contact me at anytime for the above matter. I thank you very much for your consideration and prompt attention in this matter. I can be reached at work at (202) 874-1785. I would rather be contacted at home and my home telephone number is (301) 352-7977. Thank you.

Regards,

Bernadette Billy-Lera

Lera B
Enclosure 6
RECEIVED   6/20/02   BBL

**Internal Revenue Service**
**MEMORANDUM**

to:   Bernadette Billy-Lera, GS 13 Revenue Agent

date:   June 5, 2002

from:   Evelyn M. Stephens, Group Manager S:C:15: Terr.1

Subject:   Your Conduct and Behavior

Bernadette, this memorandum is written to capture my request for a case file that you refuse to give me on two occasions on June 4, 2002. Your behavior is a violation of the rule of conduct, not following the direction of your manager. The facts are summarized in the next paragraph.

We meet in the conference room to discuss a case that you planned to examine. During the discussion, you stated you received a Form 872 on another case, a 1998 return with a June 29, 2002 statute of limitation date. You mention this case, because I have been involved with monitoring the case statute date and audit activity. I had a lengthy conversation with the power of attorney that resulted in the extension being granted. I asked you two times to give me the case file and you refused. **The first time I asked for the file, you replied you would give it to me later in the day.** I responded that I had other things planned and wanted to document the activity record at that time. You then replied you had to stamp the Form 872 and do something else. I replied I would wait, **while I was waiting you stamped the Form 872, locked your files, picked up your water bottle and walked out of your cubicle.** I returned to my office on the third floor and observed you walking out of the Area Director area. I attempted to speak to you and you kept walking. I then went to the Vice-President of Chapter 83, Carl Tenny, and asked if he would accompany me to request the case file again. I briefed him of the issue during our travel period to the PROM level. When we arrived at your cubicle you were not there. We waited approximately 23 minutes for your return. When you returned, I asked you again for the case file to document the case activity record on the short statute case. **You refused to give me the file a second time.** You replied, " I do not come to work to be harassed". Carl attempted to say something to you and you responded you would bring the case to me in fifteen minutes. I left your cubicle and returned to my office. I advised the group secretary to bring me the case files as soon as you deliver it to me. You delivered the case to me approximately 2:20 P.M.

Bernadette this type of conduct and behavior is inexcusable and must be addressed. This is not the first time I have asked you for a case file and you did not provide as requested. Failure to follow the direction of your manager is a violation of the rules of conduct. If you have any questions on this memorandum or wish to discuss let me know.

This memorandum will be filed in your Employee Personnel Folder.

CC: Jeannie Fisher, Territory manager
    Jack Gregory, NTEU President Chapter 83

*Lera, B*
*Enclosure 8*

**Billy-Lera Bernadette**

| | |
|---|---|
| From: | Stephens Evelyn M |
| Sent: | Thursday, June 20, 2002 4:16 PM |
| To: | Billy-Lera Bernadette |
| Subject: | RE: Travel Authorization & Previous Close Return (Case) |

Evelyn:

This case was never discussed. You asked me for the case file on May 15, 2002 and did not inform me that you were doing a review. I asked you why you needed the casefile and you did not respond.

Bernadette,
We discussed the case in your cubicle. I received the case file for review and prepare documentation of my review which I have given you. Please refer to that feedback and respond to the questions asked.

*Evelyn M. Stephens*
*International Manager 1111/2111*
*202-874-1683*

-----Original Message-----
From:     Billy-Lera Bernadette
Sent:     Thursday, June 20, 2002 11:28 AM
To:       Stephens Evelyn M
Subject:  FW: Travel Authorization & Previous Close Return (Case)

-----Original Message-----
From:     Stephens Evelyn M
Sent:     Thursday, June 13, 2002 4:44 PM
To:       Billy-Lera Bernadette
Subject:  RE: Travel Authorization & Previous Close Return (Case)

Evelyn:
The travel office should be aware of my plans to travel because it was submitted to you since May 8, 2002 over five weeks ago, prior to you asking for justification. As a field Agent all my audits or field work are conducted on site examining all the books and records in accordance with the manual.
What type of justification do I need to supply to you?. What are the procedures for justification and where can I find them. On June 4, 2002 without discussion you told me to close the case "No Change " when the two prior years were closed "change no change"

Bernie,
How does the travel office know you have travel planned? Your travel request was pending justification that the audit should be conducted and I have not received that to approve the travel.

*Evelyn M. Stephens*
*International Manager 1111/2111*
*202-874-1683*

-----Original Message-----
From:     Billy-Lera Bernadette
Sent:     Thursday, June 13, 2002 4:03 PM
To:       Stephens Evelyn M
Subject:  FW: Travel Authorization & Previous Close Return (Case)

-----Original Message-----
From:     Stephens Evelyn M

1

*57*

Sent:        Thursday, June 13, 2002 3:01 PM
To:          Billy-Lera Bernadette
Subject:     RE: Travel Authorization & Previous Close Return (Case)

Evelyn: In regards to my travel to Canada next week I indicated to you that the case was closed "change no change" with a signed agreed report for the two previous years by the Rep.
Per your review you will receive a written response next week.
My travel request given to you on May 8, 2002, do I notify the travel office of my cancelled trip, since you requested that the case be closed "no change"?

Bernie, I called you and left a message a few minutes ago.

The discussion this week via returned call had to do with travel in late April or early May that I was reporting on in my monthly travel report. I called to see if you had submitted your travel voucher for your last audit expenses. This had nothing to do with your schedule audit in Canada, to my knowledge. Please advise, if I am incorrect.

In regards to your planned audit in Canada this month, I reviewed the case scheduled this month as part of your inventory/workload review that presented several questions. I provided you with my review and questions, I have not received a response to the question or the case back to support an audit of this year return. You examined the prior years that resulted in a 'No Change' and there was nothing in the file to justify a follow-up audit. This is what I recall, you have the case and my review notes.

If you have any additional questions or need to discuss further, please see me.

*Evelyn M. Stephens*
*International Manager 1111/2111*
*202-874-1683*

> -----Original Message-----
> From:        Billy-Lera Bernadette
> Sent:        Thursday, June 13, 2002 2:11 PM
> To: Stephens Evelyn M
> Subject:     FW:

> -----Original Message-----
> From:        Stephens Evelyn M
> Sent:        Tuesday, June 11, 2002 11:27 AM
> To: Billy-Lera Bernadette
> Subject:     RE:

Evelyn: I got your message and returned your call on that same day. We briefly discussed my prior travel for this quarter.
Could you please update me on status of my travel request to Canada given to you on 5/8/02 for travel on 6/17/02? Since you requested that I close that case "no change " and not travel to the audit should I inform the travel office, please advice?

Bernie,
I left you a voice message this morning, please get back to me on the call. Thanks for the information.

*Evelyn M. Stephens*
*International Manager 1111/2111*
*202-874-1683*

> -----Original Message-----
> From:        Billy-Lera Bernadette
> Sent:        Tuesday, June 11, 2002 11:14 AM
> To:          Payton Linda B
> Cc:          Stephens Evelyn M
> Subject:

2

*58*

*Labor, B.*
*Enclosure 10*

To: Evelyn Stephens, Group Manager, Group 1111

From: Bernadette Billy-Lera, Revenue Agent, Group 1111    *Bernadette Billy-Lera*

Date: March 14, 2002

Ref: Annual Rating - Oral conversation

Per your oral conversation on the above topic you told me that you had already prepared my annual rating and it was awaiting the Territory Manager, Jeannie Fisher's approval. You also asked me for a self-assessment for the rating period.

Since the annual rating was already completed, at this time I think it is pointless giving you an input of a self-assessment

If you have any questions pertaining to the above do not hesitate to call me. Thank you.



Received
Internal Revenue Service
SB SE Compliance

MAR 1 5 2002

Area 15, Washington
Territory 1.

*66*

P.02

Plata met RCA in conference room Phx
Deliver IVL review

● Meeting w/ Bernadette Billy-Dra

Robert Nesley
Discussed Outstanding Moving expense

Discussed travel trip to SF, CA
D C to SF
Sunday —        22.43 auto transporta.
                       3
                25.43
                34.50   M + I E
                59.93

Saturday
        Taxi    35.00 airport
                45.75
                80.75
                55.00   Taxi
               135.75
                34.50   M + I E
               170.25

77

```
ACTION: R TABLEID: TADV USERID: BDKN
            *** TRAVEL ADVANCE INQUIRY SCREEN ***
KEY IS EMPLOYEE CODE, TRAVEL TYPE, TRAVEL ORDER, ADVANCE NUMBER, DOCUMENT ID
EMPLOYEE CODE: ▮▮▮▮▮▮▮▮                          TRAVEL TYPE: 3 - Relocation
EMPLOYEE NAME: BERNADETTE BILLY LERA
PREV SUMMED BAL:            0.00
CURRENT BALANCE:        2,189.80               LAST ACTIVITY DATE: 1997 01 27
```

| TRAVEL ORDER | ADVANCE NUMBER | DOCUMENT ID/LINE | TRANSACTION AMOUNT | TRAVEL ORDER BALANCE |
|---|---|---|---|---|
| 01- TO 0530R11    001    RV 05300R11A    001 | | | -3,164.24 | |
| DATE: 1995 11 30 | | | | |
| 02- TO 0530R11    001    RV 05300R11B    001 | | | -3,760.76 | |
| DATE: 1997 01 27 | | | | |
| 03- TO 0530R11    001       TO 0530R11 | | | 6,925.00 | |
| DATE: 1995 02 17 | | | | |
| 04- TO 0530R11    002    RV 05300R11B    002 | | | -2,200.20 | |
| DATE: 1997 01 27 | | | | |
| 05- TO 0530R11    002       TO 0530R11 | | | 4,390.00 | 2,189.80 |
| DATE: 1995 03 03 | | | | |

1.> Move from NY to Washington D.C.

