## PRIVACY ACT NOTICE
## FOR
## DISCRIMINATION COMPLAINT INTERVIEWS

### GENERAL

This information is provided pursuant to Public Law 93-379 (Privacy Act of 1974), December 31, 1974, as amended, 5 U.S.C. 552a, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following: 29 CFR 1614.108; and 42 U.S.C. 2000e-16.

### PURPOSES AND USES

The information you supply will be used along with data you supplied previously and information developed by investigation to resolve your discrimination complaint. This information may be furnished to designated officers and employees of the Department of the Treasury, the Equal Employment Opportunity Commission or the Merit Systems Protection Board in order to resolve your discrimination complaint. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to Equal Employment Opportunity Commission activities, to the intelligence agencies of the Federal Government, or to others for uses published in the Federal Register.

### EFFECTS OF NONDISCLOSURE

Disclosure of the information sought is voluntary, however, failure to furnish the information will result in your complaint being returned without action.

### ACKNOWLEDGEMENT

I understand the Privacy Act Notice for Discrimination Complaint Interviews and agree to release the information for the purposes stated above. If mine is a complaint of disability discrimination, I hereby authorize the release of any and all medical records pertaining to me which bear on my actual or presumed disability.


_____          November 13, 02
SIGNATURE OF EMPLOYEE                            DATE

170

1. *Please list the city, state and county where you are currently employed.* Washington
   D.C.

2. *Please state your name, current place of employment, position title, series and grade.*
   Bernadette Billy-Lera, Internal Revenue Service (IRS), National Office, A/C
   International, Group 1111, Revenue Agent, GS-512-13.

3. *How long have you been employed with the Internal Revenue Service?* 14 years and
   five months.

4. *How long have you been assigned to your current position?* May 1997.

5. *Please state your employment background for two (2) years prior to your current
   position.* I was a Program Analyst in the National Office, where, with the help of a task
   force, I successfully redesigned the national fraud program. I was also the national
   liaison to the Witness Protection Program, where I worked with the Department of
   Justice. I worked with the IRS Chief Counsel to implement the new Revenue Procedure
   for Change in Accounting Method. I also worked with task forces to implement the new
   NAICS codes, and Private Delivery Service/Timely Mailing. In addition, I was
   assigned to the Market Segment Specialization Program (MSSP) and was responsible
   for programs in Transportation, Travel Industry, VEBA, Utilities and Communication.
   Before that, I was a domestic revenue agent.

6. *Did you participate in a protected activity? What was the activity? When did you
   participate? Does the responding management official (RMO) in the current EEO
   complaint have knowledge of your participation?* If so, how and when did he/she
   acquire this knowledge? Yes, I participated in a protected activity. I filed an EEO
   complaint on June 21, 2001, case # 01-1139. Evelyn Stephens, the responding
   management official (RMO) has knowledge of the complaint I filed, because on
   September 4, 2001, I went to her office to speak to her regarding an e-mail I received
   from Robert Mosely, my prior acting manager. Mr. Mosely wanted to speak to me
   that day. Knowing that he was always boisterous, rude and disrespectful to me, I
   asked the RMO to accompany me to the meeting. It was then that I mentioned to the
   RMO that I had filed an EEO complaint against Mr. Mosely. The RMO told me that
   the complaint was common knowledge in the Department. I did not ask her who told
   her I filed the complaint. *BBe*

AFFIDAVIT          DISTRICT OF COLUMBIA          CITY OF WASHINGTON

7. *What was the issue of the prior complaint?*  The prior complaint was based on National Origin, race, and sex

8. *What is the date and case number of prior complaint?*  Complaint was accepted on June 21, 2001.  Case # 01-1139.

9. *Who did you name as the RMO in the prior EEO complaint?*  Robert Mosely, Tess Tillotson and Jeannie Fisher.

10. *What is the connection between the prior EEO complaint and the current action?*  Unfair annual appraisal, verbal abuse and physical intimidation and general harassment.

11. *Does the RMO in the current EEO complaint have knowledge of the prior EEO complaint?  If so, how and when did he/she acquire this knowledge?*  See answer in Question 6.

*Whether the Complainant was subjected to harassment since May 2001 in retaliation for her previous participation in the EEO complaints process, when her manager:*

(1) *subjects her to unannounced audits, restricts her travel on audits to foreign countries, and fails to assign her cases requiring international travel.*