2.> Descrepancy

11/14/00
Appeal
Channel Over

Document Lnoff

(304) 256-5715

moving

11-14-00
IRS asked for an
appeal

78

**Stephens Evelyn M**

| | |
|---|---|
| **From:** | Fisher Jeannie B |
| **Sent:** | Tuesday, September 04, 2001 5:57 PM |
| **To:** | Mosley Robert; Stephens Evelyn M |
| **Subject:** | RE: TRAVEL AND MOVING VOUCHERS |

Folks, while it is important to be professional in all contacts, it is often more of a challenge with some of our employees. Let's put this behind and move forward. The bottom line is that we follow the travel handbook and IRM guidelines for all employees. Travel at the convenience/preference of the employee and/or for personal reasons are not part of the reimbursable expenses paid by the Gov't.

Evelyn, thank you for your assistance and taking actions as her manager. I do not plan on issuing a general memo to all employees unless there is some common practice that I am unaware of that impacts the entire territory. I believe it is best to address individual issues on an individual basis and I have no reason to think that this is a common practice among other employees. If you believe otherwise, please advise.
Jeannie

-----Original Message-----
| | |
|---|---|
| **From:** | Mosley Robert |
| **Sent:** | Tuesday, September 04, 2001 3:26 PM |
| **To:** | Stephens Evelyn M |
| **Cc:** | Fisher Jeannie B |
| **Subject:** | RE: TRAVEL AND MOVING VOUCHERS |

Thanks for your assistance. Your talk worked. Carl/Union is working with her now to compose the appropriate voucher. Robert

-----Original Message-----
| | |
|---|---|
| **From:** | **Stephens Evelyn M** |
| **Sent:** | Tuesday, September 04, 2001 1:14 PM |
| **To:** | Mosley Robert; Fisher Jeannie B |
| **Subject:** | RE: TRAVEL AND MOVING VOUCHERS |

Robert,
After you left, I advised Bernadette to correct her voucher to the cost directly to CA. I also suggested she figure the cost to fly to CA directly from Washington on Monday and return on Friday to Washington. I explained to her that even though we do not do audit of travel voucher when we review them that we (managers) are concurring with the expenses when we approve.

On another note, I suggested she try to keep a professional tone and behavior when speaking with managers and others in the office, as I said to you on my way out of the area. I told Bernadette that she should try to communicate and get along with management and resolve issues at the lowest level. I further advised her for the future to travel direct to her audits unless she has approval to do otherwise. Employee Satisfaction is one of the critical elements that will be rated.

I am sorry you had the experience. I will issue a memo, unless, Jeannie issues one to all R/A's regarding travel.


*Evelyn M. Stephens*
*International Acting Manager 1111/2111*
*202-874-1683*

-----Original Message-----
| | |
|---|---|
| **From:** | Mosley Robert |
| **Sent:** | Tuesday, September 04, 2001 11:48 AM |
| **To:** | Fisher Jeannie B |

1

*80*

**Stephens Evelyn M**

|  |  |
|---|---|
| **m:** | Stephens Evelyn M |
| | Monday, October 01, 2001 12:30 PM |
| **To:** | Fisher Jeannie B |
| **Cc:** | Billy-Lera Bernadette |
| **Subject:** | Travel Issue |

Jeannie,

I regret to have to involve you with a travel issue that I think is simple but complex in terms of past practices and prior approval. I am elevating this situation to you as information and input if you deem necessary.

Bernadette has three vouchers (1 TRAS, 2 manual) that's pending approval at date. Her previous manager had some questions on one of the voucher (TRAS Voucher) and did not approve. I have asked her to remove some expenses (M.& IE for the period in N.Y.) and she has agreed. After the questionable expenses are removed, I will approve that voucher. The others I have asked for a written explanation why she traveled to and New York for business to her audits.

Bernadette is a seasoned and experienced Revenue Agent that has been traveling from New York to some of her audit sites for some time. Most of the travel from New York was for west coast and/or overseas travel. Bernadette has advised me that a previous manager, John Hawley, O.K.ed her traveling from New York. Her last manager approved her vouchers in the same manner. Her reasons for traveling from New York instead of Washington/National or BWI was based on cost and travel accommodations, it was cheaper to travel from New York. In addition, due to problems experienced with connecting flights, she flew direct from New York.

I have discussed with Bernadette travel guidelines and advised her to fly from the Washington area on workdays unless approved is granted otherwise. When I review a voucher I look at ALL cost, the M &IE, time, and airline cost in determining if it's cheaper. The R/A's time is very key in this review, per my understanding.

The manual voucher will be approved based on my understanding of the travel guidelines, past practice and approval.

Please advise if think I am not handling this correct.

*Evelyn M. Stephens*
*International Acting Manager 1111/2111*
*202-874-1683*

81

**Internal Revenue Service**
**MEMORANDUM**

to:     Bernadette Billy-Lera
        Revenue Agent

date:   October 1, 2001

from:   Evelyn M. Stephens,
        Acting Manager 1111

Subject:   Performance of Travel

Bernadette, this memorandum is written to recap our discussion of expenses claimed on a TRAS voucher for the periods August 5-11, 2001, and two manual vouchers for the periods July 19 through August 3, 2001, and August 19-31, 2001. When you make the discussed changes to these vouchers, I will approve them.

The main issue discussed concerned you flying out of New York directly to San Francisco and other audit locations instead of the Washington D.C area. Your tax home is Bowie, MD and business office is Washington D.C., which means you, should be flying from these areas directly to your audits. You stated you chose to fly out of New York JFK mainly because of the direct fly service and arrival and departure times in and out of San Francisco.

IRM 1763 section 410 provides general guidelines for scheduling travel and section 431 provides general guidelines on common carrier Service. Please reframe from using the previous practice of flying out of New York instead of local airports. If you have a situation that requires you to fly different than the travel guidelines, please get manager approval.

If you have any questions on this memorandum or need to discuss the subject further please let me know.

82

Jeanette Kelly-Pena         California trip
August 19 - 31, 2001

August 19, Tuesday 3:30 pm leaved DC to N.Y.

August 20, Monday 1310 noon leave N.Y. to LA
LA to Honolulu    Honolulu 7:11

Why did't you leave NY around 9AM?
or
leave DC @ ~~8AM~~ 8 Am

August 29
Wednesday    12 noon leave Honolulu to SF

8/30  L SF   to NY   why

Why not fly back to Washington

83

- Travel Vouchers — England trip
July 19 August 3, 2001
Expenses 7/19/2001

Thursday 7/19/2001 Taxi to Brooklyn — $35.00
" " JFK — 30.00
Airfare to NY 93.00
7/20 Taxi to JFK — 30.00

8/2 Taxi to Brooklyn — 30.00
" " Oh Studio — 35.00

?? M I & E on 7/19 & 8/3/00

Travel date 7/19 or 7/20 — not ~~both~~
both

???  same thing on the return — 8/2
full day travel (No expenses for
M I & E on 8/3

It appears the
$216.50 receipt
exclude food cost included (&) the
lodging.

136
×3
405
35
175  lodging

84

**MEMORANDAUM**

Date: October 1, 2001

To: Evelyn Stephens, Acting Group Manager, Group 1111

From: Bernadette Billy-Lera, Revenue Agent, Group 1111

Ref.: Travel Vouchers dated 8/19/2001 – 8/31/2000 & 7/19/2001 –8/3/2001

Per our discussion pertaining to the travel voucher dated 7/19/200 to 8/3/2000 to London, United Kingdom the following applies:

- Due to reasonable accommodations, and the time factor of the flights from New York City, this is the route I usually take travelling to the United Kingdom. Travel to London taking this route was always approved on prior vouchers.

- Travel dated 8/19/2001 – 8/31/2001 from Washington to Honolulu the following

- Honolulu is in the Pacific Time zone, 6 hours behind Eastern Standard Time. San Francisco is 3 hours behind Eastern Standard Time. Per Sato travel I was told that all flights from Honolulu to San Francisco does not leave until noon. Upon my arrival in San Francisco 7: 49p.m. (San Francisco Time) it was necessary to spend the night in San Francisco instead of travelling to my POD.

*85*

**UNSWORN STATEMENT:** Evelyn Stephens

In complaint (TD-01-1139) the Complainant (Bernadette S. Billy-Lera) alleges that management retaliated against her because of her involvement in the EEO complaint process when management intentionally procrastinated approving her travel expenses, causing her government credit card to be suspended.

Please provide responses to the following questions:

1. Please state your (a) name, (b) grade and series, (c) position title, (d) length of time in position, and (e) your relationship to the Complainant.
**(a) Evelyn M. Stephens**
**(b) GS 14 512**
**(c) Supervisory Internal Revenue Agent**
**(d) I have been a manager since 1987. Relocated to Area 15, Territory 1, Group 1111/2111, January 14, 2002, as permanent manager in International.**
**(e) Group Manager**

2. Please state the length of time you have maintained the relationship described in question #1 with the Complainant.
**I was detailed to International as a group manager from July 29-November 13, 2001. I met Bernadette shortly after reporting to the area. I was observing another manager in the area conduct Inventory Validation List (IVL) reviews I was introduced to Bernadette, as her IVL review was being conducted. Very shortly after that there was a reorganization in the territory and Bernadette was assigned to my group. Bernadette went on sick leave in early November and I returned to my duty station. In late, November 2001, I was selected as the permanent manager of group with a reporting date of January 14, 2002. In summary, my relationship with Bernadette has been approximately six working months.**

3. Were you ever aware of the Complainant filing previous EEO complaints or involved in the EEO complaint process? Were you ever a named management official involved in prior EEO activities involving the Complainant? If so, please explain.
**(a) Yes. Bernadette told me she filed a complaint against Robert Mosley sometime shortly after I reported to the group. Subsequent to that Mary Wolf contacted me for information. In addition, an investigator came to my office, reviewed and copied documents from Bernadette's employee performance file (EPF) binder.**
**(b) No. To my knowledge, I was not named as an involved management official. The only EEO involvement I have had with Bernadette is stated in (a) above.**

*92*

4. According to the Complainant, three of her travel vouchers were delayed
   approval, causing her government credit card to be cancelled. The vouchers
   were: travel to London (July 19-August 3, 2001); travel to San Francisco
   (August 5-August 11, 2001) and travel incurred August 19-August 31, 2001.
   Please state your involvement with the approval or denial of each of the
   vouchers, if any.