1. *Describe, in chronological order, all acts of harassment, dates of occurrence and identity of the harasser(s).*  By audit, I mean workload review.  Ms. Evelyn Stephens harassed me on the following issues and dates: She makes sudden and impulsive audits of my inventory without informing me of her intentions.  August 15, 2001, March 1, 2002, March 15, 2002, May 15, 2002, June 4, 2002.  She writes petty memos to me and restricts my travel on foreign audits.  Memos from Ms. Stephens dated October 1, 2001, October 30, 2001, February 22, 2002, March 15, 2002, June 27, 2002, September 18, 2002, October1, 2002 (See copies of memos attached).  E-mails dated June 11 and June 13 attached.  On March 1, 2002, Ms. Stephens came to my desk and requested a case.  She hovered over my shoulder as usual and I told her I did not appreciate her behavior.  She ignored me.  I often received telephone calls from Ms. Stephens demanding me to come to her office to discuss urgent issues.  Before I have the opportunity to ask what were the issues she would hang up the phone.  On June 4, 2002, Ms. Stephens came to my cubicle and was intimidating and forceful in asking for two cases.  I informed her *her*

*172*

that I needed five minutes to prepare a statute update on one of the tax returns. She insisted that she needed the case immediately. When I reached into my cabinet she was very close to me, physically touching me. I asked for her to move but still she refused to move. I left her standing in my cubicle and went to speak to the acting area compliance director, Ronald Pinsky about her unprofessional behavior. Despite repeatedly asking Ms. Stephens verbally, by phone, and by e-mail not to contact me at home when I am on leave or during non-working hours, she ignored my requests and makes calls to my home at odd hours during the evenings. April 2, 2002, May 13, 2002 (Documentation attached). She called and harassed me while I was on sick leave following major surgery, causing me to suffer a relapse. She procrastinates in approving my travel advances, making it difficult for me to do my job. I submitted three travel vouchers on September 14, 2002. One was returned for corrections. The other two had no errors however; they were approved approximately one month later. On March 27, 2002 I submitted for a travel advance for travel to the Far East on April 4, 2002. The advance was not approved until April 3, 2002. On September 17, I submitted a travel advance for two field appointments scheduled for September 23 to September 27, and September 30 to October 4, 2002. Ms. Stephen denied that request on September 18, without giving me an opportunity to respond to any questions she may have. Ms. Stephens had prior knowledge that I had two pending field appointments, because we discussed the field appointments on August 27, 2002 while she performed a time review. Ms. Stephens has refused to assign me cases consistent with my grade level, and has ensured that only lower caliber cases are assigned to me. For an agent of my academic and working credentials, this is an under-utilization of my skills. It is also very demeaning. Being a senior agent in the group I was never given the opportunity to act as manager. Instead, my co-worker a (GS-12) Agent was given the opportunity. To add insult to injury other agents who are not assigned to our group acted as group manager over the last year. Ms. Stephens refuses to give me cases with international implications that require international travel. Probably, this was a way to punish me and force me to withdraw my EEO complaint – a clear denial of my rights as an employee and my

173

constitutional rights. In January 2002, I found a case in my inventory that Ms. Stephens claimed she did not assign to me. Ms. Stephens made no attempt to clarify the matter, telling me instead to work all cases in my inventory. In March 2002, Ms, Stephens refused to grant me administration time to keep an appointment with an EPA counselor, suggesting instead that I take personal time or sick leave. My appointment was to discuss the stressful working environment. The rules and regulations clearly state that I am allowed two hours of administration time for four visits with my counselor. As noted else where in this affidavit, on June 4, 2002 Ms. Stephens came to my cubicle and was intimidating and forceful in asking me for two cases. I informed her that I needed five minutes to prepare a statute update on one of the returns. She insisted that she needed the case immediately. When I reached into my cabinet she was very close to me physically touching me. I asked for her to move but still she refused to move. I left her standing in my cubicle and went to speak to the acting, area compliance director, Ronald Pinsky about her unprofessional behavior. Approximately, one hour later Mr. Pinsky came to my cubicle and told me that since he is in an acting capacity he will discuss the issue with the territory manager, Jeannie Fisher when she returns to the office the following Monday.

2. *What evidence do you have that reflects that the conduct/comments were based on your previous participation in the EEO complaint process?* I was treated differently than most people in the group. I was scrutinized on the same issues of the prior EEO complaint filed.

3. *What was your reaction to the harassment? Did you discuss the matter(s) with the harasser? If so, what was discussed?* I have asked Ms. Stephens not to hover over my shoulder when she came to my cubicle and she ignored my requests. In addition, I asked Ms. Stephens not to call my home when I am on leave, and during odd hours in the evenings. She stated that she would call my home at any time if there were a business reason. On several occasions I told Ms. Stephens that I do welcome constructive criticism, but I do not appreciate her derogatory petty notes in my activity records and attachments to my cases. On June 4, 2002 I again told Ms. Stephens to stop harassing me. *BL*

*174*

4. *Did you indicate to the harasser that the conduct was unacceptable? If so, how?* Yes I did. (See question # 3 above)

5. *Did you talk to co-workers, friends or anyone else after the alleged harassment? If so, to whom? When? What was discussed?* On June 4, 2002 I spoke to Carl Tenny, the union Vice President, who accompanied Ms. Stephens after she came to my cubicle demanding the cases, and physically touched me. I told Mr. Tenny about the incident. I spoke to the union President, Jack Gregory about my hostile working environment. I also spoke to Dianne Regier a union representative, whom I had asked on occasion to accompany me when I spoke to Ms. Stephens and her manager, Jeannie Fisher. In my desperation for relieve I spoke to National Office union president Calvin Pollard, about my hostile working environment.