   **Very shortly after I came to the area and territory for detail as acting
   manager, I met Bernadette and witness a discussion between her and
   acting manager, Robert Mosley about her outstanding relocation
   advance and her travel vouchers.**

   **The initial discussion started with a discussion of an outstanding
   relocation advance. Acting Manager, Robert Mosley had a report of an
   outstanding advance from a move in the nineties and asked Bernadette
   to repay the advance because of age. Per memory, Bernadette stated
   she had not received anything on the issue nor had she received any
   inquiries regarding the outstanding advance. Acting Manager Mosley
   told Bernadette she had to repay the advance and do whatever to
   resolve any decrepancies with her relocation expenses.**

   **The acting manager had not approved one or more submitted travel
   vouchers because of questions pertaining to travel expenses to and
   around New York City. I do not recall all the detail of their discussion
   but it resulted in voices being raised and exchanging of unprofessional
   tone and dialogue and he said "remove the expenses and I will
   approve". Acting Manager Robert Mosley left the conference room
   where the three of us met to review Bernadette's IVL and discuss the
   travel issue. I recall suggesting to Bernadette to review her vouchers
   and make the necessary correction.**

   **Bernadette was assigned to revenue agent group 1111, the group I was
   assigned as detail manager. Bernadette submitted the same vouchers
   with the same questionable expenses to me. Bernadette and I had
   discussions on the vouchers, she made some corrections and added
   some explanations and they were approved.**

   **There was no delay in approval after the travel vouchers were
   corrected and/or explanations added.**

   **See attached memorandums on the travel vouchers.**

5. Were you aware that the Complainant's government credit card privileges
   were suspended?
   **YES.**

6. Are there any existing policies, guidelines or IRM references that relate to travel voucher approval and reimbursement procedures? If so, please provide a copy of each and explain how each of the policies and/or guidelines applied to the Complainant.
**(a) Yes. IRM 1763-Travel Handbook. You can retrieve electronically from the Internet.**

7. To your knowledge, were the travel vouchers approved? If so, please indicate the date of approval.
**(a) Yes. The voucher was approved as follows:**

| Period | Signed by Bernadette | Approved by Manager |
|---|---|---|
| 7/19/01-8/3/01 | 10/11/01 | 10/11/01 |
| 8/05/1-8/11/01 | 9/14/01 | 10/01 |
| 8/19/01-8/31/01 | 9/10/01 | 10/5/01* |

**\*This voucher had questions and corrections. Notes I made during my review indicate there was some duplication of expenses and expenses that are not reimbursable. In addition, there was a year-end closing shut down. Manual travel voucher had to be received by September 7, 2001 for processing in September. See attached.**

8. Did management take any action against the Complainant for the suspension of the government credit card? If so, what actions were taken?
**NO.**

9. Please identify any other employees under your supervision whose travel voucher was questioned or approval delayed, if any. Please explain the circumstances.
**All revenue agents that travel for business submit their voucher and they are approved. If there are questions and/or corrections to be made, they make the correction and re-submitted for approval. From memory and group records, Bernadette is the only group member that did not make the correction to travel voucher and/or timely answered questions raised regarding her travel expenses.**
**All other group members have timely answered any question asked and/or corrected the voucher.**

10 Please identify any witnesses that have relevant information regarding the issues stated, or responses provided, in this complaint?
To my knowledge, the following persons have some knowledge of Bernadette's travel voucher and expenses claimed:
**Jeannie Fisher**
**Robert Mosley**
**Tes Tillotson and possible the secretary at the time, Shanell Brown.**

## UNSWORN STATEMENT

I DECLARE (OR CERTIFY, VERIFY, OR STATE) UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE AND CORRECT. I UNDERSTAND THAT THE INFORMATION I HAVE GIVEN IS NOT TO BE CONSIDERED CONFIDENTIAL AND THAT IT MAY BE SHOWN TO THE INTERESTED PARTIES.

EXECUTED ON THE *19* DAY OF *April*, 2002

DATE: *April 19 2002*
SIGNATURE: *Caelyn M. Stephen*

# SBSE Fiscal Year 2001 Year-End Closing Activities

The following information identifies key FY 2001 year-end closing activities and dates.

## Travel Advances and Vouchers

**Final Travel Reimbursement and Accounting System (TRAS) Disbursement for FY 2001:**  Travel advances and vouchers must be entered into TRAS and certified by the appropriate approving officials by **September 18, 2001** to ensure September processing.  Advances and vouchers can be entered and certified after this date; however the next disbursement will be October 1, 2001.  Travelers are strongly encouraged to input their travel expenses prior to this date to avoid busy signals resulting from heavy usage during this period.

**Manual Travel Vouchers:**  Manual travel vouchers for travel performed through August 31, 2001 must be received by the Beckley Finance Center (BFC) by **September 7, 2001** to ensure September processing of travel reimbursements.  Travel vouchers can be submitted after this date; however, the next disbursement is October 1, 2001.

**Manual Travel Advances:**  Travel advances must be received by the BFC by **September 14, 2001** to ensure September processing of travel checks.  The next disbursement is October 1, 2001.

## Relocation Advances and Vouchers

**Relocation Advances:**  Relocation advances must be received by the BFC by **September 14, 2001** to ensure September processing of relocation checks.  The next disbursement is October 1, 2001.

**Relocation Vouchers:**  Relocation vouchers must be received by the BFC by **September 17, 2001** to ensure September processing of reimbursement checks.  Relocation vouchers can be submitted after this date; however, the next disbursement is October 1, 2001.

## Purchase Cards

The final day cardholders can make purchases using their purchase card is **September 21, 2001.**  No purchases can be made from September 22nd through October 8th.  During this period, offices must contact their local SB/SE budget office for approval.  Only emergency purchases will be approved.  Cardholders may resume purchasing on October 9, 2001.

All cardholders must expedite the process for reconciling their September and October monthly billing statements in order to submit their statements timely to their local SB/SE budget office for year-end processing.

## Imprest Fund

The final day to issue a FY 2001 imprest fund draft is **September 26, 2001**. For requisitions that will be paid through the imprest fund, the related invoices must be submitted to the cashier by this date.

**SB/SE Lien Fee Imprest Funds** – The last day to issue convenience checks for lien fees is **September 26, 2001**. Cashiers can resume issuing convenience checks on October 1, 2001. Additional year-end instructions will be issued. All questions or issues should be referred to Darlene Dahl, Budget Analyst, on (716) 961-5535.

## Blanket Purchase Agreements (BPAs)

**Final FY 2001 BPA Calls**: **September 18, 2001** is the final day to place BPA calls. After this date, only emergency calls can be made. Authorized callers are responsible for ensuring that this information is submitted on the September BPA logs.

**August BPA Logs**: August and any prior period BPA logs must be received by the BFC by **September 7, 2001**.

**Final day to submit September BPA logs**: September BPA logs must be received by the BFC by September 24, 2001 to ensure all unpaid orders are recorded as obligations by **September 28, 2001**.

**Beckley Finance Center (BFC) Mailing Address and Fax Number:**

<div align="center">

Internal Revenue Service
Beckley Finance Center
110 N. Heber Street
Beckley, WV 25802-9002

Fax #: (304) 256-6033

</div>

For any questions regarding year-end activities, please contact your local SB/SE budget office.

## Activity Record of Examining Officer (continuation sheet)

### SUBSEQUENT CONTACTS

| Date | Person Contacted | Remarks, Notes, Action Taken |
|------|------------------|------------------------------|
| 7/31 | | upon viewing all documentation chore RTC elemeial claim refundable. Well close other year surveyed after assignment. |
| Aug. | | R/A closed 3 subsequent years (1997 - 2000) closed after assignment will close 1996 after securing POA from Rep |
| Sept | | R/A was on vacation, all stamped report |
| 10/3 | | R/A called Rep |
| 10/30 | | R/A asked for POA (2nd) |
| 11/6 | | R/A closed case file agreed |
| | | refund 7/29/61 |
| | | 3363 |
| | | 870 |
| | | Foreign Tax Credit $72,242. was not allowed. |
| | | 4760 — |
| | | EMPLOYEE "C" |
| ℝ 7/19 | | got call from Act Mgr. ██████ about status update, showed him of update I give 2 times. In fact case is closed. Responded to his respond R/A was in London. |

## Activity Record of Examining Officer (continuation sheet)

| Date | Person Contacted | Remarks, Notes, Action Taken |
|---|---|---|
| 6/25/01 | ▓▓▓▓ | Spoke to mgr. Act. Mosley about visiting Rep to conclude & get final inf on case when RIA is in London in July — RIA also left message for Rep — RIA needs an invitation letter to conclude audit. RIA left messages on 4/10 NY & London address. ▓▓▓▓ Rep returned RIA call, wants to correspond the ▓▓▓▓ RIA explained the issues to T/P. T/P will have Rep call RIA, & will send confirmation letter. RIA e-mailed T/P. RIA called T/P so that fax RIA send will be acknowledged |
| 6/28 | | RIA received acknowledgement from T/P dated 6/28 on 7/2/01, through E-mail from T/P, RIA responded to T/P through E-mail. |
| 7/2 | EMPLOYEE "C" ▓▓▓▓ | RIA discussed case with Act. Mgr. 2nd time that case is not updated to AA statute case is a claim RIA gave Mosley case file and P534 8 to update statute. |
| 7/10 | | RIA received case in mailbox from Act. Mgr. |
| 7/24 | | RIA did IDRS on case file |
| 7/25 | | While in London RIA went to Rep to conclude case. A IDR was given to Rep |
| 7/31 | | RIA gave Rep a report 1st Rep on detail got another Rep incl a new POA |
| 8/1 | | Rep stated will agree to report when signed report 7/31 RIA incl updated r.a.r. |

## Examination Workpapers

| Examination Procedures and Conclusions | | | Adjustments | | Workpapers Index |
|---|---|---|---|---|---|
| Method of accounting: ☒ Cash ☐ Accrual ☐ Other (explain) | | | Years | Amount | |

was advised of the examination process & appeal rights. Pub 1 & Notices 1783 were mailed to the TP. Notice 609 was also mailed. No repetitive audits. RA received POA

TP was not audited before. Rep did no sent the documentation nor explained the hypo tax to the Taxs withheld from TP's salary TP is a US citizen who resides in London. TP is employed with Banvini Trust as a Banker during the period audit. TP owns a condo in Mendocito CA | | | | | B-1

All TR's prior & subsequent were filed. TR also filed all required W-2 etc for his employees ...