6. *Do you know of any other victims of the alleged harasser(s)? If so, who? When?* Yes. Carolyn Pozorski- approximately June 2002 and Jeanette Carter-Davis approximately July 2002.

7. *Did you report the harassment to management? If so, when? Who?* Yes. January 25, 2002 and approximately last week of April 2002 to Jeannie Fisher. I went to Dick Valdez, former Area Compliance Director, approximately the last week in April 2002. He stated that he did not want to talk to me because I had already filed an EEO complaint. I filed a complaint with the Commissioner's office March 4, 2002 (See attachment). I spoke to John Robinson, Director of EEO on June 13, 2002 (see draft of email I followed up with dated June 25, 2002). I wrote a letter to Deputy Commissioner, Bob Wenzel on June 5, 2002 (see attachment).

8. *If you did report it, what did management do after you reported it to them?* Management did nothing to relieve me of the hostile working environment. I asked to be removed from Ms. Stephens's supervision but to no avail.

9. *Was the action taken sufficient?* No action was taken.

10. *Did the harassment stop or continue?* No, it did not stop. *Did you again go to management?* I kept going to management on an ongoing basis.

11. *Do you have any documents or exhibits to support your claim?* Yes, see attachments to the appropriate questions.

175

12. *Are there any witnesses with first-hand, pertinent knowledge of the event(s)? If so, who? What information can they provide that is relevant to your complaint?* The above two witnesses can attest to the hostile working environment that Ms. Stephens creates.

(2) *Writes her petty memoranda, stands over her desk while she is working, interrupts her frequently, exhibits intimidating behavior, most recently on June 4, 2002, frequently asks her to come to her office; and contacts her at her home while she is on leave and/or during non-work hours.*

1. *Describe, in chronological order, all acts of harassment, dates of occurrence and identity of the harasser(s).* Ms. Stephens makes sudden and impulsive audits of my inventory without informing me of her intentions. August 15, 2001, March 1, 2002, March 15, 2002, May 15, 2002, June 4, 2002. She writes petty memos to me. Memos from Ms. Stephens dated October 1, 2001, October 30, 2001, February 22, 2002, March 15, 2002, June 27, 2002, September 18, 2002, October1, 2002 (See copies of memos attached). E-mails dated June 11 and June 13 attached. She stands over my desk while I am working and makes frequent requests of me during the day to come to her office under the pretext that that she has to discuss urgent business. On February 26, 2002, Ms Stephens came to my desk and asked for a case. While I was retrieving the case file from my desk Ms. Stephens stood over my shoulder in an intimidating manner. I asked her not to stand over my shoulder however she ignored my request. That afternoon she called me and asked me to come to her office to discuss a case. The discussion was pertaining to a case we had discussed earlier in the day. Later that afternoon approximately 6:10 pm she came to my desk and hovered over me again. I told her I did not appreciate that demeaning manner and again I was ignored. March 1, 2002, Ms. Stephens came to my desk and requested a case. She hovered over shoulder as usual and I told her I did not appreciate her behavior. She ignored me. I often received telephone calls from Ms. Stephens demanding me to come to her office to discuss urgent issues. Before I have the opportunity to ask what were the issues she would hang up the phone. On June 4, 2002, Ms. Stephens came to my cubicle and was intimidating and forceful in asking for two cases. I informed her

*176*

AFFIDAVIT    DISTRICT OF COLUMBIA    CITY OF WASHINGTON

that I needed five minutes to prepare a statute update on one of the tax returns. She insisted that she needed the case immediately. When I reached into my cabinet she was very close to me, physically touching me. I asked for her to move but still she refused to move. I left her standing in my cubicle and went to speak to the Acting Area Compliance Director, Ronald Pinsky about her unprofessional behavior. Despite repeatedly asking Ms. Stephens verbally, by phone, and by e-mail not to contact me at home when I am on leave or during non-working hours, she ignored my requests and makes calls to my home at odd hours during the evenings. She called and harassed me while I was on sick leave following major surgery, causing me to suffer a relapse in December 2001.

2. *What evidence do you have that reflects that the conduct/comments were based on your previous participation in the EEO complaint process?* I was treated differently than most people in the group. I was scrutinized on the same issues of the prior EEO complaint filed.

3. *What was your reaction to the harassment? Did you discuss the matter(s) with the harasser? If so, what was discussed?* I have asked Ms. Stephens not to hover over my shoulder when she came to my cubicle and she ignored my requests. In addition, I asked Ms. Stephens not to call my home when I am on leave, and during odd hours in the evenings. She stated that she would call my home at any time if there were a business reason. On several occasions I told Ms. Stephens that I do welcome constructive criticism, but I do not appreciate her derogatory petty notes in my activity records and attachments to my cases. On June 4, 2002 I again told me Ms. Stephens to stop harassing me.