All income was reported. The claim filed ensures taxes W/H from salary. RA vened the W-2 and compared the statement from Banker's Trust to ensure the proper amount of income was reported.

N/A

N/A

110

i9435 T

,986    Examiner  B. Belly-Rera,  Page 2

Reviewer

| Examination Procedures and Conclusions | Adjustments | | Workpaper Index |
|---|---|---|---|
| | Year | Amount | |

Per Sch E, Rep deducted expenses that were duplicated. Rep also included accounts which were not pertaining to this category. The adjustments were made per IRC §162 & IRC 61.  Although the changes were made there was no effect to the income reported. 1996 R

Cat. No. 4156GX    *U.S. GPO: 1994-379-561

Department of the Treasury — Internal Revenue Service

/11

**Form 3363**
Rev. March 1982

Department of the Treasury - Internal Revenue Service
## Acceptance of Proposed Disallowance of Claim
### for Refund or Credit

| Year or Period | Date Claim Filed | Kind of Tax | Amount of Claim | Amount of Claim Allowed | Amount of Claim Disallowed |
|---|---|---|---|---|---|
| DEC.31, 1996 | NOV. 15, 1998 | INCOME | $108,869.00 | **$108,869.00 | **$0 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

I accept the proposal of the Internal Revenue Service to disallow the claim(s) to the extent described above. This means only that I do not want the Service to consider the claim(s). It does not waive my rights to file suit on the disallowance.

** THE AMOUNT OF THE CLAIM ALLOWED IS THE ORIGINAL AMOUNT OF THE CLAIM ALLOWED LESS THE PENALITIES FOR FAILURE TO FILE TIMELY, SEC.6651(a)(1). INTEREST WILL BE CALCULATED PER SERVICE CENTER.

Name(s), SSN or EIN, and address of taxpayer(s)(Number, Street, City or Town, State, ZIP)

EMPLOYEE "D"

If you file this waiver for a joint return, both you and your spouse must sign the original and duplicate of this form. Sign your name exactly as it appears on the return. If you are acting under power of attorney for your spouse, you may sign as agent for him or her.

For an agent or attorney acting under a power of attorney, a power of attorney must be sent with this form if not previously filed.

For a partnership with excise or employment tax liability, all partners must sign. However, one partner may sign with appropriate evidence of authorization to act for the partnership.

For a person acting in a fiduciary capacity (executor, administrator, trustee), file Form 56, Notice Concerning Fiduciary Relationship, with this form if not previously filed.

For a corporation, enter the name of corporation followed by the signature and title of the officer(s) authorized to sign.

Your signature _____ (Date signed)

Spouses Signature if a Joint Return Was Filed _____ (Date signed)

Taxpayer's Representative Sign Here _____ 3 July 2001 (Date signed)

Partnership/ Corporate Name

Partners Corporate Officers Sign Here

_____
(Title) _____ (Date Signed)

_____
(Title) _____ (Date Signed)

Form 3363 (Rev. 3-82)

112

**Form 870**
(Rev March 1992)

### Department of the Treasury-Internal Revenue Service
# Waiver of Restrictions on Assessment and Collection of Deficiency In Tax and Acceptance of Overassessment

Date Received by
Internal Revenue Service

EMPLOYEE "D"

Social security or employer
identification number

### Increase in Tax and Penalties

| Tax Year Ended | Amount of Tax | Penalty |
|---|---|---|
| DEC. 31, 1996 12 | $188,869.00 ** | ** LESS IRC SEC. 6651(a)(1) |
| | | |
| | | |
| | | |

### Decrease in Tax and Penalties

| Tax Year Ended | Amount of Tax | Penalty |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

(For any remarks, see back of form)

**General Information**

If you consent to the assessment of the deficiencies shown in this waiver, please sign and return the form in order to limit any interest charge and expedite the adjustment to your account. Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are so entitled. It will not prevent us from later determining, if necessary, that you owe additional tax; nor extend the time provided by law for either action.

We have agreements with State tax agencies under which information about Federal tax, including increase or decreases, is exchanged with the States. If this change affects the amount of your State income tax, you should file the required State form.

If you later file a claim and the Service disallows it, you may file suit for refund in a district court or in the United States Claims Court, but you may not file a petition with the United States Tax Court.

We will consider this waiver a valid claim for refund or credit of any overpayment due you resulting from any decrease in tax and penalties shown above, provided you sign and file it within the period established by law for making such claim.

**Who Must Sign**

If you filed jointly, both you and your spouse must sign. If this waiver is for a corporation, it should be signed with the corporation name, followed by the signatures and titles of the corporate officers authorized to sign. An attorney or agent may sign the waiver provided such action is specifically authorized by a power of attorney which, if not previously filed, must accompany this form.

If this waiver is signed by a person acting in a fiduciary capacity (for example, an executor, administrator, or a trustee) Form 56, Notice Concerning Fiduciary Relationship, should, unless previously filed, accompany this form

### Consent to Assessment and Collection

I consent to the immediate assessment and collection of any deficiencies (increase in tax and penalties) and accept any overassessment (decrease in tax and penalties) shown above, plus any interest provided by law. I understand that by signing this waiver, I will not be able to contest these years in the United States Tax Court, unless additional deficiencies are determined for these years

| Signatures | | Date: |
|---|---|---|
| | | Date: |
| By: | Title | Date: 31 July 2001 |

Form 870 (Rev 3-92)

EMPLOYEE "E"          (taxpayer's representative)

*113*

**Form 1040X** (Rev. November 1986)

Department of the Treasury - Internal Revenue Service

**Amended U.S. Individual Income Tax Return**

► See separate instructions.

OMB No. 1545-0091

SELECTED TE #4

Postmark NOV 1 2 1998

This return is for calendar year ► 19 **96**   OR fiscal year ended ►

Your first name and initial    Last name                19

If a joint return, spouse's first name and initial    *EMPLOYEE "D"*    Last name    Your social security number

Home address (number and street). If you have a P.O. box, see instructions.    Spouse's social security number

City, town or post office, state, and ZIP code. If you have a foreign address, see instructions.    Apt. no.    Telephone number (optional)

For Paperwork Reduction Act Notice, see separate instr.

**A** If the name or address shown above is different from that shown on the original return, check here    ►
**B** Has original return been changed or audited by the IRS or have you been notified that it will be?    ☐ Yes  ☒ No
**C** Filing status claimed. **Note:** You cannot change from joint to separate returns after the due date has passed.

On original return ► ☒ Single  ☐ Married filing joint return  ☐ Married filing separate return  ☐ Head of household  ☐ Qualifying widow(er)
On this return ► ☒ Single  ☐ Married filing joint return  ☐ Married filing separate return  ☐ Head of household  ☐ Qualifying widow(er)

### Income and Deductions (see instructions)
**USE PART II ON PAGE 2 TO EXPLAIN ANY CHANGES**

| | | | A. As originally reported or as previously adjusted (see instructions) | B. Net change— Increase or (Decrease) – explain on page 2 | C. Correct amount |
|---|---|---|---|---|---|
| 1 | Adjusted gross income (see instructions) | 1 | 367,329. | -93,427. | 273,902. |
| 2 | Itemized deductions or standard deduction | 2 | 4,000. | | 4,000. |
| 3 | Subtract line 2 from line 1 | 3 | 363,329. | -93,427. | 269,902. |
| 4 | Exemptions. If changing, fill in Parts I and II on page 2 | 4 | | | |
| 5 | Taxable income. Subtract line 4 from line 3 | 5 | 363,329. | -93,427. | 269,902. |
| 6 | Tax (see instructions). Method used in col. C | 6 | 123,145. | -36,997. | 86,148. |
| 7 | Credits (see instructions) | 7 | | | |
| 8 | Subtract line 7 from line 6. Enter the result but not less than zero | 8 | 123,145. | 72,242. | 72,242. |
| 9 | Other taxes (see instructions) | 9 | | -109,239. | 13,906. |
| 10 | Total tax. Add lines 8 and 9 | 10 | 123,145. | -109,100. | 14,045. |

**Payments**

| | | | | | |
|---|---|---|---|---|---|
| 11 | Federal income tax withheld and excess social security, Medicare, and RRTA taxes withheld (see instructions) | 11 | | 139. | 139. |
| 12 | Estimated tax payments, including amt applied from prior year's return | 12 | 880. | | 880. |
| 13 | Earned income credit | 13 | | | |
| 14 | Credits for Fed tax paid on fuels, regulated investment company, etc | 14 | | | |
| 15 | Amount paid with Form 4868, 2688, or 2350 (applications for extension of time to file) | 15 | | | 65,000. * |
| 16 | Amount of tax paid with original return plus additional tax paid after it was filed | 16 | | | 57,265. |
| 17 | Total payments. Add lines 11 through 16, column C | 17 | | | 123,145. |

### Refund or Amount You Owe

| | | | | | |
|---|---|---|---|---|---|
| 18 | Overpayment, if any, as shown on original return or as previously adjusted by the IRS | 18 | | | |
| 19 | Subtract line 18 from line 17 (see instructions) | 19 | | | 123,145. |
| 20 | **AMOUNT YOU OWE.** If line 10, column C, is more than line 19, enter the difference and see instructions | 20 | | | |
| 21 | If line 10, column C, is less than line 19, enter the difference | 21 | | | 109,100. |
| 22 | Amount of line 21 you want REFUNDED TO YOU. | 22 | | | 108,869. * |
| 23 | Amount of line 21 you want APPLIED TO YOUR 19 | | TAX | 23 | | |

RECEIVED IRS
19 M
NOV 1 5 1998

**Sign Here**
Keep a copy of this return for your records.

Under penalties of perjury, I declare that I have filed an original return and statements, and to the best of my knowledge and belief this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which the preparer has any knowledge.