4. *Did you indicate to the harasser that the conduct was unacceptable? If so, how?* Yes I did. (See question # 3).

5. *Did you talk to co-workers, friends or anyone else after the alleged harassment? If so, to whom? When? What was discussed?* On June 4, 2002 I spoke to Carl Tenny, the union Vice President, who accompanied Ms. Stephens after she came to my cubicle demanding the cases, and physically touched me. I told Mr. Tenny about the incident. I spoke to the union President, Jack Gregory about my hostile working environment. I also spoke to Dianne Regier a union representative, *LBL*

*177*

whom I had asked on two occasions to accompany me when I spoke to Ms. Stephens and her manager Jeannie Fisher. In my desperation for relieve I spoke to National Office union president Calvin Pollard, about my hostile working environment.

6. *Do you know of any other victims of the alleged harasser(s)? If so, who? When?* Yes. Carolyn Pozorski- approximately June 2002 and Jeanette Carter-Davis approximately July 2002

7. *Did you report the harassment to management? If so, when? Who?* Yes. January 25, 2002 and approximately last week of April 2002 to Jeannie Fisher. Both times she told me it was my opinion and she didn't think I was working in a hostile work environment. I went to Dick Valdez approximately the last week in April 2002; he stated that he did not want to talk to me because I had already filed an EEO complaint. I filed a complaint with the Commissioner's office March 4, 2002. I spoke to John Robinson, Director of EEO on June 13, 2002. I wrote a letter to Deputy Commissioner, Bob Wenzel on June 5, 2002.

8. *If you did report it, what did management do after you reported it to them?* Management did nothing to relieve me of the hostile working environment. I asked to be removed from Ms. Stephens's supervision but to no avail.

9. *Was the action taken sufficient?* Management did nothing in relieving me of the hostile working environment. I asked to be removed from Ms. Stephens's supervision but to no avail.

10. *Did the harassment stop or continue? Did you again go to management?* No. It did not stop. I kept going to management on an ongoing basis. Not applicable.

11. *Do you have any documents or exhibits to support your claim?* Yes, see attachments to the appropriate questions.

12. *Are there any witnesses with first-hand, pertinent knowledge of the event(s)? If so, who? What information can they provide that is relevant to your complaint?* The above two witnesses can attest to the hostile working environment that Ms. Stephens produce.

(3) *Delays in approving her travel advances, most recently on March 27, 2002, and denies her travel benefits.*

*178*

AFFIDAVIT        DISTRICT OF COLUMBIA        CITY OF WASHINGTON

1. *Describe, in chronological order, all acts of harassment, dates of occurrence and identity of the harasser(s).* On September 14, 2001 I submitted three vouchers for approval to Ms. Stephens. One of the vouchers was returned for correction and resubmitted. The other two vouchers were not approved until the first week in October although there were no corrections to the vouchers. On March 27, 2002 I submitted a travel advance for travel on April 4, 2002. Ms. Stephens did not approve my travel advance until April 3, 2002. As a result I did not receive the advance. Since I was on government travel in the Far East I took an advance on my personal credit card, incurring a transaction fee of $56.00. Unknown to me, Ms. Stephens wrote a memo to the travel office disallowing the amount although she knew that I did not receive the Government advance until I returned to the United States. In addition, in accordance to the travel manual the fees are reimbursable. On September 17, I submitted a travel advance that Ms. Stephen denied on September 18, without giving me an opportunity to respond to any questions she may have. Ms. Stephens had prior knowledge of those appointments scheduled for September 23 to September 27, and September 30 to October 4, 2002. Ms. Stephens and I discussed the appointments during a time review on my inventory on August 27, 2002.

2. *What evidence do you have that reflects that the conduct/comments were based on your previous participation in the EEO complaint process?* See Question 2 above.

3. *What was your reaction to the harassment? Did you discuss the matter(s) with the harasser? If so, what was discussed?* See question 3 above.

4. *Did you indicate to the harasser that the conduct was unacceptable? If so, how?* See question 4 above.

5. *Did you talk to co-workers, friends or anyone else after the alleged harassment? If so, to whom? When? What was discussed?* See question 5 above.

6. *Do you know of any other victims of the alleged harasser(s)? If so, who? When?* See question 6 above.

7. *Did you report the harassment to management? If so, when? Who?* See question 7 above.

Page 9 of 20

*179*

AFFIDAVIT            DISTRICT OF COLUMBIA            CITY OF WASHINGTON

8. *If you did report it, what did management do after you reported it to them?* See question 8 above.

9. *Was the action taken sufficient?* See question 9 above.

10. *Did the harassment stop or continue?* Did you again go to management? See question 10 above.

11. *Do you have any documents or exhibits to support your claim?* See Attached.