Your signature    Date    Spouse's signature. If a joint return, BOTH must sign.    Date
*EMPLOYEE "D"*

**Paid Preparer's Use Only**

Preparer's signature    Date    30 Oct '98    Check if self-employed ☐    Preparer's social security no.  NRA
Firm's name (or yours if self-employed) and address    EIN    ZIP code

*EMPLOYEE "F"*    1/20/98

Form 1040X (Rev. 11-86)

* INCLUDES PENALTY FOR UNDERPAYMENT OF ESTIMATED TAX ...

*114*

Bernadette

The Statute date
Must be submitted
With Claims &
Prior year Cases
Complete — Evelyn

cls #10 5345 PP — what is
that? I'm not familiar
w/ PP

Statute for claim
is AA — refer to
895 also attach
Case folder w/ 895
for Approval. ems
10-22-01

Evelyn:
  Imfolt's are attached
            Thanks

**Request Master File** (Reference - IRM 48(13)(1))

| Project Code | 8. Aging Reason | 9. Push Code/ Spec. Msg. Code | 10. Alpha Statute | 11. Form |
|---|---|---|---|---|
| | | | PP | 1040 |

| a. Control Digit | 13. Tax Period | 14. Activity Code | 15. Amount Claimed (Dollars only) |
|---|---|---|---|
| LTD | a. 9 6 1 3 | a. C | 7 1 8 9 3 |
| | b. 9 1 1 3 | b. C | 5 8 8 5 3 |
| | c. 9 2 1 2 | c. C | 4 8 1 5 9 |
| | d. | d. C | |
| | e. | e. C | |

16. Requester/Date/Organization
B Buey Tua 10/19/01 /S:C:15:T:111 88

19. Approval By/Date

**Record on File**

23. Operator/Date

Department of the Treasury — Internal Revenue Service

/115



8712, 8812 & 8912 Overage Claim
per 8.1 table on Aged Claim
Case

Rec'd 5345B B established 90
91
492

Per telephone she has T/P copies
of 1040X's for 90 91 92



To : Evelyn Stephens

From : Bernadette Billy-Leer

Subject : Over Age Report
Date : 11/6/01

Per Report the following cases are closed

EMPLOYEE "R"

EMPLOYEE "Y"

EMPLOYEE "G"

EMPLOYEE "D"

EMPLOYEE "A"

EMPLOYEE "H"

— §871, foreign corp — IRC §863 residence/rul
§862.

Last contact — Last contact 11/6 asking for confirmation letter
EMPLOYEE "I" — Estimated closing date 4/30/02
Delay — Information has to be transulated, and a
translater is needed on the credit

EMPLOYEE "J"

— §531 —
EMPLOYEE "I" — Oct. 19, 01 — , 11/6/01
— Jan 15, 02
Delays — RIA had to cancell appt. with issue
EMPLOYEE "A"    Specialist due to suspension of
VISA card
— Case was closed prior to your request dated 10/25/01

117

12-31-01

EMLOYEE "F"

9702                                RC   259
1120 F                    5 C   01

Re 4318 Wolfgang

This is a walk-in salesman for Canadian
Company.

To use annual method of accounting
RH followed procedures outlined
[?] of his appeal report, Survey out,
examination process, provided published
[?] per documentation.

Examination activity record, 9023 attached
to [?] 4318.                                Carefully
                                            examine

Advise to include or workpaper
advise probe was to support w/documentation
over 4318 statement "All [?] were reported
[?] IRC 61. As
Statute Contd

EMPLOYEE "K"

872 signed by [blacked out]
8/13/01 SO Area Director did not sign
[?] signed 8/7/01

Original 872 signed 6-30-01   to extend to  9702
Between 7-1 & 8/7/01   No extension
702  Statute expired 6/3  7/1/01
New 872 attached to 9702
9702  Statute on 6/30-01 extended to 12/31/01

118

534 ℓ chew 01 → 45 chew/adjutor

895 was w+ Complete — #7 unit
updated 12/3/01

8, 9, #10 was not Complete.

not related to workpapers —
438 [illegible]

No workpaper

Technical
Inventory — Adjusted using preliminary transport
SLC 471 & 474

No received Sales journal, writing
civil pen.
No calcuts.
Workpaper was not dated Ex — Ex
sampling log being returned the
reimbur + well [illegible] production
to the US company.
Markup

Money [illegible] Disbursement from Calculators had
on Sale to new Prox't.

449

**Examination Workpapers**

Examination Procedures and Conclusions

Page 1 of 2

| Method of accounting: ☐ Cash  ☒ Accrual  ☐ Other (explain) | Adjustments | | Workpapers Index |
|---|---|---|---|
| | Years | Amount | |
| Rep was informed of his appeal rights & the examination process Pub 1, 609 notice POA was given to RA which was mailed to the S.C. No prior audit. | | | A1/A42 |
| Rep stated JP sells windows and finished products which are manufactured by the Parent Canadian Company. During the period audit the RA did an overall review of the co. The corp sells only windows the major areas are the NW USA. | | | B1/B35 |
| All required filing requirements were filed. | | | |
| All income were reported per IRC861. No cash transaction over $10,000 | | | |
| For 199703 & 199803 tax period all amounts were actual except for the purchases. Rep stated the amounts were derived as a percentage of Gross profit to sales plus an amount based on internal data based on managerial discretion. During the audit no contracts were shown. Rep does not have mark up sch. Adj was made IRC§82? JP had a NOL carryover so a result there was no $ax effect therefore it would not be necessary to consider penalties | 199702 199802 | 34871 51492 | E-1 to E-101 |

standards

pension

Department of the Treasury — Internal Revenue Service

EMPLOYEE F

| | | | |
|---|---|---|---|
| tinuation of ~~mination~~ ~~kpapers~~ | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Taxpayer's Name (as ~~shown~~ ~~on~~ ~~return~~ ~~if~~ ~~available)~~ | E▮▮ ~~er~~ A. Billy-Lera | Page 2 |
| | | Reviewer | |

| Points To Be Considered | Examination Procedure and Conclusions |
|---|---|
| BALANCE SHEET AUDIT | A balance sheet audit was performed. RA reconciled the return. RA did test checks of the accounts payable. M & M2 were reconciled. |
| | |
| Other Expenses + Payroll | RA examined lease cost, meals + entertainment, membership. All amounts were substantiated. Per the payroll per 941, 940 etc reconciled. |

| | | Year | Amount | Index |
|---|---|---|---|---|

A balance sheet audit was performed. RA reconciled the books to the return. RA did test checks of the accounts receivable & payables, M & M2 were reconciled.

| 1997-2 | D | |
| 1998-2 | D | |

RA examined lease cost, meals & entertainment, subscriptions & membership. All amounts were substantiated. Per IRC §162. The payroll per 941, 940 etc reconciled.

| 1997-3 | D | |
| 1998-2 | D | |

CAT. No. 41546X    *U.S. GPO: 1994-379-561    Department of the Treasury — Internal Revenue Service

122

# Activity Record of
# Examining Officer

B. Billy-Lera

Date Assigned  5/11/99

EMPLOYEE 'F'

Address (if different from that on return)

| Initial Contact With | 'EMPLOYEE "L"' | | (Capacity) | | (Date) |

Representative                (Name)                (Address)                (Phone No.)

## Subsequent Contacts

| Date | Person Contacted | Remarks, Notes, Action Taken |
|---|---|---|
| 8/24/00 | RIA called rep to inform him an error was made on F 872, will send an corrected version copy was faxed the same day | |
| Aug o Sept | RIA was experiencing difficulty with computer and was working priority cases. | |
| 12/16/00 | called Rep told him was working priority cases and try to close case by Feb. | |
| 4/2/01 | RIA called Rep a asked for statute extension. | |
| 4/2 | Rep responded faxed copy will mail original | |
| May - Sept | was in Culati on vacation. | |
| Oct. 10 - Present | worked on case evaluated all info recved, recvued to Ledgers Journal etc. | |
| 10/31/01 | RIA faxed report to Rep after discussion | |
| 10/31/01 | Recvued message from Rep that he accepts the report findings. Case will be closed change no change. He will Fed Ex report today with original signature see Rep remarks behind F 4549 RIA advised him of his appeal rights. | |

9023

Doug Sengs      SUBSEQUENT CONTACTS   905-0-97-2365 X314    5134

| Date | Person Contacted | Remarks, Notes, Action Taken |
|---|---|---|
| 5/4/99 | | Mailed appt letter, loog notice. Pub1 notice 782 |
| 7/3/97 | | Faxed F2848 to Reps |
| 7/22 | | RIA faxed confirmation letter |
| Aug— | | RIA called Reps was told Rep defered, will be informed |
| Sept. Oct. Nov & Dec | | RIA was in the field |
| Jan | | RIA was in field and working priority cases (PRP |
| Feb | | RIA was working PRP cases |
| 4/6 | | RIA called T/P, spoke to new Rep RIA asked for updated |
| 2/3/99 | 872 | |
| | | |
| | | |
| 3/27/00 | | RIA called Rep to confirm an appt for April. Rep was no longer working with company. another appt was scheduled for 4/10 - 4/17/00 - RIA required faxed F 2848, the same 4564 asked for a conf. letter. — Rep faxed conf letter to RIA— RIA submitted 1321. |
| 3/31/00 | | Rep called acct staff away on vacation, has only 1 mth with co. needs to cancel appt. - RIA returned Rep call to cancel appt another was scheduled for 6/20 - 6/30 - |
| 3/24 | | Rep faxed letter to confirm appt on |
| 3/28 | | 4/11 - 4/17 |
| 3/28 | | RIA faxed F 2848, memo pertaining to audit etc to Rep |
| May — July | | RIA was on field on priority cases — audit ETA for this co was 6/8 - 6/28/000 RIA did not attend audit day 6/17 luggage was miss |
| 8/28 | | RIA called Rep asked for 872 left message on VMS — |
| | | Rep returned RIAs call stated eto in away but will sign form RIA also sent him F 4564 |