12. *Are there any witnesses with first-hand, pertinent knowledge of the event(s)? If so, who? What information can they provide that is relevant to your complaint?* See question 12 above.

(4) Fails to assign her cases consistent with her grade level.

1. *Describe, in chronological order, all acts of harassment, dates of occurrence and identity of the harasser(s).* Ms. Stephens has refused to assign me cases consistent with my grade level, and has instead ensured that only low caliber cases are assigned to me. For an agent of my academic and working credentials, this is an under-utilization of my skills. It is also very demeaning. From my return to work after 10 weeks of sick leave on January 14, 2002 my inventory was low. In March and May 2002 I was assigned new cases, which were not in conformity to my grade level. These cases were less complex and had asset levels that were lower. By asset level, I mean the company's net worth. In a memo dated June 5, 2002 Ms. Stephens commented, "Bernadette, your current inventory is lean (low), I will be assigning you new cases."

2. *What evidence do you have that reflects that the conduct/comments were based on your previous participation in the EEO complaint process?* See answer to Question #1.

3. *What was your reaction to the harassment? Did you discuss the matter(s) with the harasser? If so, what was discussed?*

4. *Did you indicate to the harasser that the conduct was unacceptable? If so, how?*

5. *Did you talk to co-workers, friends or anyone else after the alleged harassment? If so, to whom? When? What was discussed?*

6. *Do you know of any other victims of the alleged harasser(s)? If so, who? When?*

7. *Did you report the harassment to management? If so, when? Who?*

180

**AFFIDAVIT**       **DISTRICT OF COLUMBIA**       **CITY OF WASHINGTON**

8.  *If you did report it, what did management do after you reported it to them? Was the action taken sufficient?*

9.  *Did the harassment stop or continue? Did you again go to management?*

10. *Do you have any documents or exhibits to support your claim?*

11. *Are there any witnesses with first-hand, pertinent knowledge of the event(s)? If so, who? What information can they provide that is relevant to your complaint? For Questions 2- 11 see above.*

(5) *denies her the opportunity to act as manager.*

1.  *Describe, in chronological order, all acts of harassment, dates of occurrence and identity of the harasser(s).* In approximately September 2001, I had a conversation with Ms. Stephens and indicated my interest in acting as a manager. She told me usually when she's out she always has a senior agent acting as manager and I would have an opportunity. Being a senior agent in the group I was never given the opportunity to act as manager. Instead my co-worker, Sheryl Templeman (GS-12), was given the opportunity. In addition, other employees who were not members in our group were called upon to act as manager. (See attachment dated 4/19/02 by Evelyn Stephens).

2.  *What evidence do you have that reflects that the conduct/comments were based on your previous participation in the EEO complaint process?*

3.  *What was your reaction to the harassment? Did you discuss the matter(s) with the harasser? If so, what was discussed?*

4.  *Did you indicate to the harasser that the conduct was unacceptable? If so, how?*

5.  *Did you talk to co-workers, friends or anyone else after the alleged harassment? If so, to whom? When? What was discussed?*

6.  *Do you know of any other victims of the alleged harasser(s)? If so, who? When?*

7.  *Did you report the harassment to management? If so, when? Who?*

8.  *If you did report it, what did management do after you reported it to them?*

9.  *Was the action taken sufficient?*

10. *Did the harassment stop or continue? How? When? Did you again go to management?*

11. *Do you have any documents or exhibits to support your claim?*

Page 11 of 20

*/8/*

AFFIDAVIT    DISTRICT OF COLUMBIA    CITY OF WASHINGTON

12. *Are there any witnesses with first-hand, pertinent knowledge of the event(s)? If so, who? What information can they provide that is relevant to your complaint? For Questions 2- 12, see above.*

*(6) Forced her to work a case that had never been assigned to her in January 2002.*

1. *Describe, in chronological order, all acts of harassment, dates of occurrence and identity of the harasser(s).* On January 31, 2002, I found a case in my inventory that Ms. Stephens claimed she did not assign to me. Ms.Stephens made no attempt to clarify the matter, telling me instead to work all cases in my inventory. In January 2002 through a memo and verbally I informed Ms. Stephens of a case I was assigned on June 6, 2001, that had a Service Center controlled code. On August 15, 2001 during an IVL review I informed both Mr. Mosley and Ms. Stephens that the case had to be updated to a status code so that it can be included into my inventory. I had performed the clerical duties; however, management did follow not through. In October 2001, I orally reminded Ms. Stephens to update the case, however, the problem was not rectified. On January 16, 2002, I sent a memo to Ms. Stephens alerting her of the on going problem and the status of the case. I also forwarded a memo together with the case to PSP, where the tax returns are classified because there was less than thirteen months on the statute. The case was returned from PSP and I was told it was my responsibility. On February 22, 2002, Ms. Stephens wrote me an unfavorable memo pertaining to the case even though the code was not updated on the group level. The unfavorable memo was placed in my EPF. As of February 28, the Service Center had control of the case. On November 2000, January 16, and September 20, 2002, there was a case, which I closed in February 2000. Nevertheless, it showed up in my inventory. The matter was reported to Ms. Stephens both orally and through memos. (See documentation attached dated November 9, 2000, Ref: Lewis).