Form 9023-A (4-92)      Department of the Treasury - Internal Revenue Service

A2

124

Pollard Windows  9703 + 9803

**Activity Record of Examining Officer (continuation sheet)**

FAX 905-63

Doug Sluys    SUBSEQUENT CONTACTS 905-637-2365(314    5134

| Date | Person Contacted | Remarks, Notes, Action Taken |
|---|---|---|
| 5/4/99 | | Mailed appt letter, 1009 notice. Publ notice 782 |
| 7/3/99 | | Faxed F2848 to Reps |
| 7/22 | | RIA faxed confirmation letter |
| Aug - | | RIA called Rep was told Rep left co, will be interview |
| Sept · Oct · Nov · Dec | | RIA was in the field |
| Jan | | RIA was in field and working priority cases (PRP) |
| Feb | | RIA was working PRP cases |
| 4/6 | | RIA called T/P spoke to new Rep RIA asked for updated |
| 8/9/00 | 812 | |
| | | |
| 3/27/00 | | RIA called Rep to confirm an appt for April Rep was no longer working with company. Another appt was scheduled for 4/10 - 4/17/00 RIA mailed Rep cal F2848, the same 4564 asked for a eng. letter. - Rep faxed eng letter to RIA - RIA submitted 1321. |
| 3/31/00 | | Rep called acct. staff away on vacation, has only 1 mth with co. needs to cancel appt. - RIA returned Rep call to cancel appt Another was scheduled for 6/20 - 6/30 - |
| 3/24 | | Rep faxed letter to confirm appt on 4/4 - 4/7 |
| 3/23 | | |
| EMPLOYEE "L" | | RIA faxed F2848, memo pertaining to audit, etc to Rep |
| | | RIA was on field on priority case - audit eta for this co was 6/8 - 6/28/000 RIA did not attend audit day 6/19 luggage was missing RIA called Rep asked for 872 left message on VMS - Rep returned RIA's call, stated eto is away but will sign form RIA also sent him F4564 |

Form 9023-A (4-92)

Department of the Treasury - Internal Revenue Service.

A2  125

| | | | | | 74582 | 94846 |
|---|---|---|---|---|---|---|
| | Per Audit | | | | | |
| | Per Adj. | | | | 0 | 0 |

**Purpose/Scope :** To verify that the amounts were necessary expense Per IRC 8163 to reconcile payroll accounts Per sec. 3161

**Analysis :** R/A reviewed the sales journal and accounts payable journals to test check amounts to the cancelled checks and invoices for this category the amounts were substantiated. R/A also reviewed W2's, 1099's, and St 941's to reconcile the payroll for payroll amounts were missing Rep stated the amounts represented to Polaird sales

**Conclusion** The amounts per expenses were substantiated and no adjustments were made. For payroll R/A received the return filed by Gary Polaird for the differences. The amounts were substantiated. No adjustments were made to these categories.

PAYROLL
SALARIES + WAGES:

| | 199002 | 199803 |
|---|---|---|
| | 199002 | 199803 |
| Per Return | 1100477 | 1102647 |
| Per Audit | 1100477 | 1102647 |
| Per Adj. | 0 | 0 |

EMPLOYEE "F"

N/C   199000 + 199800
R/A: B. Billy-Lera    I

18. Prepayment on Balance Du

Examiner's Signature    R.U.L LERA

I do not wish to exercise my appeal rights with the Internal...
consent to the immediate assessment and collection of any incre...
...ided by law. I understand that this report is subject to accepta...

126

Other Expenses / Payroll

| | | | | Per Return | | 74,582 | 94,296 |
| | | | | Per Audit | | 74,582 | 94,296 |
| | | | | Per Adj. | | -0- | -0- |

**Purpose/Scope:** To verify that the amounts were necessary expenses per IRC 8162. To reconcile payroll amounts per IRC 8161.

**Analysis:** RA reviewed the sales journal and accounts payable journals to test these amounts to the cancelled checks and invoices for this category. All amounts were substantiated. RA also reviewed W-2's, 1099's, and St 941's to reconcile the payroll. Per payroll amounts were missing. Rep stated the amounts represented to Po and sales.

**Conclusion:** The amounts per expenses were substantiated and no adjustments were made. Per payroll RA reviewed the pattern filed by every Polloyed for the difference. The amounts were substantiated. No adjustments were made to these categories.

PAYROLL
SALARIES & WAGES

| | | | | | | | |
| | | | 199002 | 199803 | | | |
| Per Return | | | 100477 | 102647 | | | |
| Per Audit | | | 100477 | 102647 | | | |
| Per Adj | | | -0- | -0- | | | |
| | | | | | | EMPLOYEE "F" | |
| | | | | | T/P: | | |
| | | | | | YR | | |
| | | | | | RA: B. Billy-lisa | | I1 |

127

Form 1120F, Page 3 Detail

## Line 17 - Taxes and licenses

| | |
|---|---:|
| Accrued state and local income taxes | 333. |
| Total | 333. |

## Line 27 - Other deductions

| | |
|---|---:|
| Meals and entertainment | 10,482. |
| AUTOMOBILE | 11,407. |
| INSURANCE | 37. |
| LEASE COSTS | 24,557. |
| LEGAL | 1,578. |
| OFFICE SUPPLIES | 9,390. |
| SUBSCRIPTIONS & MEMBERSHIPS | 2,367. |
| TELEPHONE | 14,764. |
| Total | 74,582. |

EMPLOYEE J

1/15/02
1/17/02

This case was examined & closed w/
statutory notice being issued
Statutory notice was dated 9-13-2000
- Reexamined by letter 1-16-2001
- Caused Memorandum dated 9-12-00 th
Concurs w/ issuing notice to protect the
revenue — sig. attached
Dealthough the history review sketchy
unhopeful

8th-01 [illegible] request via's [illegible]
request dated 8-30-01
1 8-3-2001 [illegible] response date

Date activity
9/4 history sheet documented 9/5/01 states
P/A will information
9/5 acknowledge receipt [illegible] &
promised to resolve by [illegible]

Rev. RA documents the [illegible] was received. See
[illegible] we cannot reuse [illegible]

141

7-18-02

Jennolette                          MR

Please prepare this's case for
Closure — 'No Change'.

I have read the history, updated z RI
in file, correspondence from counsel &
prev. issued amended, statutory notice.

Based on telephone examinations at least
three (3) with POA, territory manager, and
previous manager (Mosley) I have concluded
for the good of the service and taxpayer
and representative this's case must be closed.

The statute date on 9612 3-16-02 per return.
The 895 have not been updated since 872
was rec'd in January 2001. The audit activity,
and conclusion have not been timely to correct
issue RAR, at later. We asked for the
extension in January 2001 to conclude the
audit. We have not provided T/por POA
our conclusion /findings at date, 1-18-02
which is less than 60 days on statute. The conclusion
have not been resolved as issue has not been

142



JUL-12-2002  16:44                                                                    P.04

143



emstep9t
DATE PRINTED 01182002
TIME PRINTED 12:32

## CUMULATIVE TOTALS TO DATE
## TIME APPLIED ANALYSIS

| SSC | ASSIGNED EXAMINER | TOT HOURS | P OF RB | TAXPAYER NAME | TAX PERIOD | TIN | MFT | ACT CODE | REMARKS |
|---|---|---|---|---|---|---|---|---|---|
| 1111 | BILLY-ISRA, BERNA | 151 | | ▓▓▓▓ | ▓▓▓▓ | ▓▓▓▓ | 02 | 259 | |
| | TOTAL | 151 | | ▓▓▓▓ | ▓▓▓▓ | ▓▓▓▓ | 02 | 259 | |
| | al Audit Aide Hours | 0 | | | | | | | |
| | al Co-op Hours | 0 | | | | | | | |

} } Employee "S"

JUL-12-2002 16:45

P.05

EMPLOYEE "K"    2-2699    1/28/02
das

5344

Disposal Code: 09

of 1120 F was not stamped - so ch ??
4378 was stamped

Mostly workpapers are not dated.

|  | | 9612 | 9712 |
|--|--|------|------|
| tried | original closing | 64 | 10hr |
| " | 1/28/02 closing | 155 | 168 |
| | Total | 155 | |
| | | 168 | |
| | | 323 hrs | |

3/98 Did not date new closing -
Memo issued -

No letter in file

145



**Examination Closing Record**

CC TSCLS

CC AMCLS

S — Separate Spousal Assessment
U — Unpostable  P49-50

STATUS -- ORG.    -- OTHER CHANGE INFO

EMPLOYEE "J"

| | | | |
|---|---|---|---|
| Individual Rate Account — IRA | 01- | | |
| Penalty Reason Code | 02- | | |
| Letter Amount | 04- | | |
| 2% Interest Due | 05- | | |
| & Debit Interest To Date | 5A- | | |
| & Credit Interest To Date | 5B- | | |
| & Compute Interest Amount | 5C- | | |
| & Hold Code | 07- | Remarks | |
| Agreement Date | 08- | | |
| & Priority Code | 09- | | |
| & Settlement Amount | 10- | | |
| | 11- | | |
| | 12- | | |
| | 12- | | |
| | 12- | | |
| | 12- | | |
| | 12- | | |
| | 12- | | |
| | 12- | | |
| | 13- | 09 | |
| | 14- | 0 3 3 1 2 0 0 2 | |
| | 15- | | |
| | 15- | | |
| | 15- | | |
| | 15- | | |
| | 15- | | |
| | 15- | | |
| | 15- | | |

Appeals Office Code    16-    APPEALS SECTION

AIMS A/F
Appeals Code    19-
Claim Rejected    
Date    20-
& Amount Claimed    21-
Dollars Protected    22-
RBP Hours    23-
Claim Type    24-

Examiner's Time    28-
& Organization Code    29-    515
Examination Technique    30-    3
Examiner's Grade    31-    3
Grade of Case    32-

33-    B BILLY-LERN
Adjustment Amount    34-
Manual Assessment Amount    35-
Penalty    36-

RBP = Claim for refund only

Include in hash total all items in shaded areas as follows: P24-29, 12, 15, 18, 21, 22, 23, 28, 34, 35, 44, 46, 52, 402, 403, 404, 403d, 414 and 415. For items 12 and 15, include only the amounts to the right of the transaction code and ignore the decimal point.