2. *What evidence do you have that reflects that the conduct/comments were based on your previous participation in the EEO complaint process?*

3. *What was your reaction to the harassment? Did you discuss the matter(s) with the harasser? If so, what was discussed?*

4. *Did you indicate to the harasser that the conduct was unacceptable? If so, how?*

182

5. *Did you talk to co-workers, friends or anyone else after the alleged harassment? If so, to whom? When? What was discussed?*

6. *Do you know of any other victims of the alleged harasser(s)? If so, who? When?*

7. *Did you report the harassment to management? If so, when? Who?*

8. *If you did report it, what did management do after you reported it to them?*

9. *Was the action taken sufficient?*

10. *Did the harassment stop or continue? How? When? Did you again go to management?*

11. Do you have any documents or exhibits to support your claim?

12. *Are there any witnesses with first-hand, pertinent knowledge of the event(s)? If so, who? What information can they provide that is relevant to your complaint?* For Questions 2-12 see answers above.

*(7) refused to grant her administrative leave to speak with an Employee Assistance Program (EAP) counselor in March 2002.*

1. *Describe, in chronological order, all acts of harassment, dates of occurrence and identity of the harasser(s).* During a conference with Ms. Stephens around February 14, 2002, I informed her I would be meeting with an EAP Counselor and she told me that I would need to take annual or sick leave for that purpose. I indicated to her that I am entitled to have two hours of administrative time. She disagreed. On March 4, 2002, and on April 2, 2002, Ms. Stephens refused to grant me administrative time to keep an appointment with an EPA counselor, suggesting instead that I take personal time or sick leave. I took sick leave on March 4, 2002 and April 2, 2002. My appointment was to discuss the stressful working environment. The rules and regulations clearly state that I am allowed two hours of administration time for four visits with my counselor. During a group meeting around the end of March 2002, I introduced the topic of taking administrative leave to speak to an EAP Counselor. Jack Gregory, the Union President, was at this meeting. He clearly emphasized that we are entitled to the administrative time and not to have to take sick or annual leave. Ms. Stephens said she was unaware of that and that it was her understanding that an employee has to take annual or sick leave.

2. *What evidence do you have that reflects that the conduct/comments were based on your previous participation in the EEO complaint process?*

3. *What was your reaction to the harassment? Did you discuss the matter(s) with the harasser? If so, what was discussed?*

4. *Did you indicate to the harasser that the conduct was unacceptable? If so, how?*

5. *Did you talk to co-workers, friends or anyone else after the alleged harassment? If so, to whom? When? What was discussed?*

6. *Do you know of any other victims of the alleged harasser(s)? If so, who? When?*

7. *Did you report the harassment to management? If so, when? Who?*

8. *If you did report it, what did management do after you reported it to them?*

9. *Was the action taken sufficient?*

10. *Did the harassment stop or continue? How? When? Did you again go to management?*

11. *Do you have any documents or exhibits to support your claim?*

12. *Are there any witnesses with first-hand, pertinent knowledge of the event(s)? If so, who? What information can they provide that is relevant to your complaint?* For questions 2-12, see answers above.

*(8) gave her a late, unfair annual appraisal on April 30, 2002, covering the rating period February 2001 through January 31, 2002, that was not based on prior case reviews or a self-assessment.*

1. *Describe, in chronological order, all acts of harassment, dates of occurrence and identity of the harasser(s).* On April 30, 2002, I received an annual rating for the period February 1, 2001 through January 31, 2002. This evaluation misrepresented my performance on two critical elements: Employee Satisfaction and Business Results; in both elements I received a numerical rating of a 3. My evaluation on both elements under my regular manager for the pervious rating was a 4. In addition to misrepresenting my performance, Ms. Stephens procrastinated until April 30, 2002 before giving me my evaluation. This delay occurred in spite of repeated requests to my manager, both orally and by way of memo that I needed the evaluation to apply for job opportunities then available. The union informed me that they were never notified that my evaluation was late. During the rating