Exemption Return    37-
& Audit    38-

5344

146

Examination Closing Record

EMPLOYEE "5"

1 6 8
1 1 1
3
1 3

B BILLY-LEER

0 3 3 1 2 0 0 2

147

**Internal Revenue Service**
**MEMORANDUM**

to:      Bernadette Billy-Lera

date:    October 15, 2001

from:    Evelyn Stephens, Acting Manager 1111

Subject:  Statute Cases

Bernadette, for several weeks I have been discussing the above subject
with the group. In our conversation, you said you were getting Form 872
on some of your pending short statute cases and closing the other. Today,
October 15, 2001, I ran the pending statute report for the group and found
you have seven (7) cases with statute dates that will expire within 210
days. They are as follows:

| Taxpayer | I.D. # | Statute date |
|----------|--------|--------------|
| 1.       |        |              |
| 2.       |        |              |
| 3.       |        |              |
| 4.       |        |              |
| 5.       |        |              |
| 6.       |        |              |

EMPLOYEE "O" 1.
Employee "F" 2.
             3.
Employee "H" 4.
Employee "J" 5.
Employee "P" 6.

The group control system, ERCS show 895's were issued to you on all the
cases. You returned all the 895's except the one for Ford Ennals. Please
return this case with the 895 when you received this memorandum.

Bernadette, I issued a memorandum on statute control several weeks ago
on statute control. I know you are knowledgeable on the subject and
understand the importance of protecting the government interest on all
assigned cases, I am therefore, reminding you to secure 872's on these
cases immediately.

If you have any questions on this memorandum that will be filed in your
EPF, or statute, please let me know.

148

**DEPARTMENT OF THE TREASURY**
**INTERNAL REVENUE SERVICE**
**Washington, D.C. 20224**

SMALL BUSINESS/SELF-EMPLOYED DIVISION

January 7, 2002

MEMORANDUM FOR Bernadette Billy-Lera

FROM:         Tes Tillotson
              Acting Manager

              Employee P

SUBJECT:      ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The R/A received a delinquent return during the audit and should follow the procedures outlined in the IRM for this situation. The tax return needs to be date stamped for statute purposes and for any penalty calculations. The original return is to be forwarded to PSC for processing and a TC 150 posting.

The R/A is to work from a copy. The taxpayer is claiming that he owes $602.00 in tax for the 199512 year and $1386.00 for the 1996 year on income not effectively connected with an U.S. trade or business. The RAR is abating all tax. There should be a comment in the workpapers on why R/A is abating the assessed tax in full and not accepting the returns as filed.

R/A worked from transcript with 150 posting from S.C. Delinquent R/T is incorporated with RAR. This case was established by the S.C. The statute date is April 15, 02. Case was closed since December 16, 2001. The taxes were abated. A comment as on the CQP as to why the taxes were abated. Why did it take 2 months to return the case file?

                                            B. Billy Lera

                                                              149

| | | | | |
|---|---|---|---|---|
| B. | Initial Interview<br>History | T/P is married, his spouse file w/ T/P as MFS as a US resident. T/P is [illegible] filer and never files a R/T each year the S.C. assessed the tax [illegible] T/P meets the criteria for filing as a NR alien of the US therefore R/A accepts the return as filed. | | |
| C. | Required Filing Checks - IRM 4034<br>W-4<br>1099's<br>Prior and Subsequent Year Returns<br>Related Returns - IRM 4224<br>Other Forms (W-2, W-2G, 1099, 5498, 8027, 8300) | R/A spoke to acting mgr Robert Marley pertaining to non filer status [illegible] suggested that we ask Rep to file all subsequent years. T/P signed a 90 Da[illegible] in 199712 period when the S.C. filed as a resident | | |
| D. | Probe for Unreported/Diverted Income<br>Gross Income - IRM 4261.4<br>Income from Bartering<br>Form 8300 - Cash Transactions over $10,000 - IRM 4234-300 | In subsequent years T/P filed RT as a NRA, all income were reported. T/P income was basically from U.K. | 199512<br>199612 | 0<br>0 |
| E. | Cost of Sales<br>Minimum Inventory Checks - IRM 4231-5(10)2.2 | N/A | | |
| F. | Penalty Consideration (Identify Code Sections)<br>Preparer Penalties - IRM 4297 | IRC§6662, IRC§6654, IRC§6651<br>Per examination Rep filed 1040NR for the years under examination. Per information supplied and research done R/A accepts Form 1040NR. As a result, the prior penalties + additional assessment by the S.C. was abated by R/A. | 199512<br>199612 | 0<br>0 |
| G. | Was consideration given to all applicable EQMS auditing standards? (Standards are listed on reverse side of this form)<br>YES (circled)<br>If no, indicate the standard(s) not considered, and the reasons why consideration was not given. | | | |

Form 4318 (Rev. 07-95)
Cat. Num 2[illegible]

Department of the Treasury

150

| Form 4549 (Rev. 11-93) | Department of the Treasury — Internal Revenue Service | | Return Form No. |
|---|---|---|---|
| | **Income Tax Examination Changes** | | 1D40 |

| Name and Address of Taxpayers | S.S. or E.I. Number | Filing Status |
|---|---|---|
| Employee "P" | | MFS |

| Person With Whom Examination Changes Were Discussed | Name and Title |
|---|---|
| | Gemma Bailer, POM |

| | | Year: 1995 12 | Year: 1996 12 | Year: |
|---|---|---|---|---|
| 1. | Adjustments to Income | | | |
| a. | | | | |
| b. | | | | |
| c. | | | | |
| d. | | | | |
| e. | | | | |
| f. | | | | |
| g. | | | | |
| 2. | Total Adjustments | | | |
| 3. | Adjusted Gross or Taxable Return or as Previc. | 166253 | 24519 | |
| 4. | Corrected Adjusted | (166253) | (24519) | |
| 5. | Corrected Tax | | | |
| 6. | Less Credits a. b. c. | | | |
| 7. | Balance (Line 5 less ...) | | | |
| 8. | Plus Other Taxes a. b. c. | | | |
| 9. | Total Corrected Tax Liability (Line 7 plus total of lines 8a through 8c) | 0 | 0 | |
| 10. | Total Tax Shown on Return or as Previously Adjusted | 53680 | 4258 | |
| 11. | Adjustments to EIC/Fuels Credits - increase (decrease) | 0 | 0 | |
| 12. | Deficiency - Increase in Tax (Line 9 adjusted by lines 10 and 11) | 0 | 0 | |
| 13. | Overassessment - Decrease in Tax (Line 9 adjusted by lines 10 & 11) | (53680) | (4258) | |
| 14. | Adjustments to Prepayment Credits - increase (decrease) | 0 | (714) | |
| 15. | Balance Due, Excluding Interest and Penalties (Line 12 adjusted by line 14) | 0 | 0 | |
| 16. | Overpayment (Line 13 adjusted by line 14) | 0 | 0 | |

| 17. | Penalties | Code Section |
|---|---|---|
| A. | All penalties and additional assessments assessed by the S.C | |
| B. | were abated by RIA. There was no intentional disregard of | |
| C. | rules and regulations | |
| D. | | |

18. Prepayment on Balance Due    Check #

| Examiner's Signature | District | Date |
|---|---|---|
| B. Bailey-Lera | International | 2/12/02 |

Consent to Assessment and Collection — I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings in this report. Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus any interest as provided by law. I understand that this report is subject to acceptance by the District Director.

| NOTE: If a joint return filed, both husband and wife must sign. | Signature of Taxpayer | Date Nov 6 '01 | Signature | Date |
|---|---|---|---|---|
| By | | Title | | Date |

Cat. No. 23105A                                                Form 4549 (Rev. 11-93)

151

| | |
|---|---|
| 2/11/02 | returned form EP for correction |
| 2/12/02 | got case file from mgr office ESP wants RIA to address penalties which are abated RIA did w/p send ad on penalties on ___ transcript The issue was also addressed per 431R. RIA also made correct w/s RAR w/n or prior RAR. RIA made a transposal error for the w/s |
| 2/12/02 | RIA closed case file to mgr. |
| 2/13/02 | discussed case w/ RIA as she does not agree w/ 908. Required that closing ___ in person. ___ ___ 2/13/02 |
| 2/13 | RIA discussed issue with manager. RIA will be submit unusual fee to manager later. RIA closed case to manager today approximately 4 pm. ESP is closed for case acceptance at 3 pm. |
| 2/14/02 | ___ ___ ___ 2/13/02 |

**DEPARTMENT OF THE TREASU**
**INTERNAL REVENUE SERVICE**
Washington, D.C. 20224

SMALL BUSINESS/SELF-EMPLOYED DIVISION

January 7, 2002

MEMORANDUM FOR Bernadette Billy-Lera

FROM:        Tes Tillotson
             Acting Manager

SUBJECT:     Employee N
             ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

This corporation filed the first ▓▓▓▓ for ▓▓▓ on 12-1-97 for $168,008.00. A prior examiner allowed this claim in full. The TC 301 was posted 5-17-99. A second claim was filed on 8-9-99 for an NOL carryback from the 199812 tax year to 199612 for 1,447,789.00 and 199712 for 2,700,582.00, respectively. These claims were paid on 9-2-99. The amounts claimed qualify the case for joint committee.