*184*

period I never received a workload review. Ms. Stephens officially became my manager in September 1, 2001. On Thursday March 7, 2002, she informed me by telephone that my annual appraisal was completed and was awaiting the territory manager, Jeannie Fisher's signature. I asked her what information she used to evaluate my performance and she told me she used the information in my EPF. I informed her that there were inaccurate information in the EPF and that the matter was in dispute. Moreover, I had an EEO complaint pending against the acting manager who prepared the discriminatory information she used to prepare my evaluation. Before giving me my evaluation, Ms. Stephens asked me for an annual self-assessment on March 7, 2002. I responded with a memo dated March 14, 2002, in which I explained to her since she had already made up her mind and prepared the evaluation based on unobjective information, it was pointless to give her a self-assessment. Her assessment had already been made and was already awaiting the territory manager's signature. It came to light later that Ms. Stephens had signed the evaluation on March 4, 2002, three days subsequent to asking for a self-assessment and the territory manager, Jeannie Fisher signed it on March 14, 2002, even before receiving my response. Even though Ms. Stephens was reminded and knew that my evaluation was due, she never performed a workload review of my inventory. She instead asked me to produce two case files and I complied with her request. Ms. Stephens never informed me that she was going to review my work in progress and used that as a basis to write a review of my performance. Usually, managers advise agents in advance to prepare for a workload review then a date is set for the review. In fact, Ms. Stephens has herself done this with other agents in the group, but never gave me a chance to prepare for my own review. In addition to harassing me on every occasion by her constant pettiness and aggrieve, uncompromising attitude, Ms. Stephens took concrete steps to malign me, as are evident on the two counts, relative to my evaluation. Employee Satisfaction: Criteria 1.A, Being a Revenue Agent for more than fourteen years I have always treated my peers in a courteous and professional manner to foster excellent working relationship. I have always maintained good working relationship with peers across the country, as well as issue specialists with

185

whom I am often in contact to support issues on my cases. My evaluation does not reflect this performance. Employee Satisfaction: Criteria 1B, this is a new critical element, given the time frame of implementation; this element could not be observed. This evaluation is therefore not valid, but instead calculated to cause me harm. During the rating period, there were cases with activity codes 221 to 225 in my inventory, which were successfully closed agreed. In addition, my inventory the last four months of the rating period consisted of only seven cases. No workload reviews were performed during this period. Ms. Stephens did two case review of work in process without my knowledge. On one occasion the case was given to her for a statue update. Instead of the statute update she performed an evaluation, which was completely without foundation and totally disregarded information contained in the file in electronic form. Ms. Stephens blinded by hatred and enmity, never even looked at the electronic file, basing her evaluation instead on an otherwise empty file. This particular episode was a most egregious act of retaliation. During the rating period and during my career as an agent, I have consistently prioritized cases and identified issues, with the necessary pre-audit analyses. Because of the nature of some of the cases, I have had occasion to consult issue specialists and counsel to ensure adequate case development and expedite case closure. I have consistently issued Form 872 to taxpayers in accordance with established criteria. I have also consistently visited the taxpayers' place of business where the books and records are kept to perform fieldwork. Not only does my evaluation not reflect this performance; it also misrepresented my performance. One would expect that if my work was substandard my manager would counsel me. Ms. Stephens has never counseled me. In fact, I was not even aware that my evaluation rating would be decreased, because this was never communicated to me.

2. *What evidence do you have that reflects that the conduct/comments were based on your previous participation in the EEO complaint process?*

3. *What was your reaction to the harassment? Did you discuss the matter(s) with the harasser? If so, what was discussed?*

4. *Did you indicate to the harasser that the conduct was unacceptable? If so, how?*

186

5. *Did you talk to co-workers, friends or anyone else after the alleged harassment? If so, to whom? When? What was discussed?*

6. *Do you know of any other victims of the alleged harasser(s)? If so, who? When?*

7. *Did you report the harassment to management? If so, when? Who?*

8. *If you did report it, what did management do after you reported it to them?*

9. *Was the action taken sufficient?*

10. *Did the harassment stop or continue? How? When? Did you again go to management?*

11. *Do you have any documents or exhibits to support your claim?* Attached are my last three years Performance Appraisals and a memo from me to Evelyn Stephens dated March 14, 2002. Her receipt date is the stamped date of March 15, 2002.

12. *Are there any witnesses with first-hand, pertinent knowledge of the event(s)? If so, who? What information can they provide that is relevant to your complaint?* For questions 2-10 and 12, see above answers.

*(9) gave her an unfair mid-year evaluation with no narrative in August 2002.*

1. *Describe, in chronological order, all acts of harassment, dates of occurrence and identity of the harasser(s).* In August 2002, I received my mid-year evaluation, my ratings were decreased and there were no narratives attached, rendering the evaluation incomplete. Ms. Stephens refused to give me a complete evaluation, only the memo dated July 30, 2002 was received in my mailbox on 8/6/02. On August 20, I had a conference with Ms. Stephens to discuss my mid-year evaluation and asked her to tell me specifically why my rating was decreased. She did not answer my specific questions. Again I was never counseled nor was I aware that Ms. Stephens intended to decrease my evaluation, because this was never communicated to me.