The R/A has disallowed the claims stating there was no response from the representative and that the claim was not substantiated. F4318 states that R/A was assigned this case November 2001. The activity sheet states that R/A was assigned the case November 2000.

R/A has sent the taxpayer F2297, F3363, and the L569. On these claim disallowance forms the R/A has overlooked the second claim for 9612 of $1,447,789.00 and has shown the first claimed amount of $168,008.00 as being refunded already. The claim for 9712 for $2,700,582.00 is shown as fully disallowed. R/A is showing disposal code 01.

R/A has bypassed the Joint Committee by issuing the RAR and claim disallowance forms. The power of attorney has sent a protest letter and has requested an oral conference with appeals. POA is in the protest package. R/A should follow the IRM procedures outlined in the Joint Committee Handbook and consider extending the statute per the IRM on joint committee cases. The power of attorney deserves a phone call and explanation of the processing of joint committee cases.



100 PERCENT IVL REPORT

DATE PRINTED: Aug 14, 2001
TIME PRINTED: 02:30 PM

Page 2 of 3

"P" (for Pending changes) - Report Chang...



EMPLOYEE "P"

Need case to review — Managerial Case.
Requested

Possible fraud referred — Pick up from
prior audit.

T/p is in Boulder
Service center filed '95 & '96 tax

Residence alien — filed 1040NR

T/p lived 92-2000

Issues:
    income
    property sales
    filing status — non residence alien

Close of career
    intend
    UK Tax treaty        (Tie Breaker Rule)

'95 & '96 Criminal cs

Requested workpaper

156

Employee "H"

_[illegible] 12-31-01_

_Dep activity — Rental_
_[illegible] — Hotel Rental_

_Activity Rentals_

157

Employee "N"

9612, 9712 & 9812

Oldest Case in your inventory, 114 day

Case reassigned 10/2000

Claim

T/p cancelled repeatedly —
Issue Claim disallowance

Pay code —077 Denied Committee Case

SC 32 Carryback prepared

Need To request 9712 return

9812 — indicate SC 01 tax shelter

158

**ESP Correction/Reject Sheet**

| | | |
|---|---|---|
| ☐ Rejected | ☐ | ☐ Information Only |

Date: 1/30/02

Taxpayer(s): *Employee "P"*, *Employee "X"*

Tax Examiner:

Tax Period: 1995 + 1996

SSN/EIN: 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

Phone:

Group: 1111

### A. Improper Identification

☐ 1. Red Folder Missing
☐ 2. Form 895 missing
☐ 3. Consent form invalid
☐ 4. Verify statute date
☐ 5. Other

### B. Form 3198

☐ 1. Not Attached
☐ 2. Incomplete
☐ 3. Mandatory/Special handling omitted
☐ 4. Other

### C. Form 711

☐ 1. Return(s) not received
☐ 2. Other

### D. Form 4760

☐ 1. Form missing/incomplete
☐ 2. Document 6077 Missing
☐ 3. Other

### E. Examination Report or Closing Instructions

☐ 1. Tax does not match transcripts
☐ 2. Both TP's signatures required
☐ 3. Earned income credit not verified
☐ 4. Delinquency penalty needs to be considered
☐ 5. Tax due to negligence/fraud not indicated
☐ 6. Prepayment credits not verified
☐ 7. No change instructions not stamped/signed
☐ 8. Other

### F. AIMS

☐ 1. No evidence AIMS base established
☐ 2. Freeze code _____ is present
☐ 3. Case not on AIMS or already closed
☐ 4. Other

### G. Amended Return

☐ 1. Claim previously allowed
☐ 2. Amended not considered
☐ 3. Other

### H. Delinquent/Substitute Return

☐ 1. SSN/EIN missing
☐ 2. Transcript shows TC 150
☐ 3. Received date missing
☐ 4. No transcript
☐ 5. Other

### I. Missing Return(s)

☐ 1. Returns missing for tax period(s)_____
☐ 2. Other

### J. Line Item(s)

☐ 1. Form 5344 Line item(s) missing _____
☐ 2. Other

### K. POA Invalid

☐ 1. Requires TP's POA signature
☐ 2. Tax period
☐ 3. TIN missing
☐ 4. Original form in file
☐ 5. Other

### L. Partial Assessment Instruction Inadequate

☐ 1. Instructions inadequate
☐ 2. Other

### M. Restricted Interest

☐ 1. Carryback period not identified
☐ 2. Need form 2285
☐ 3. Other

### N. ☐ Other

### O. Non-Examined Closing

☐ 1. Survey stamp missing
☐ 2. Disposal code missing
☐ 3. Need 2275 and TXMOD
☐ 4. Other

Comments: *TP has penalties on his accounts that need to be addressed also*

| Corrected by | Date corrected |
|---|---|
| | |

Form **9302** (10-90)

Station Name: ~~~~~~~~~~~ User Name: cflowe98 Date: 1/23/2002 Time: 3:28:52

```
IMFOLT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 30199512P01   IMF TAX MODULE           NM CTRL ~~~~~~
11254-679-64218-9                                  SP-SSN              UP-CYC:
         Employee "P"                            TOT EXEMPTIONS:01 FMS LEVY:
                                     STATUS:24   STATUS DATE:01152001 AIMS :
  NEXT  CSED:10-25-2009 ASSESSED BAL:  91,825.92 SETTLMNT DATE:05171999 LIEN :
  LAST  CSED:10-25-2009 TOT INTEREST:  43,569.25 INTEREST DATE:02042002 BWI  :
  FIRST CSED:10-25-2009 INT ASSESSED:  22,752.36 DISASTER RDD :         BWNC :
         ASED:          INT PAID:           .00  MATH INCREASE:         CC81 :
         RSED:04-15-1999 FTP TOTAL:    13,420.00 GOVRN SC:28 HIST LC:13 CC85 :
      FREEZE:T   -L     FTP ASSESSED:  11,541.20 FSC:3    TDA COPY:4351 TC914:
  INDICATORS:                                                          CAF  :
  EFT-IND: 0                                                           ARDI :
  TC   DATE     AMOUNT       CYCLE      DLN          VARIABLE DATA      DDRC :
  150 05171999        .00   199918   22210-118-00312-9 RECEIVED-DATE: 04281999
  140 03121997        .00   199712   13249-071-00000-6
  924 02051998        .00   199806   13249-036-00000-8 REF-NUM:118 AMT:  4,642
  494 04271999        .00   199918   19277-517-09291-9
  570 05171999        .00   199918   22210-118-00312-9
  960 07281999        .00   199931   28277-610-01765-9
  170 10251999    2,930.61  199941   11254-679-64218-9
  290 10251999   53,680.00  199941   11254-679-64218-9
  495 10051999        .00   199941   19277-679-05243-9
  599 10051999        .00   199941   19249-679-01531-9 CC:88
                   PAGE 001 OF 002              IMFPG 002
```

*Estimate tax*

*Add'tl Tax Assessment*

*Closure of TC 494 or correction of TC 494*
  *494 Notice of Deficiency*

*Sat's filing Trans*

IMFOLT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 30199512P02    IMF TAX MODULE                NM CTRL:ENNA

| C | DATE | AMOUNT | CYCLE | DLN | VARIABLE DATA | UP-CYC: |
|---|------|--------|-------|-----|----------------|---------|
| 166 | 10251999 | 12,078.00 | 199941 | 11254-679-64218-9 | | |
| 196 | 10251999 | 22,752.36 | 199941 | 11254-679-64218-9 | | |
| 276 | 10251999 | 11,541.20 | 199941 | 11254-679-64218-9 | | |
| 971 | 07232000 | .00 | 200031 | 11254-679-64218-9 | | |
| 971 | 11272000 | .00 | 200046 | 13277-999-99999-0 | ACT-CD: 600 | |
| 972 | 02052001 | .00 | 200104 | 13277-999-99999-1 | ACT-CD: 061 | |
| 425 | 01292001 | .00 | 200106 | 98277-029-20000-1 | ACT-CD: 061 | |
| | | | | | SOURCE-CD:45 PBC:000 | |
| 420 | 02082001 | .00 | 200107 | 28277-039-00000-1 | SBC:00000 EGC:1110 | |
| | | | | | SOURCE-CD:45 PBC:215 | |
| | | | | | SBC:00000 EGC:1110 | |
| 560 | 09062001 | .00 | 200137 | 98277-249-77500-1 | ASED:04282002 | |
| 706 | 11192001 | 11,156.25- | 200149 | 11254-679-64218-9 | XREF:30199212 | |

*Amended*
*return*
*reversed Amount*
*little extension*

*credit gen overpmt from another klaang ExAm indicator*    *425 reversed 424*

*delinquency penalty*

PAGE 002 OF 002                    IMFPG 001

*Int. Assessed*

*Failure to pay penalty*



# Staff Summary Sheet

.equest for Signature of:                    Date: 10/03/01

| Reviewing Office | Secretary Initial/Date | Concur Initial/ Date | Comment | Reviewing Office | Secretary Initial/Date | Concur Initial/ Date | Comment |
|---|---|---|---|---|---|---|---|
| Bernadette Billy-Lera Revenue Agent Group 1111 | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Document Subject:
**Departure Rating**

| Prepared By: _Employee "C"_ | | Due Date: | |
|---|---|---|---|
| one: | | ECMS Control #: | |
| fice Symbols: | | Filename: | |
| S:C:15:T1:1110 | | | |
| Room #: PROM LEVEL | | Document Signed Date: | |

Note: This sheet serves as documentation of the correspondence review process and must be attached to the official file copy of correspondence.

Please review the enclosed departure rating and sign for receipt. If you would like to discuss the departure rating please arrange a meeting with me to discuss each critical element. Please sign the enclosed departure rating and return to your new manager. Thank You

*Note*

*mgr spoke to R/A about receipt & signing the departure rating. Bernadette Foil she was not signing — I advised her that it was being filed in her EPF*

162