2. *What evidence do you have that reflects that the conduct/comments were based on your previous participation in the EEO complaint process?*

3. *What was your reaction to the harassment? Did you discuss the matter(s) with the harasser? If so, what was discussed?*

4. *Did you indicate to the harasser that the conduct was unacceptable? If so, how?*

5. *Did you talk to co-workers, friends or anyone else after the alleged harassment? If so, to whom? When? What was discussed?*

**AFFIDAVIT**    DISTRICT OF COLUMBIA    CITY OF WASHINGTON

6. *Do you know of any other victims of the alleged harasser(s)? If so, who? When?*

7. *Did you report the harassment to management? If so, when? Who?*

8. *If you did report it, what did management do after you reported it to them?*

9. *Was the action taken sufficient?*

10. *Did the harassment stop or continue? How? When? Did you again go to management?*

11. *Do you have any documents or exhibits to support your claim?*

12. *Are there any witnesses with first-hand, pertinent knowledge of the event(s)? If so, who? What information can they provide that is relevant to your complaint?* For questions 2-12 see above answers.

(10) *in August 2002, restricted the amount of time she was allowed to review her Employee Performance Folder (EPF) and included memoranda in the file that were never discussed with her.*

1. *Describe, in chronological order, all acts of harassment, dates of occurrence and identity of the harasser(s).* My manager's retaliatory measures have now progressed to the point where she engages in power play and unethical conduct in furtherance of her malicious intent to undermine me. On August 20, 2002, I asked to review my EPF. During the review I discovered a memo in my EPF that Ms. Stephens had prepared, recommending that I be reprimanded for insubordination. She never discussed this with me and I was never aware of the insubordination act. In any event, the territory manager rejected her recommendation, but Ms. Stephens nevertheless, maliciously placed the letter in my EPF. When I confronted her regarding the memo, she told me it was never approved. Ms. Stephens then restricted the review to half an hour, stating she had a meeting at 2 PM. We then scheduled an appointment to continue the review the following day at 1 PM. On the following day when I called to continue the review, Ms. Stephens told me she had a 1 PM lunch appointment and she will call me upon her return. At approximately 2:25 PM, she called me stating that I can view my file but she will be leaving the office at 3 PM. This effectively restricted the review to thirty minutes. I scheduled another appointment with her the following day, and she told me that she would call me on that day (8/22/02) to confirm a time. That day I

*188*

went to Ms. Stephens's office at least on three occasions but each time she was not in her office. Believing that Ms. Stephens was deliberately trying to stall me, I sent her an e-mail with two proposed dates to conclude the viewing of my files. That same day (8/22/02) at 4:04 PM, Ms. Stephens sent me a VMS stating that she was in and out of the office all day and could not meet with me. On Monday August 27, 2002 I received a VMS from Ms. Stephens stating that she wanted to perform a 4502 review and AFTER the review I can conclude viewing my EPF. On Wednesday August 28, 2002, Ms. Stephens did a 4502 review as stated in a prior VMS AFTER the 4502 review, Ms. Stephens gave me 40 minutes to view my EPF. She then told me my time was over and if I wanted more time to view my EPF, I can get the information from EEO counselor. During the review of my EPF I discovered memos in the file, which were never given to me. In addition, some of my responses to her memos were not included in my files. Ms. Stephens appeared to be selectively placing misinformation, including fictitious memos in my EPF in furtherance of her retaliation against me.

2. *What evidence do you have that reflects that the conduct/comments were based on your previous participation in the EEO complaint process?*

3. *What was your reaction to the harassment? Did you discuss the matter(s) with the harasser? If so, what was discussed?*

4. *Did you indicate to the harasser that the conduct was unacceptable? If so, how?*

5. *Did you talk to co-workers, friends or anyone else after the alleged harassment? If so, to whom? When? What was discussed?*

6. *Do you know of any other victims of the alleged harasser(s)? If so, who? When?*

7. *Did you report the harassment to management? If so, when? Who?*

8. *If you did report it, what did management do after you reported it to them?*

9. *Was the action taken sufficient?*

10. *Did the harassment stop or continue? How? When? Did you again go to management?*

11. *Do you have any documents or exhibits to support your claim?*

189

AFFIDAVIT          DISTRICT OF COLUMBIA          CITY OF WASHINGTON

12. *Are there any witnesses with first-hand, pertinent knowledge of the event(s)? If so, who? What information can they provide that is relevant to your complaint?* For questions 2-12 see answers above.

13. *State requested remedial relief.*

- The retaliation and harassment described above has made the workplace environment untenable, as a result
- To be reassigned from Area 15 and from Ms. Stephens supervision.
- To be in a LMSB group where I can use my academic knowledge (MS in Taxation) and acquire auditing skills to better serve the government.
- Full payment of my attorney fees by the Agency.
- An investigator to verify the information in my files as compared to other members in the group
- To be reimbursed for all annual leave I have had to take to prepare my EEO matters
- To have all derogatory information placed in my file to be removed.
- To be considered for a GS-512-14 bargaining unit position

---------------------------------------------------------------------------------

I have read the above statement, consisting of 20 pages and it is true and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

(Deponent's Signature)

Bernadette Billy-Lera

Subscribed and sworn to
before me at Washington, DC
on this 14th day of November, 2002

(Investigator's Signature)

190