**Internal Revenue Agent**
**MEMORANDUM**

**Date:  March 15, 2002**

**To:   Bernadette Billy-Lera**
**GS 13 Revenue Agent**

**From:  Evelyn M. Stephens, Manager**
**S:C: 15:Terr. 1: 1111**

**Subject:  Annual Rating and Procedures**

Bernadette, I am writing this memorandum in response to your memo to me dated March 14, 2002 stamped and received March 15, 2002. We both were in the office and the content did not require a memo. To respond to your memorandum, your evaluation was completed; however, I told you that I would hold it for your self-assessment to be include. You said you were going to provide your assessment to me on Tuesday, March 12, 2002. I did not receive it on Tuesday. I held your evaluation for several days after Tuesday waiting for your assessment and actually, I forgot to ask you again with my busy schedule this week. I thought it was important enough to you and you would have prepared and provided it to me as you said. Today, I provided your files to the territory manager for her review and signature. Previous to our oral discussion of your self-assessment, I sent a message to all personnel with evaluations due and asked for input/assessments in early February. You said you did not get the message, others group members responded.

This morning, March 15, 2002, I spent a substantial amount of time with you and/or concerning Form 1038, an advance of Funds Application request you gave me Thursday, March 14, 2002 at approximately 1:45 P.M. Bernadette, I am asking you follow procedures, guidelines, and timely submit request for travel funds. Today, I told you that I had not received a calendar from you and you responded you have not submitted one because you did not want it to be used against you. A planning calendar is a tool that would help you, it can change as changes occur and it can be updated. You have a laptop that you can use to prepare a monthly calendar. You can make as many changes to it as necessary. This equipment was issued to help you do your job more efficient and effective.

Bernadette, you need to start **timely** planning and scheduling your audit activity and administrative requirements to travel. You are a GS 13 revenue agent and I should not have to spend time on paper documents as Form 1038. You should have requested your advance on TRAS. The Form 1038 is for emergency purposes; this was not an emergency but untimely planning and preparing.

*BBL*
*203*

-2-

The form was submitted to me incomplete; the authorization number, appropriation code, and your name was missing. You spent time locating the proper person to issue the cash, traveled to another office to obtain the cash, and time discussing with me. Finally, this was not good utilization of time for all involved because traveling for a planned audit is NOT an emergency.

Another area I would like to address is communication with taxpayers and/or representatives. The past few weeks I have had to spend a considerable amount of time on the telephone with representatives stating they did not receive timely and complete responses to their correspondence from you. When I reviewed your correspondence to the representative, I found it to be vague and did not address the representative question. Your facsimile transmission (fax) dated March 14, 2002, is one I have reviewed and is referencing. Per our discussion because of the call from the representative to me, you immediately prepared a memorandum to the representative and addressed his questions in a facsimile transmittal (fax) dated March 8, 2002. You should have used the division letterhead on your memorandum dated March 14, 2002. **We are required to use Small Business Self-Employee letterhead on ALL correspondence to taxpayers.** In addition, Bernadette you should use spell check and proof your correspondence, there are several errors in your memorandum.

Bernadette, I will NOT continue to respond to memorandum from you to me, as the one attached. I do not believe this is good utilization of your time. If you have a question, give me a call or stop and see me as you do already.

*BBL*

*204*

Internal Revenue Service
MEMORANDUM

Date:  March 28, 2002

  To:  Evelyn Stephens, Group Manager 1111

From:  Bernadette Billy-Lera, Revenue Agent, Group 1111 *Bernadette Billy-Lera*

Subject:  Annual Rating and Procedures

This is in response to your memo dated March 15, 2002, which I received on March 28, 2000.

Notwithstanding your assertion that you will NOT continue to respond to memorandum from me, I am obliged to respond to you in the same manner you communicated with me, since I cannot let your documented charges go unchallenged. Whatever your motive may be for writing your memorandum, I take issue with the erroneous statements made therein. In order to protect myself I must ensure that your documentation reflects the truth.

Since my evaluation had already been prepared by you and was awaiting the Territory manager's signature, it was pointless to provide you with a self-assessment, since you had already made up your mind regarding my evaluation. Contrary to the statement made in your memorandum to me, other agents in my group have indicated they did not receive any message from you regarding self-assessment when their evaluations were due. There were no e-mails, voice mail, or discussion in either group meetings or other forum.

Regarding Form 1035, I provided you with the procedure since I was familiar with the process and you told me you were not familiar with either the form or the procedure. Since you mistrusted the information I provided, you asked me for the telephone number, the location and the name of the imprest fund cashier. You then called to verify the information I provided.

With respect to the travel advance, when I received Form 1321 on Wednesday March 13, 2002, I then applied for an advance. As you have witnessed, I could not get into the Tras system. I gave you two forms 1035; the one without my name was for my record. The other form had all the relevant information except the authorization codes. Why wasn't the form with my name approved with your signature?

Regarding your communication with the representative/ taxpayer, you and I had two managerial conferences with the same representative. On one occasion you instructed me not to contact the representative or the issue specialist with whom I was working. You further advised me to close the case "for the good of the Service", since the statute was due to expire in April and the taxpayer refused to sign the Form 872.

*BBL*

*205*

On the other occasion we had two managerial conferences with the other representative. On one occasion you told me you spoke with the representative for 56 minutes in my absence, even though you did not have the benefit of being able to refer to the case file. While I do not question your right to speak with taxpayers' representatives, I am deeply concerned that you will engage in a 56-minute conversation with a representative without referring to the case file or consulting with me as the agent on the case. Like every other employee, I expect that you will consult with me regarding your contacts with my taxpayers, so that we can discuss matters pertinent to the case and evaluate the taxpayer's charges or opinions in the context of the ongoing examination. You did not provide me with the benefit of a consultation, but instead rushed to judgement.

I consider your memorandum, among other things, to be uncalled for and calculated to denigrate me. For instance, you spoke of errors in my memorandum and the fact that I did not spell check. Your memorandum is also replete with grammatical errors, but I will not judge your greater talent by reference to those mistakes. I would have liked if you could have shown me the same courtesy, as we all make mistakes in our rush to beat time.

Since you have sent me so many correspondences, each attacking me for one reason or another, I suspect you are attempting to build a file on me for future adverse action because of the complaints I filed with EEO. It is for this reason that I respond to each memo, taking care to point out erroneous charges and set the record straight.

INTERNAL REVENUE SERVICE
S:C:15:T1
SB/SE
APR 0 1 2002

*BB*

*206*

*Internal Revenue Service*
*MEMORANDUM*

*Date:  June 27, 2002*

   *To:  Bernadette Billy-Lera  .*
      *Revenue Agent*

*From: Evelyn M. Stephens*
      *Manager 1111*

---

*Subject:  Request for ⬤-E⬤Co., Ltd. Case file (Directive)*

*Bernadette, this memorandum is a follow-up to my e-mail, voice mail message and oral request for the above subject case files today. I requested the file today by 2:00 P.M. but you did not respond to the messages. You indicated in the sign out book that you were working flexi place. I called on two occasions at your flexi place location (your residence) and did not get an answer. The secretary also attempted to call you but there was no answer prior to 3:30 P.M. Approximately 3:35 P.M. the secretary reached you by telephone at your flexi place location. She forwarded the call to me, as she knew I had been trying to reach you since early in the workday. Bernadette, I informed you that I had received a fax from the power of attorney on the above case and I needed to review the file to respond to him fax. I advised you that I had left you the above mentioned messages. You responded you had not received the messages. Because of the time, I asked you to bring the case file to me tomorrow morning, June 28, 2002. You replied you were signed out for flexi place and will bring the case to me on Monday. I responded that flexi place was not approved for you tomorrow because I needed to talk to you and review the case file to respond to the correspondence. I repeated myself and stated this was a directive from me.*

*Bernadette, I regret to have to continue document issues of this kind. As your manager, I have empowered you, as all others in the group, to be independent and professional. Whenever I request a case file from you, it is for necessary business reasons. Please know this request was made by me to provide a quality response to the power of attorney on this overage case.*

*I will see you tomorrow morning as directed.*

*βθ+*

*207*

*Subject: Your "directive" of 6/27/02.*

*Evelyn: In the most recent past, you had asked me for cases, stating there were urgent business reasons for your requests. As it turned out, the "business reasons" were to spontaneously perform a case evaluation and score me low in the process, without informing me of your intentions. For example, In December 2001, while I was on scheduled sick leave you called my home and demanded a case file. When the case was available no one came to get it. Five weeks later when I returned to the office you were given the "urgent case" and asked me not to contact the issue specialist or the Representative with whom I was in consultation. On March 27, 2002 I gave you a case for statue update and you performed a review on the case without my knowledge. On May 6, and on May 15, you again spontaneously did the same thing. Evaluation of an employee's performance is not a matter of spontaneity, and the employee should be given adequate time to prepare his or her cases for evaluation. This is the process that is generally being used in the Service and this is the process you have used with selected employees.*

*Under the circumstances, I have lost credibility in your statements and am skeptical whenever you request a case for "urgent business reasons". If a taxpayer sends a correspondence regarding one of my cases, the correspondence should be shared with me, and any response should be discussed with me, since I am familiar with the facts and you are not. Moreover, I am the one who performs the examination, and I am the one who routinely interacts with the taxpayer. It is therefore natural that I would have more thorough knowledge of the facts than you. Notwithstanding my skepticism of your requests, I have promptly complied with your directive to appear in the office today and urgently produce the case you requested.*

*Regarding messages to my home, if I am on the computer, my phone would naturally ring out, since I only have one phone line. If I am not on the computer, then my answering machine would come on. The fact that you got no answer because my phone rang out, would indicate to a reasonable person that I was doing my job when you called.*

*The fact that you sent me an email, made phone calls and spoke to me orally with great urgency, then followed up with this letter, copied to your manager, would indicate an event of catastrophic proportion is taking place. I was relieved to know that you merely wanted to respond to a taxpayer concerning a fax. Like you, I am very concerned that responses are timely, but I am also concerned that the response is balanced and factual and is prepared after consulting with the agent regarding all facts and circumstances, including the issues being reviewed, the level of cooperation of the taxpayer, the stage of the audit and an assessment of the current status of the case.*

*I look forward to working with you to resolve any concerns the taxpayer may have.*

208



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

*Received Oct 3, 2002.*

SMALL BUSINESS/SELF-EMPLOYED DIVISION

October 1, 2002

To: Bernadette Billy-Lera, Revenue Agent

From: Evelyn M. Stephens, Supervisory Internal Revenue Agent *Evelyn M. Stephens*

Subject: Travel Voucher 9/9-13/02 and Travel Advance 9/23-10/4/02

Bernadette, this memorandum is in response to your memorandum to me dated September 24, 2002 received September 27, 2002, on the above subject.

Bernadette, the reason your travel voucher was not approved when originally submitted was because you did not follow the instructions from me and the reporting instruction provided for attending Continued Professional Education (CPE) in Jacksonville. The instruction via an email message stated you must follow the instructions or get approval to deviate. I was instructed to approve expenses as per reporting instruction, expenses at the Holiday Inn. I was told the coordinators had negotiated the number of lodging rooms at the Holiday Inn for free meeting space. Because of my desire to approve your voucher, I requested approval to approve your voucher for a greater amount for lodging than budgeted. I received that approval yesterday, September 30, 2002, and I will approve the travel voucher as soon as TRAS is operational. I tried to get into the system today and it was down.

In regards to the advance, I requested a cost comparison of travel to Harrisburg, PA because of the cost of airfare. When I asked you how you was traveling, you told me your had planned to fly. I never instructed or directed you to drive your car. As I recall, the train was the discussed or referenced means of transportation for you to use. I stated I always drive to Harrisburg because it easier to get to the city by car but never said you must drive your car. When I receive your South Carolina itinerary that I requested over a week ago, I will approve your advance. I would like to see the case files for both trips, Harrisburg and South Carolina. Upon receipt of this memorandum would be appreciated. From my perspective, you should have provided me the requested information timely and kept your appointments. You have a government issued credit card that could have been used for the majority of the business expenses. In addition, you have called off at least two days during this period that would have affected audit activity and productivity.

Bernadette you stated that multitude of correspondences have been left out of your EPF. I do not know what correspondence you are referring to, so please provide me copies and I will gladly file them in your binder.

*BBL*
*209*

In regards to September 20, 2002, anytime I make a call to anyone in the group, I used the locator. Apparently, when I called the locator indicated you were working on flexi place. Bernadette, my workday is too busy to recall a particular day I made eye contact with you or anyone else.

Bernadette, your statement regarding my attempts to develop negative material for purpose of indictment is incorrect and a misrepresentation of the facts. The memorandum you are referencing to is one I wrote that was pending my manger's approval. I explained that to you and the NTEU representative. The memorandum stated the facts as stated in my memorandum to you on insubornation, failing to follow my direction. The memorandum was not hold punched and filed in your binder; it was in the pending section of your binder. I thought you understood, because the NTEU representative asked if it was going to become part of your file and I answered him no, because it was not approved. Bernadette, your work representation is not the result of my action, it is a result of your action and behavior.

Finally, Bernadette, I have never misrepresented the facts regarding you. I do not have time to add to my workload by creating situations or making up scenarios. Please know that I am a mature professional woman. As a manager, I try to have healthy and productive relationships with everyone. I am sorry you have misunderstood my actions and apparently have the wrong impression of me as your manager. My role as manager is to provide leadership, support, assistance, and feedback, using fair and equitable treatment.

If you have any questions on this memorandum, please let me know.

CC: Jeannie Fisher

ßBt

210



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

SMALL BUSINESS/SELF-EMPLOYED DIVISION

To: Evelyn Stephens, Group Manager, Group 1111

From: Bernadette Billy-Lera, Revenue Agent, Group 1111 *Bernadette Billy-L*

cc: Jeannie Fisher, Territory Manager, Area 15

Date: September 24, 2002

Subject: Travel Advance 9/23- 10/4/02 and Travel Voucher 9/9-9/13/02

Evelyn: I noted you stated that you will not respond to my correspondences. I will therefore elevate my correspondences to the Territory Manager so that my responses to your enquiries and pronouncements receive official recognition. I take this step because when I reviewed my EPF, I noted that you inserted inflammatory material in my file that purportedly came from the Territory manager. It turned out that the Territory Manager never approved this material. However, in your attempt to develop negative material in my case file for the purpose of indictment, you clearly violated the rules of ethical conduct and maliciously placed the inflammatory material in my case file. In addition, memoranda I sent to you in response to your multitude of correspondences, were conveniently left out of my EPF. I request that you kindly place these memoranda in my file to fairly reflect matters on which we corresponded.

With respect to the travel to Jacksonville on 9/9-9/13/02, the correspondence to which you referred did not state that there was a pre-arranged hotel rate that was different from the Government allowable rate. I stayed at a hotel that accepted the going Government rate and that was within my rights. Since I did not exceed the Government rate, I will not change my voucher. In the reporting instructions the lodging per diem was not stated. Based on past experience I researched the lodging per diem and stayed within that rate. Per IRM if a reduced rate is used instead of the maximum per diem rate the instructions should be specific as to the reduced per diem rates quoted by management instead of the maximum per diem rate to which the employee is entitled.

In the class on Wednesday 11, September 2002 one of the coordinators stated that the per diem rate was increased to $81, instead of $65.00. However, she continued to say that both hotel and the IRS were unaware of the rate increase at the time the arrangement was made to have the CPE at the hotel. She also mentioned that the hotel wanted to increase that rate to the maximum per diem, but decided not to do so to foster good relationship.

On Thursday September 18, 2002 I retrieved your VMS, which you left on Wednesday September 17, 2002, directing me to come to the office on Friday September 20, 2002.

*BBL*
*211*

In the message you stated that you did not approve my travel advance which I submitted on TRAS on September 17, 2002 for travel to an audit for the weeks of September 23 and September 30, 2002. You stated that you needed a transportation comparison by air, rail and car to Harrisburg, Pennsylvania and transportation information for the audit to South Carolina for the week of September 30, 2002. We had already discussed this earlier and you are perfectly aware that I told you I had made comparisons, but that the comparison did not include use of my own car. You are exceeding the bounds of your authority in dictating to me that I should use my own car. An advance request is mearly an estimate which must be paid back, nevertheless, you refused to approve my request. By not approving my request you have forced me to cancel my trip to Harrisburg and South Carolina. Your unreasonableness in this matter has therefore resulted in an audit not conducted. This is clearly not in the best interest of the Government. Attached is my travel itinerary to Harrisburg.

Secondly, you stated that you had returned my voucher to change the lodging per diem rate, which I incurred for CPE in Jacksonville Florida from $81.00 to a reduced rate of $65.00. As I stated above, I will not change the voucher, since it was properly prepared. Moreover, you are exceeding your authority in improperly denying me reimbursement for Government travel.

Finally, you sent me a memorandum stating that I was not in the office on Friday, September 20, 2002 per your instruction. On the contrary, I was in the office the whole day Friday from 7:50a.m. until 4:45p.m. My co-workers can verify those hours. In addition, you passed by my cubicle at around 12:00 noon on that day and our eyes made contact. This is another example of your misrepresentation of the facts to denigrate me and set me up for the kind of malicious letter you placed in my EPF that purported to come from the Territory Manager. I would like to ask you to cease and desist from this kind of behavior in the interest of a good working environment where the conduct of the Government's work can take precedence.

212

Date : April 2, 2002

: Evelyn Stphens

From : BERNADETTE BILLY-LORA

Subject : FORM 9512-A

Per your message on the above subject to my home on April 1, 2002
registered at 6:15pm, attached is a copy of the position and the
announcement number

I am sorry that you were unable to be at the office during regular
working hours. I was told by Jeannie Fisher that you will be in the
office today, and in addition, you left a vms message to me on Thursday
March 28, 2002 that you will be present today (ie. 4/1/02).

The time you asked me to contact you at the office (i.e between 6:15pm - 8:30pm or
11:00pm) was not feasible.

If you have any questions do not hesitate to contact me. Thank you,

Building name

BBL

213

**Billy-Lera Bernadette**

| | |
|---|---|
| **From:** | Stephens Evelyn M |
| **ent:** | Thursday, May 09, 2002 6:04 PM |
| **To:** | Billy-Lera Bernadette |
| **Subject:** | Priority Cases/Inventory |

Bernadette,

**Please come see me tomorrow, 5/10/02, at 10:00 A.M. I would like to talk to you about the above subject.**

**Please bring the case with the June statute expiration date, the case you went to Canada on late March and/or early April and the case you went to Hong Kong on to continue the audit.**

**I had planned to discuss with you today, but you called off so I hoping to discuss tomorrow, 5/10/02.**

*Evelyn M. Stephens*
*International Manager 1111/2111*
*202-874-1683*

Evelyn:
I was on annual leave on Thursday May 9, 2002, as you were aware, because I left a message to you before eight am. on that same day. This is the second time that I am asking you not to contact me at my home when I am leave. Per our conversation, on Friday is this a work-load?

*BtBr*

*214*

To: Evelyn Stephens, Group Manager, Group 1111

From: Bernadette Billy-Lera, Revenue Agent, Group 1111    *Bernadette Billy-Lera*

Date: March 14, 2002

Ref: Annual Rating - Oral conversation

Per your oral conversation on the above topic you told me that you had already prepared my annual rating and it was awaiting the Territory Manager, Jeannie Fisher's approval. You also asked me for a self-assessment for the rating period.

Since the annual rating was already completed, at this time I think it is pointless giving you an input of a self-assessment

If you have any questions pertaining to the above do not hesitate to call me. Thank you.



Received
Internal Revenue Service
SB SE Compliance

MAR 1 5 2002

Area 15, Washington
Territory 1.

270



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

SMALL BUSINESS/SELF-EMPLOYED DIVISION

*Internal Revenue Service*
*MEMORANDUM*

To:  *Bernadette Billy-Lera*

Date:  *July 30, 2002*

From:  *Evelyn M. Stephens, Supervisor IRA*

Subject:  **Mid-Year Performance**

*Based on observation of your performance during the last six months
(workload/inventory review, case reviews, related case forms and documents, and
discussion of cases) your rating at this time is as follows:*

- *Employee Satisfaction-Employee Contribution*       3
- *Customer Satisfaction-Knowledge*                            4
- *Customer Satisfaction-Application*                          3
- *Business Results-Quality*                                        3
- *Business Results-Efficiency*                                    3

*Bernadette, I will continue to review cases (in-process and closed) at random for
the remaining of this year's rating period but know you can initiate a case review.
I would like to point out that your performance in Customer Satisfaction-
Application based on reviews has changed since your annual rating.  You have
received copies all reviews, however, I would like to meet with you to discuss.  Let
me know when it is convenient for you.*

*If you have any questions regarding this memorandum, please let me know.*

271



**DEPARTMENT OF THE TREASURY**
**INTERNAL REVENUE SERVICE**
**Washington, D.C. 20224**

SMALL BUSINESS/SELF-EMPLOYED DIVISION

Bernadette Billy-Lera
GS-13 Revenue Agent

*Copy Was not Approved 8/20/02*

Dear Ms. Billy-Lera:

This is an official Letter of Reprimand for your two acts of insubordination on Tuesday, June 4, 2002.

Both you and your manager, Ms. Evelyn M. Stephens, met in the conference room on June 4, 2002, to discuss a case that you planned to examine. During the discussion, you stated that you received a Form 872 on another case, a 1998 return with a June 29, 2002 statute of limitation date. You mentioned this particular case because Ms. Stephens had been involved with monitoring the case statute date and audit activity. Ms. Stephens had a lengthy conversation with the power of attorney that resulted in the extension being granted. Ms. Stephens asked you twice to give her the case file, but you refused both times.

The first time Ms. Stephens asked for the file, your response was that you would give it to her later in the day. Ms. Stephens indicated that she had several other items on her itinerary and, therefore, had to document the activity record at that time. You then replied you had to stamp the Form 872 and do something else. Ms. Stephens responded that she would wait. While Ms. Stephens waited, you stamped the Form 872, locked your files, picked up your water bottle, and walked out of your cubicle.

Upon her return to her office on the third floor, Ms. Stephens observed you walking out of the Area Director's area. Her attempt to speak to you was disregarded, as you kept walking. Ms. Stephens then went to the Vice-President of Chapter 83, Carl Tenny, and asked if he would accompany her to request the case file again. When they arrived to your cubicle, you were not there. They waited approximately 23 minutes for your return. When you returned, Ms. Stephens again asked you for the case file to document the case activity record on the short statute case. You refused to give her the file a second time. You replied, " I do not come to work to be harassed." Carl attempted to say something to you and you then stated that you would bring it to your manager in fifteen minutes. Ms. Stephens left your cubicle and returned to her office. She then advised the group secretary to bring her the case files upon receipt from you. You delivered the case at approximately 2:20 P.M.

Your failure to follow direct orders is a violation of the Interim Handbook of Employee Conduct and Ethical Behavior, Section 215.2, Performance of Duty, which states in part: "Employees are expected to . . . respond readily to the direction of their supervisors. . . ."

276

You are cautioned that any future violations of this nature or other misconduct may result in more severe disciplinary action, up to and including removal.

You have the right to make this action the subject of a grievance under Article 41 of the Master Agreement. The grievance, if initiated, must be filed within fifteen (15) workdays from the date you receive this letter.

A copy of this letter will be placed in your Official Personnel Folder for a period of two (2) years and will be disposed of at the end of that time.

A sanitized copy of this letter will be provided to NTEU, Chapter 83.

Sincerely yours,


Jeannie Fisher
Area 15, Territory 1 Manager

277

**Internal Revenue Service**
**MEMORANDUM**

to:  Bernadette Billy-Lera

date:  February 19, 2002

from:  Evelyn M. Stephens

Subject:  Rebuttal to Form 6067 Re:          als  9512 & 9612 1040NR

Bernadette, this memorandum is to advise you that I am attaching your rebuttal to the documentation on the above case review.

The rebuttal does not change the facts that when you closed the case it was NOT prepared for closure correct. In addition, the report of examination changes had error and/or deficiencies that effect processing.

I discussed this case with you on August 14, 2001, at that time you indicated to me that this was a possible fraud referral and that the T/P was in London. I requested the workpapers to review. The ERCS report showed the 9512 was requested for review, source code 45 with a statute date of 04FF1999 in status 10 and 9612 was a source code 05 with a statute date of 04EE2000 in status 12 with 24 hours charged at that date. When you advised me that the workpapers could not be retrieved I told you they must be written to justify your action and decision. In addition, you are required to back up your taxpayer data.

I have copies of both 4318's, at first and second closing attached to the documentation

278

## Stephens Evelyn M

| | |
|---|---|
| **From:** | Stephens Evelyn M |
| **Sent:** | Thursday, June 27, 2002 11:09 AM |
| **To:** | Billy-Lera Bernadette |
| **Cc:** | Fisher Jeannie B |
| **Subject:** | RE: Travel Authorization & Previous Close Return (Case) |
| | |
| **Follow Up Flag:** | Follow up |
| **Due By:** | Friday, June 28, 2002 5:00 PM |
| **Flag Status:** | Flagged |

Bernadette,

Did you receive the case review? Please bring the case and review to my office this afternoon and we can discuss.

In addition, I tried to call you this morning at home and did not get an answer. Linda called you again around 10:30 A.M. and did not get an answer. Bernadette, you are required to leave a telephone number of contact in the sign-in book.

I am requesting that you bring the case you are/were working on and with POA Thomas Hathway. I am not including the T/P name due to disclosure. If you have any question on this message, please come see me.

For the record, it is 11:11 A.M. 6/27/02.

*Evelyn M. Stephens*
*Group Manager S:C:15:Terr.1:1111*
*202-874-1683*

----Original Message----
| | |
|---|---|
| **From:** | Billy-Lera Bernadette |
| **Sent:** | Wednesday, June 26, 2002 1:37 PM |
| **To:** | Stephens Evelyn M |
| **Subject:** | FW: Travel Authorization & Previous Close Return (Case) |

----Original Message----
| | |
|---|---|
| **From:** | Stephens Evelyn M |
| **Sent:** | Thursday, June 20, 2002 4:16 PM |
| **To:** | Billy-Lera Bernadette |
| **Subject:** | RE: Travel Authorization & Previous Close Return (Case) |

Evelyn:
        This case was never discussed. You asked me for the case file on May 15, 2002 and did not inform me that you were doing a review. I asked you why you needed the casefile and you did not respond.

Bernadette,
We discussed the case in your cubicle. I received the case file for review and prepare documentation of my review which I have given you. Please refer to that feedback and respond to the questions asked.

Evelyn M. Stephens
International Manager  1111/2111
202-874-1683

----Original Message----

1

*ing*
*13/11/05*

*304*

Group Manager S:C:15:Terr.1:1111
202-874-1683

Evelyn:
* The telephone expense taken for the period 4/5 – 4/8 in the amount of
  $21.28 was mistakenly deducted in the lodging column: was corrected.

* The cab expense of $76.40 is substantiated on the Master card dated 4/16/02. The Master Card statement was
  attached and still is attached to the voucher.
* Lodging expense will not based on the perdiem, because the actual amount spent was less than perdiem.
* I had to switch hotels because of the availability for the period I was in Hong Kong.
* I submitted my advance on March 28, 2002, on that same day I informed you through VMS. You returned my
  call asking why I needed such a large amount of advance. I explained to you the perdiem amounts for both MI&E
  and lodging. You stated you will approve the amount. I again called you on April 2 when you still did not approve
  my advance: you told me it will be done on that day. Unfortunately, you did not approve my advance untiil April 5,
  2002 after I had left for Hong Kong. During the time I was in Hong Kong I DID NOT RECEIVE ANY OF THE
  ADVANCED FUNDS. Since I needed cash because I could not always use the Master card I had to take an
  advance on my personal card.
The advanced funds you approved was not disbursed to me until AFTER my return from travel.

310

**Stephens Evelyn M**

| | |
|---|---|
| **From:** | Billy-Lera Bernadette |
| **Sent:** | Wednesday, August 07, 2002 8:47 AM |
| **To:** | Stephens Evelyn M |
| **Subject:** | Mid-Year Evaluation & Administration Leave |

Evelyn:

    I will like to meet with you on Tuesday August 13, 2002 at 9:00 AM to discuss the mid-year evaluation I received on Tuesday August 6, 2002.

On Friday August 9, 2002 I am requesting 2 administration leave from 11:30 A.M. to 1:30 P.M. to attend the EPA program.

If you have any questions please do not hesitate to call.

Bernadette Billy-Lera

Revenue Agent

*[handwritten notes]*

8/8/02 @ 1:35 pm I telephoned Bernadette @ 301-352-7977

telephoned Bernadette @ 1:35 pm. I advised that I was not going to be in next week advised no schedule to meet w/ her 8/9/02. Tomorrow is not good she has someone coming stated to prepare some appearance and needed the leave.

We discussed time for EAP — I noted the using leave for EAP services to her her attention.

We schedule the meeting to discuss her review on 8/20/02 @ 1 pm.

1

*311*



### How the program works

Participating in the EAP begins with a phone call. Professional counselors are available seven days a week, 24 hours a day, and will ask you a series of questions to be able to ~~assign you the counselor who best meets your needs.~~

These counselors are contracted to work with the EAP through the Managed Health Network (MHN). This contractor has 22,000 counselors nationwide.

You can call the EAP yourself or be referred by your manager or union steward, or your Labor Relations or Health Unit staff. (A referral to the EAP is one way of ensuring that a work group's productivity remains high even though an employee in the work group is experiencing problems.)

Sessions with an EAP counselor can be over the phone from your office or home or in person with a local therapist.

### Cost

Talking with or meeting with an EAP counselor (up to four times per presenting issue) is free. You will need to pay for any counseling sessions beyond this limit.

### Privacy Issues

Your participation in the EAP is confidential. However, if your manager or union steward refers you to the EAP, the manager or steward can call the EAP to see if you attended the session and request an assessment of how much work time will be needed for your continuing counseling or rehabilitation. The counselor cannot discuss any additional information because that information is covered by the Privacy Act.

### Using leave for EAP services

You are allowed up to one hour of excused absence for each telephone session (up to four sessions) to talk with an EAP counselor per issue that you have. You are also allowed one hour plus travel time of excused absence to see a local counselor in person (up to four sessions). You will need to use your own leave if you need additional counseling beyond the four sessions.

You can also request other types of leave (for example, sick or annual leave).

### Changing counselors

If you are participating in the EAP and you do not like your counselor, you will be given another one immediately.

> % The EAP also has a complaint and grievance procedure. Call (800) 227-1060.

### Management participation

As IRS employees, managers can use EAP services. In addition, they may use *management consultation* and *traumatic incident* services.

*Management consultation services.* Managers (or union stewards) who have concerns about a specific employee whose conduct or personal problems are affecting his or her performance and the performance of the work group can call the EAP manager to request a

**Stephens Evelyn M**

| | |
|---|---|
| From: | Stephens Evelyn M |
| Sent: | Thursday, August 08, 2002 11:21 AM |
| To: | Billy-Lera Bernadette |
| Subject: | RE: Mid-Year Evaluation  & Administration Leave |

Bernadette,
I will not be able to meet with you on Tuesday, August 13, 2002 but I can meet with you tomorrow, 8/9/02 at
9:00 AM.  The date and time is in conflict with my schedule for next Tuesday.  I will call you at your
flexiplace location today, 8/8/02.  Please know I received this message today as my email indicated
yesterday, I was not in the office nor could I retrieve email messages.

In regards to administrative leave for EAP, it is my understanding from the information I have
received, you are allowed up to one hour of excused absence for each telephone session (up to four
sessions) to talk with an EAP counselor per issue that you have.  You are also allowed one hour plus
travel time of excused absence to see a local counselor in person (up to four sessions).   So, unless
you have one hour of travel time, you are approved for one hour on August 9, 2002.  If you
circumstance is not as described above, please give me a call and/or send a message to explain
before 8/8/02.


*Evelyn M. Stephens*
*Group Manager S:C:15:Terr.1:1111*
*202-874-1683*

| | |
|---|---|
| ----Original Message----- | |
| From: | Billy-Lera Bernadette |
| Sent: | Wednesday, August 07, 2002 8:47 AM |
| To: | Stephens Evelyn M |
| Subject: | Mid-Year Evaluation  & Administration Leave |

Evelyn:
    I will like to meet with you on Tuesday August 13, 2002 at 9:00 AM to discuss the mid-year evaluation I received
on Tuesday August 6, 2002.

 On Friday August 9, 2002 I am requesting 2 administration leave from 11:30 A.M. to 1:30 P.M.  to attend the EPA
program.

If you have any questions please do not hesitate to call.


Bernadette Billy-Lera

Revenue Agent

1

*3/3*

**Stephens Evelyn M**

| | |
|---|---|
| **From:** | Fisher Jeannie B. |
| **Sent:** | Thursday, February 21, 2002 5:04 PM |
| **To:** | Stephens Evelyn M |
| **Subject:** | Relocation advance |

Evelyn,

As we discussed earlier today, there has been no change in the amount outstanding from a relocation advance issued to Bernadette Billy-Lera sometime around 1995. This first came to my attention in August 2001. From the audit requested from Beckley Finance, a voucher was filed in January 1997. An advance amount of $2,189.80 continues outstanding. Please provide Bernadette with the manual requirements for settlement of the outstanding amount and direct her to resolve this issue promptly. She should respond to you regarding confirmation of contact and actions taken to resolve this amount. Your discussions with her should include an agreed upon date for ths response.

I realize that this issue has virtually been dumped in your lap and should have been resolved many years ago. Regardless, it is essential that the outstanding amount be paid by the employee or action taken to support any contention that the monies is not due. I sincerely appreciate all your help.

Jeannie

1

*318*

**Internal Revenue Service**
**MEMORANDUM**

to:   Bernadette Billy-Lera

date:   February 22, 2002

from:   Evelyn M. Stephens, Manager 1111

Subject:   Outstanding Relocation Advance

Bernadette, again I have to address the above subject with you because I am asked questions on your outstanding relocation advance balance of $2,189.80 since around 1995. As you know, we have had several discussions, oral and written, on this subject. In my last communication, I requested the name of the person you are working with to resolve this matter. You have not provided me the name of that person. See copies of my memorandums on this subject dated October 25, 2001 and October 30, 2001. You responded on October 29, 2001 that you were in discussion with the **authorities** regarding your claim. See memorandum attached.

Bernadette, **I am requesting the name of the authorities and their telephone number and your means of contact.** Your memorandum dated October 29, 2001 was the last information I received from you on this outstanding relocation advance that did not provided what I requested. It has been over three months since you stated you would keep me informed. In one of our discussions, you indicated you were not going to provide details regarding this issue with local management, please know I am not requesting details; my request is stated above. This issue must be resolved immediately from my perspective; I must have the name of the person (s) you are working with so I can be removed from addressing this issue. The outstanding relocation balance continues to show on the territory travel report. I am asked about it because I am your manager. **I am requesting this information by the end of this month, February 28, 2002. This date is not optional nor requires further discussion.**

Bernadette, again I regret to have to spend my time repeating and re-visiting this outstanding relocation advance since around 1995. If you have any question on this memorandum, **excluding the response date and requested information,** let me know.

CC:EPF-Bernadette Billy-Lera
      Jeannie Fisher, Territory Manager

**Internal Revenue Service**
**MEMORANDUM**

to:    Bernadette Billy-Lera

date:    October 25, 2001

from:    Evelyn M. Stephens, Acting Manager 1111

Subject:    Outstanding Moving Expenses

Bernadette, this is a follow-up on several conversations regarding some outstanding relocation (moving) expenses in the amount of $2,189.80. In a meeting with Acting Manager, Robert Mosley shortly after I reported to the area and territory as Acting Manager of 1111, he reminded you that these expenses had to be resolved. Since that time, approximately August 29, 2001, I received an inquiry on the status of the issue. I also received an automated financial travel overdue balance report from the finance office showing the amount mention above as outstanding.

Bernadette, I know you have received several inquiries on travel issues in the last few months, since I reported. I am optimistic you will resolve this issue immediately. I regret as much as you to have to address this subject with you. You have told me that you were working with someone to resolve. Please provide me with an update with supporting documents to demonstrate the issue is being resolved. You know we have guidelines and rules we must follow in claiming and resolving travel/relocation expenses.

If I can be of assistance in any way, please let me know. If you have any question regarding this memorandum, please let me know and/or see me.

*320*

**Internal Revenue Service**
**MEMORANDUM**

to:    Bernadette Billy-Lera

date:    October 30, 2001

from:    Evelyn M. Stephens, Acting Manager 1111

Subject:    Travel and Relocation Issues

Bernadette, first I would like to address the manner/form of communications on the above subject. I prefer face to face discussion that affords each person involved the opportunity to ask questions and exchange information for a clear understanding, to be on one accord. I issued the memorandums on the subject because I am acting and my detail will be ending November 30,2001 and I wanted the permanent manager to have documentation on the discussion and for follow-up, if necessary.

Second, in regards to the date you submitted your vouchers to me, you were instructed to take the New York travel expenses off the TRAS voucher by Acting Manager, Robert Mosley. When I received the TRAS and manual vouchers, they all had New York expenses on them that were questionable and required corrections and/or explanation. When you revised the TRAS voucher and re-entered it, you locked the voucher, which prevented me from approving. I call the TRAS Coordinator, Ellis Moss and asked him to unlock your voucher. Mr. Moss sent you a message with a copy to me that your voucher was locked and unsigned. I also called you at home on two occasions and left messages that I had questions on your vouchers. Bernadette, I was disappointed that you would state I did not timely approve your voucher when they were submitted with expenses that had to be corrected by you. In addition, you duplicated expenses on the voucher dated 7/19-8/3/01, you claimed meal expenses that was on your hotel bill in addition to the maximum meal allowance per day for the area. Please know I would have approved your voucher if you had followed your previous manager instruction, removed the New York expenses and filed them without questions and errors. It is true one of your manual vouchers, was approved without you making corrections, even though you were asked to correct. I approved because of the problem you stated you was experiencing with the government credit card company, the cut-off of travel due to fiscal yearend, and for the good of the service. The same questionable expenses were on that voucher. I concluded to approve and issue the memorandum. I also suggested you submit an advance to pay the credit card bill during one of our discussions.

*ems*
*12/13/02*
*321*

-2-

Third, you may be correct in that your tax home is not reference in the travel manual, however, the bottom line is **ALL** expenses associated with you flying out of an airport not in the area of your official duty station must be considered. When we discussed this issue, you did not consider your **time**, **MI & E**, and <u>**additional local transportation**</u> where you stated in New York.

Fourth, I am sorry you feel that following the travel requirements in claiming expenses are retaliatory measures. The corrections had to be made because approving a voucher means you agree. I am here to provide support, leadership, and assistance, not to punish. I am an adult and a professional. I do not practice the inhuman behavior you stated, "punish". The discussions and memorandums on the subject were not meant to insult you or be offense, as you stated in your memorandum.

Finally, your previous manager, Robert Mosley, asked you to resolve and/or repay the government for the outstanding relocation expenses in the meeting over six week ago. It is my understanding you are working with someone on resolving the issue. I asked you to provide me with an update with supporting documents to demonstrate the issue is being resolved. See memorandum to you dated October 25, 2001; subject "Outstanding Moving Expenses". I am still waiting for you to comply with the request. The memorandum dated October 29, 2001 does not satisfy my request, there was no documentation attached.

I am sending territory manager, Jeannie Fisher and area director, Richard Valdez a copy of this memorandum because you sent them a copy of your memorandum stating I untimely approved your voucher, which is NOT the total truth. The vouchers contained questionable, duplicated, and/or unallowable expenses that created the delay in approving. I am hopeful you will not have to involve upper management with issues of this kind and we work together to resolve any differences, if any.

CC: Jeannie Fisher
    Richard Valdez

322

**Internal Revenue Service
Memorandum**

To:  Evelyn M. Stephens, Acting Manager 1111

From: Bernadette Billy-Lera    *Bernadette Billy-Leen*

Date: October 29, 2001

Re: Outstanding Moving Expenses. Your memo of 10/25/2001

I do not agree with your characterization of the inquiries I received or the number of conversations we had. However, please be informed that I am in discussion with the authorities regarding a claim I had submitted and will keep you informed as to its disposition.

*EMS
12/13/02  325*

**Internal Revenue Service**
**MEMORANDUM**

to:   Bernadette Billy-Lera

date:   April 19, 2002

from:   Evelyn M. Stephens, Manager 1111

Subject:   Outstanding Relocation Advance

Bernadette this memorandum is written to again address the outstanding relocation advance of $2,189.80. The advance must be repaid according the Internal Revenue Manual 1764 section 250.

You advised me that there were problems with your claim and you were working to resolve. The appeal and discussion of your expenses does not remove your responsibility of repayment of the advance. Please refer to the manual section and the person you indicated you are working with on this subject.

Please take immediate action, by April 30, 2002, to repay and provide me a copy with document to the finance center. If you need assistance with the repayment requirements, please contact Angela Cook at (301) 492-5606.

CC:EPF-Bernadette Billy-Lera
    Jeannie Fisher, Territory Manager
    Angela Cook

**Stephens Evelyn M**

**From:** Fisher Jeannie B
**Sent:** Tuesday, April 23, 2002 7:35 AM
**To:** Stephens Evelyn M
**Subject:** Outstanding Advance

Evelyn, please provide a status report on the outstanding advance monies due to relocation by Bernadette.

Thanks,
Jeannie

1

# Routing Slip


Internal Revenue Service

| To *Bernadette* | Symbol | Room | Action Code | Initial/Date |
|---|---|---|---|---|
| *Re: Travel Responsibility / Vouchers* | | | | |

☐ 1. Per our conversation
☐ 2. As requested
☐ 3. Approval
☒ 4. Comments
☒ 5. Information
☐ 6. Corrections

☐ 7. Signature
☐ 8. Initials
☐ 9. Note and return
☒ 10. Necessary action
☐ 11. See me
☐ 12. Call me
☐ 13. File

☐ 14. Prepare reply for signature of

☐ 15. Please answer by

**Remarks**

*Bernadette please send and follow in the future. It has been over 30 days since you traveled. See attached IRM Travel Handbook 122.3*

**From** *Evelyn*

**Phone**

**Room No.**

**Date** 6/28/02

Form 1725 (Rev. 8-85)    *U.S. GPO: 1994-379-382/19129

326

and required to make good to the United States the amount of any payment which did not represent a legal obligation. To protect themselves against liability for certification and payment of questionable vouchers, certifying officers have the right to refer any question of law (regulation) about payments to the Comptroller General for a ruling. No IRS official has the authority to direct a certifying officer to certify a payment on which the certifying officer questions the propriety of the claim. Travelers may resubmit an amount suspended by a certifying officer on a reclaim voucher. A disputed claim will be sent to the General Accounting Office, Claims Group, for review and a ruling. See text 733 for details of this procedure. The supervisor's signature on a travel voucher also indicates approval of certain types of expenses, as prescribed in the Federal Travel Regulations and regulations of the Internal Revenue Service. The supervisor is responsible for ensuring that the travel voucher contains substantiating statements signed by the appropriate official, as required for specific travel expenses. In addition, a supervisor's signature on a travel voucher which leaves a partial travel advance outstanding indicates the supervisor's agreement that the traveler should retain the advance.

## 122  (11–9–93)
### Travelers' Responsibilities   1763

### 122.1  (11–9–93)
### General   1763

(1) Familiarity with Regulations—Travelers are responsible for becoming familiar with the Federal Travel Regulations and travel regulations of the Internal Revenue Service so they may properly claim reimbursement for authorized travel. Travelers are required to perform all official travel within the guidance and direction provided by these regulations. Travelers are responsible for asking their supervisors for clarification of any regulations that they do not understand.

(2) Performance of Travel—Travelers are responsible for exercising prudence and economy when incurring reimbursable travel expenses in the performance of official travel. Travelers shall use the method of transportation that results in the greatest overall advantage to the Government, considering cost and other factors such as energy conservation, and discount or special rate air fares. Travelers should plan travel to minimize per diem expense to the Service. Travelers should not delay the performance of official travel for

personal benefit. Travelers are responsible for any additional expenses resulting from scheduling travel for personal convenience and must charge excess travel time against leave.

### 122.2  (11–9–93)   1763
### Financial Responsibility

(1) Advance of Funds—The traveler is responsible and accountable for funds advanced for travel purposes. Such funds are an indebtedness of the traveler to the Government and the traveler must account for advances according to the regulations provided in this handbook. An employee must promptly return advanced funds whenever they are not used for the intended expense, if the authorized expense is canceled or deferred, or when the amount exceeds reasonable needs. Travel advances must be substantiated on a traveler voucher or returned within a reasonable period. Unsubstantiated advance amounts may be reported as taxable income on the employee's W–2. See text 549.

(2) Using Charge Cards—The traveler is responsible for charge cards issued for official travel. The traveler must follow current procedures on authorization and reimbursement for charge cards and their use. Travelers should use charge cards for purchase of common carrier transportation, lodging, meals, automobile rentals and other major travel-related expenses whenever possible. See text 320 for a discussion on the use of charge cards. The traveler is liable for all charges. The Fiscal Management Office will not reimburse travelers above maximum levels prescribed by law.

(3) Using Government Transportation Requests (GTRs)—The traveler is responsible for all GTRs issued for official travel. Travelers should only use GTRs for official transportation services provided by common carrier, and not for other types of transportation. See text 330 for a discussion on the use of GTRs.

### 122.3  (6–6–94)   1763
### Reporting Responsibilities

(1) Submitting Vouchers—The traveler is responsible for reporting all payments for official travel on the travel voucher, including payment by credit cards, cash, GTR, or any other payment mechanism. The traveler must submit a

MT 1763–92

**122.3**
IR Manual



Travel Handbook

travel voucher and liquidate the amount of any outstanding advance within either 15 work days after completion of travel or by the end of the month when in a continuous travel status. After using a charge card, the traveler must file the travel voucher in a timely manner to be sure that reimbursement coincides with the charge card billing. See text 320 for a discussion of use of the charge card.

(2) Promotional Materials—The traveler is responsible for reporting the receipt of all promotional materials received from airlines, other transportation companies, hotels, automobile rental companies, or other business entities resulting from official travel. All such promotional materials belong to the Government and the traveler must accept them on behalf of the Government. Promotional material includes the offer of free lodging, free or reduced airfare, cash, merchandise, gifts, trading stamps and other gratuities, and credits for use towards the purchase of goods or services. Promotional material may also be the result of participating in "frequent flyer" or "frequent traveler" programs, or accumulating

miles or points with an airline, hotel, or automobile rental company. Travelers shall accept all promotional materials and bonus goods and turn them in with the applicable travel voucher under the policy stated in Treasury Directive No. 74–05. For more information on promotional materials, see text 421.(3) and (4) and text 470.

(3) Lost or Stolen Materials—The traveler is responsible for reporting any lost or stolen GTRs, tickets, Government charge cards, or any other travel-related materials with monetary value. If a ticket was purchased with a GTR, the report should be submitted to the fiscal office. If the ticket was purchased from a TMC, the report should be submitted to the TMC. Travelers must submit lost ticket applications when applicable.

(4) Unused or Partially Used Tickets—The traveler must report unused, partially used, or downgraded tickets purchased with the charge card or by any other means. The traveler is responsible for returning unused or partially used tickets to the source of procurement.

**122.3**
IR Manual

MT 1763–92

(Next page is 1763–11)

**Stephens Evelyn M**

| | |
|---|---|
| From: | Billy-Lera Bernadette |
| Sent: | Tuesday, July 02, 2002 4:13 PM |
| To: | Stephens Evelyn M |
| Subject: | RE: Travel Authorization & Previous Close Return (Case) |

——Original Message——
From:    Stephens Evelyn M
Sent:    Thursday, June 27, 2002 11:09 AM
To:      Billy-Lera Bernadette
Cc:      Fisher Jeannie B
Subject: RE: Travel Authorization & Previous Close Return (Case)

Evelyn:
   Refer to my memo responding to "case review".
I sent you an e-mail pertaining to "your directive" dated June 27, 2002 after 5pm.  You are quite aware that I am unable to retreive my e-mail messages from my home.  In addition, you were given a response from me for the Rep.on Friday June 28, 2002.


Bernadette,
Did you receive the case review?  Please bring the case and review to my office this afternoon and we can discuss.

In addition, I tried to call you this morning at home and did not get an answer.  Linda called you again around 10:30 A.M. and did not get an answer.  Bernadette, you are required to leave a telephone number of contact in the sign-in book.

I am requesting that you bring the case you are/were working on and with POA Thomas Hathway.  I am not including the T/P name due to disclosure.  If you have any question on this message, please come see me.

For the record, it is 11:11 A.M.,6/27/02.

Evelyn M. Stephens
Group Manager S:C:15:Terr.1:1111
202-874-1683

——Original Message——
From:    Billy-Lera Bernadette
Sent:    Wednesday, June 26, 2002 1:37 PM
To:      Stephens Evelyn M
Subject: FW: Travel Authorization & Previous Close Return (Case)

——Original Message——
From:    Stephens Evelyn M
Sent:    Thursday, June 20, 2002 4:16 PM
To:      Billy-Lera Bernadette
Subject: RE: Travel Authorization & Previous Close Return (Case)

Evelyn:

1

This case was never discussed. You asked me for the case file on May 15, 2002 and did not inform me that you were doing a review. I asked you why you needed the casefile and you did not respond.

Bernadette,
We discussed the case in your cubicle. I received the case file for review and prepare documentation of my review which I have given you. Please refer to that feedback and respond to the questions asked.

Evelyn M. Stephens
International Manager  1111/2111
202-874-1683

----Original Message----
From:        Billy-Lera Bernadette
Sent:        Thursday, June 20, 2002 11:28 AM
To:  Stephens Evelyn M
Subject:        FW: Travel Authorization & Previous Close Return (Case)


----Original Message----
From:        Stephens Evelyn M
Sent:        Thursday, June 13, 2002 4:44 PM
To:  Billy-Lera Bernadette
Subject:        RE: Travel Authorization & Previous Close Return (Case)

Evelyn:
The travel office should be aware of my plans to travel because it was submitted to you since May 8, 2002 over five weeks ago, prior to you asking for justification. As a field Agent all my audits or field work are conducted on site examining all the books and records in accordance with the manual.
What type of justification do I need to supply to you?. What are the procedures for justification and where can I find them. On June 4, 2002 without discussion you told me to close the case "No Change " when the two prior years were closed "change no change"



Bernie,
How does the travel office know you have travel planned?  Your travel request was pending justification that the audit should be conducted and I have not received that to approve the travel.

Evelyn M. Stephens
International Manager  1111/2111
202-874-1683

----Original Message----
From:        Billy-Lera Bernadette
Sent:        Thursday, June 13, 2002 4:03 PM
To:        Stephens Evelyn M
Subject:        FW: Travel Authorization & Previous Close Return (Case)


----Original Message----
From:        Stephens Evelyn M
Sent:        Thursday, June 13, 2002 3:01 PM
To:        Billy-Lera Bernadette
Subject:        RE: Travel Authorization & Previous Close Return (Case)


Evelyn: In regards to my travel to Canada next week I indicated to you that the case was closed "change no change" with a signed agreed report for the two previous years by the Rep.
Per your review you will receive a written response next week.
My travel request given to you on May 8, 2002, do I notify the travel office of my cancelled trip, since you requested that the case be closed "no change"?

2

*330*

Bernie, I called you and left a message a few minutes ago.

The discussion this week via returned call had to do with travel in late April or early May that I was reporting on in my monthly travel report. I called to see if you had submitted your travel voucher for your last audit expenses. This had nothing to do with your schedule audit in Canada, to my knowledge. Please advise, if I am incorrect.

In regards to your planned audit in Canada this month, I reviewed the case scheduled this month as part of your inventory/workload review that presented several questions. I provided you with my review and questions, I have not received a response to the question or the case back to support an audit of this year return. You examined the prior years that resulted in a 'No Change" and there was nothing in the file to justify a follow-up audit. This is what I recall, you have the case and my review notes.

If you have any additional questions or need to discuss further, please see me.

Evelyn M. Stephens
International Manager 1111/2111
202-874-1683

-----Original Message-----
**From:**     Billy-Lera Bernadette
**Sent:**     Thursday, June 13, 2002 2:11 PM
**To:**       Stephens Evelyn M
**Subject:**  FW:


-----Original Message-----
**From:**     Stephens Evelyn M
**Sent:**     Tuesday, June 11, 2002 11:27 AM
**To:**       Billy-Lera Bernadette
**Subject:**  RE:

Evelyn: I got your message and returned your call on that same day. We briefly discussed my prior travel for this quarter.
Could you please update me on status of my travel request to Canada given to you on 5/8/02 for travel on 6/17/02? Since you requested that I close that case "no change " and not travel to the audit should I inform the travel office, please advice?

Bernie,
I left you a voice message this morning, please get back to me on the call. Thanks for the information.

Evelyn M. Stephens
International Manager 1111/2111
202-874-1683

-----Original Message-----
**From:**     Billy-Lera Bernadette
**Sent:**     Tuesday, June 11, 2002 11:14 AM
**To:**       Payton Linda B
**Cc:**       Stephens Evelyn M
**Subject:**

Linda:
Per e-mail message

Type of equipment: Computer & Printer
Bar Codes; none/ I don't know
Serial number: Computer: G0Y085103080 B  Printer : Don't have the info now
Make/Model: Computer: Micron  , Printer : Canon BJ 30

I will call in my serial number of the printer tomorrow 6/12/02.

Sorry for the delay

3

*331*

Thanks,

Bernie.

4

332

**Stephens Evelyn M**

| | |
|---|---|
| **From:** | Cook Angela |
| **Sent:** | Wednesday, July 10, 2002 6:18 PM |
| **To:** | Stephens Evelyn M |
| **Cc:** | Fisher Jeannie B |
| **Subject:** | RE: Outstanding Relocation Advance-Bernadette Billy-Lera |

Evelyn,

   Bernadette's account is still reflecting an outstand advance amount.  She has not repaid this advance.  Her case has been referred to GLS to get a legal opinion regarding her relocation expenses which were disallowed.  Based on the facts that were presented to us we could not make a determination to allow reimbursement.  Our lawyer who handles our cases is concernly on annual leave this week and next week.   I will contact the lawyer when he return to get a status.  You should here from me regarding this matter no later then August 5.  Let me know if you have any other questions.

Thanks,

Angela Cook
Chief, IRS Office of Travel
Management & Relocation
(301)492-5606

----Original Message----

| | |
|---|---|
| **From:** | Stephens Evelyn M |
| **Sent:** | Tuesday, July 09, 2002 5:48 PM |
| **To:** | Cook Angela |
| **Cc:** | Fisher Jeannie B |
| **Subject:** | Outstanding Relocation Advance-Bernadette Billy-Lera |

Good Morning Angela,
This is a follow-up to a voice mail message left and memorndum dated April 19, 2002 on the above subject.

What is the status of this advance?  Has it been repaid?  I issued a memo to Bernadette and instructed her to repay the amount and provide me a copy of proof of payment but she has NOT responded or provided me any information.

Evelyn M. Stephens
International Manager  1111/2111
202-874-1683

1

Subj:    update
Date:    12/12/2001 1:45:32 PM Eastern Standard Time
From:    Jeannie.B.Fisher@irs.gov (Fisher Jeannie B)
: emstep@aol.com ('emstep@aol.com')
CC: Tess.Tillotson@irs.gov (Tillotson Tess)

Hi Evelyn,

Hope you are having a good week.  I wanted to touch base to let you know
that I have not received phone call, message, or anything from Bernadette.
As I mentioned to you previously, I called her at 6:30 pm last Thursday and
again at 8 pm., leaving a message both times with my home phone number and
my cell phone number.  I have not received a response to date.  Tess also
has had no contact. The representative is expecting a follow-up contact next
week.  Do you want us to attempt additional contact or would you prefer to
try to call her yourself?  Also, is she due back into the office, or to work
for that matter, prior to January?

Thanks, Jeannie


<!DOCTYPE HTML PUBLIC "-//W3C//DTD HTML 3.2//EN">

<HEAD>
<META HTTP-EQUIV="Content-Type" CONTENT="text/html; charset=iso-8859-1">
<META NAME="Generator" CONTENT="MS Exchange Server version 5.5.2653.12">
<TITLE>update</TITLE>
</HEAD>

Hi Evelyn,


Hope you are having a good week.  I wanted to touch base to let you know that I have not received phone call,
message, or anything from Bernadette.  As I mentioned to you previously, I called her at 6:30 pm last Thursday and
again at 8 pm., leaving a message both times with my home phone number and my cell phone number.  I have not
received a response to date.  Tess also has had no contact. The representative is expecting a follow-up contact next
week.  Do you want us to attempt additional contact or would you prefer to try to call her yourself?  Also, is she
due back into the office, or to work for that matter, prior to January?


Thanks, Jeannie


—————————— Headers ——————————
Return-Path: <Jeannie.B.Fisher@irs.gov>
Received: from  rly-yb02.mx.aol.com (rly-yb02.mail.aol.com [172.18.146.2]) by air-yb01.mail.aol.com (v62.22) with ESMTP id
MAILINYB19-1212134532; Wed, 12 Dec 2001 13:45:32 -0500
Received: from  mx-relay2.treas.gov (mx-relay2.treas.gov [199.196.144.6]) by rly-yb02.mx.aol.com (v62.22) with ESMTP id
MAILRELAYINYB210-1212134508; Wed, 12 Dec 2001 13:45:08 -0500
Received: from tlas4.treas.gov (tias-gw4.treas.gov [199.196.144.14])
        by mx-relay2.treas.gov (8.10.2+Sun/8.9.3) with SMTP id fBCIIAs23670

338

Subj:    **the case/locked cabinet**
Date:    12/13/2001 5:09:02 PM Eastern Standard Time
From:    Tess.Tillotson@irs.gov (Tillotson Tess)
To:    Evelyn.M.Stephens@irs.gov (Stephens Evelyn M), emstep@aol.com ('emstep@aol.com')
CC:    Jeannie.B.Fisher@irs.gov (Fisher Jeannie B)

The POA just called to tell me Bernadette had called him Tuesday and she
told him the case was in a locked cabinet in her house, and could he wait
until mid-January to discuss the case only with her.  His client does not
want to wait and does not want to sign the extension giving another year for
fear of more procrastination.  Bernadette told him she needed time to
consult with an issue specialist.  The issue is a section 351 nonrecognition
of gain or loss upon transfer.

With the call from Bernadette's attorney today I believe she is out of town
now until after the holidays.  POA is Howard Berman, 212-708-4261.    Tes

Revenue Agent - Area 15
S:C:15:T1:1110
202-874-1382


<!DOCTYPE HTML PUBLIC "-//W3C//DTD HTML 3.2//EN">

<HEAD>
<META HTTP-EQUIV="Content-Type" CONTENT="text/html; charset=iso-8859-1">
<META NAME="Generator" CONTENT="MS Exchange Server version 5.5.2653.12">
<TITLE>the case/locked cabinet</TITLE>
</HEAD>


The POA just called to tell me Bernadette had called him Tuesday and she told him the case was in a locked cabinet in her
house, and could he wait until mid-January to discuss the case only with her.  His client does not want to wait and
does not want to sign the extension giving another year for fear of more procrastination.  Bernadette told him she
needed time to consult with an issue specialist.  The issue is a section 351 nonrecognition of gain or loss upon
transfer. 

With the call from Bernadette's attorney today I believe she is out of town now until after the holidays.  POA is Howard
Berman, 212-708-4261.     Tes


Revenue Agent - Area 15

S:C:15:T1:1110
202-874-1382


―――――――― Headers ――――――――
Return-Path: <Tess.Tillotson@irs.gov>
Received: from rly-yb03.mx.aol.com (rly-yb03.mail.aol.com [172.18.146.3]) by air-yb01.mail.aol.com (v82.22) with ESMTP id
MAILINYB11-1213170902; Thu, 13 Dec 2001 17:09:02 1900
Received: from mx-relay2.treas.gov (mx-relay2.treas.gov [199.196.144.6]) by rly-yb03.mx.aol.com (v83.18) with ESMTP id
MILRELAYINYB36-1213170843; Thu, 13 Dec 2001 17:08:43 -0500
Received: from tias4.treas.gov (tias-gw4.treas.gov [199.196.144.14])
    by mx-relay2.treas.gov (8.10.2+Sun/8.9.3) with SMTP id fBDM7is22513

839
12/13/02

Subj:    TP Rep
Date:    12/17/2001 4:56:00 PM Eastern Standard Time
From:    Jeannie.B.Fisher@irs.gov (Fisher Jeannie B)
         emstep@aol.com ('emstep@aol.com')

Hi Evelyn,

Hope all is well with you.

Bernadette called Linda today to inform her that she would not be back until
January 14. She has some 40 hours SL and 200+ AL. She indicated to Linda
that she had contacted the leave bank for donations. I do not know if she
has had complications or what the situation is.

We had committed to the Taxpayer Rep that we would contact him this week
under the assumption that the case would be available as Ms. Billy-Lera's
attorney noted. I do not know in what manner we are to receive the case, if
she is bringing here, sending here or what. Regardless, it is not available
at this point.

I asked Tess to send you the reps phone number. In order to keep this
contained to the degree possible, I would ask that you contact the rep,
identify yourself as the permanent manager in a move situation and ask to be
able to secure the case after you are here permanently, review it and then
respond to him as to actions we will be taking with regard to the taxpayer
and identified issues.

Please call me if you have questions.

Have a happy holiday if I do not talk with you before.

Jeannie

<!DOCTYPE HTML PUBLIC "-//W3C//DTD HTML 3.2//EN">

<HEAD>
<META HTTP-EQUIV="Content-Type" CONTENT="text/html; charset=iso-8859-1">
<META NAME="Generator" CONTENT="MS Exchange Server version 5.5.2653.12">
<TITLE>TP Rep</TITLE>
</HEAD>

Hi Evelyn,

Hope all is well with you.

Bernadette called Linda today to inform her that she would not be back until January 14.  She has some 40 hours SL
and 200+ AL. She indicated to Linda that she had contacted the leave bank for donations.  I do not know if she has had
complications or what the situation is.

340
12/13/04

Subj: ~~[redacted]~~

D~~[redacted]~~ 12/19/2001 9:16:56 AM Eastern Standard Time

F~~[redacted]~~ Tess.Tillotson@irs.gov (Tillotson Tess)

To: Evelyn.M.Stephens@irs.gov (Stephens Evelyn M), emstep@aol.com ('emstep@aol.com')

Evelyn:

1. The message below from Mr. Hatheway is just for your information/records. Linda will be looking for the case so that I may respond to Mr. Hatheway today or tomorrow at the latest.

2. Mr. Bowman, the POA for Bernadette's other case called again yesterday and requested that you call him Wednesday or leave a number where you can be reached.
Jeannie had mentioned briefly that the case may be stamped no change. She was planning on calling you Monday PM. Tes

——Original Message——
From: Thomas_Hatheway@sney.com [mailto:Thomas_Hatheway@sney.com]
Sent: Wednesday, December 19, 2001 3:04 AM
To: Tillotson Tess
Cc: Ayako_Hirayama@sney.com
Subject: 
Importance: High

M~~[redacted]~~illotson,

Thank you for responding. Any assistance you can provide in resolving any outstanding issues and bring closure to the examination will be greatly appreciated.

We received a notice of examination from Ms. Billy-Lera, dated May 11, 1999, for the following taxpayer:



Tax Year: FYE 3/31/97
Form: 1120-F

~~[redacted]~~ U.S. business: ~~[redacted]~~ U.S. business consists of investments in U.S. rental real estate, utilizing independent management companies, and investments in a few U.S. real estate partnerships. ~~[redacted]~~, a foreign corporation with no office or place of business in the U.S., files Form 1120-F. ~~[redacted]~~ income/deductions are reported pursuant to information statements received from independent management companies and Schedule K-1's. Accordingly, there generally should be no potential adjustments to ~~[redacted]~~Co., Ltd.'s tax filings.

I forwarded Form 2848 to the attention of Ms. Billy-Lera on June 14, 1999 and attempted to contact her. As the client is a foreign corporation, with no ~~[redacted]~~ or place of business in the U.S., we requested that our Honolulu office act as the taxpayer representative for the examination. A representative from our Honolulu office, was in contact with Ms. Billy-Lera and coordinated the delivery of information per the IDR (Information

341
12/13/0~~[?]~~

Document Request - Form 4564). This process took some time in order to translate some of the documents into English.

Ms. Billy-Lera performed a field audit in HI on August 22 - 29, 2001 and additional information was subsequently provided. Prior to the field audit, our representative reiterated to Ms. Billy-Lera that client documents were not maintained in HI and, therefore, requested that Ms. Billy-Lera provide a list of documents and information to be made available during her visit. Ms. Billy-Lera did not respond to this request prior to the field audit. Furthermore, Ms. Billy-Lera did not keep the initially agreed upon date of August 20th, but instead phoned on August 21st indicating that she had just arrived in HI and would be visiting our Honolulu office on the 22nd. For various reasons, which need not be addressed as this time, the field audit, and the overall examination process, have been handled very inefficiently.

At the conclusion of the field audit, Ms. Billy-Lera indicated that she would need to perform a field audit in Tokyo in early December (for approximately four days) and indicated that she would probably have to start her interview process over again because she does not understand what the company does or how it works. She also indicated that she would need a translator to be present.

To date, we still have not received any specific guidance as to what issues Ms. Billy-Lera may be focusing on, if any.

Based upon the developments outlined above, I have attempted to contact Ms. Billy-Lera on several occasions. It is our intention to provide information and clarification necessary to bring this examination to closure. However, as there generally should be no potential adjustments to ████ Co., Ltd.'s tax filings, and further provided that Ms. Billy-Lera should address specific issues whereby we may provide responses, we believe that a field audit in Tokyo is unwarranted at this time. I left a voice mail with Ms. Billy-Lera indicating our desire to assist in resolving the issues, but also indicating that we were not prepared to schedule a Tokyo field audit at present. Ms. Billy-Lera's voice mail indicated that she would be out of the office from November 8 - December 17, 2001. Accordingly, I sent a fax to Ms. Billy-Lera's attention on December 18, 2001 indicating that I would like to discuss the issues with her. Your e-mail (attached) indicates that Ms. Billy-Lera will be on leave until mid-January.

Please note that our client has incurred significant fees to date with respect to this examination. Accordingly, and, in particular, given that there generally should be no potential adjustments to ████ Co., Ltd.'s tax filings, our client is anxious to bring this examination to a close.

Any assistance you can provide in resolving any outstanding issues and bringing closure to the examination will be greatly appreciated. We look forward to hearing your comments and suggestions. Please note that I will be out of the office from December 22nd through January 6th.

Best regards,

Thomas Hatheway
Ernst & Young, Tokyo

342
12/3/02

+81 3 3506-2043  direct
+81 3 3506-2554  fax

 ************************************************************
*****************************************************

The information contained in this message may be privileged and
confidential and protected from disclosure.  If the reader of this message
is not the intended recipient, or an employee or agent responsible for
delivering this message to the intended recipient, you are hereby notified
that any dissemination, distribution or copying of this communication is
strictly prohibited.  If you have received this communication in error,
please notify us immediately by replying to the message and deleting it
from your computer.
Thank you.  Ernst & Young LLP
************************************************************
*****************************************************

Tillotson Tess <Tess.Tillotson@irs.gov> on 12/19/2001 05:17:08

To:  "'thomas_hatheway@sney.com'" <thomas_hatheway@sney.com>
cc:
Subject:  FW: B. Billy-Lera and your client

——Original Message——
From:   Tillotson Tess
Sent:   Tuesday, December 18, 2001 3:09 PM
To:     'thomas_hathaway@sney.com'
Cc:     Billy-Lera Bernadette
Subject:      B. Billy-Lera and your client

Mr. Hathaway:

Ms. Billy-Lera and her permanent manager are on leave until mid-January.  I
am the acting manager until that time.  I received the correspondence with
your power of attorney.  My phone number is 202-874-1382, but with the time
difference e-mail is a good way to correspond.  Please let know what I can
do to assist in any way.  Thank you.  Tess Tillotson, Acting Manager group
-1111.

Revenue Agent - Area 15
S:C:15:T1:1110
202-874-1382

343
12/8/02



```
<!DOCTYPE HTML PUBLIC "-//W3C//DTD HTML 3.2//EN">

<HEAD>
<META HTTP-EQUIV="Content-Type" CONTENT="text/html; charset=iso-8859-1">
<META NAME="Generator" CONTENT="MS Exchange Server version 5.5.2653.12">
<TITLE>FW: Shin-Ei Co., Ltd.</TITLE>
</HEAD>
```

Evelyn: 

1.  The message below from Mr. Hatheway is just for your information/records.  Linda will be looking for the case so that I may respond to Mr. Hatheway today or tomorrow at the latest. 

2.  Mr. Bowman, the POA for Bernadette's other case called again yesterday and requested that you call him Wednesday or leave a number where you can be reached. 

Jeannie had mentioned briefly that the case may be stamped no change.  She was planning on calling you Monday PM. Tes

——Original Message——
From: Thomas_Hatheway@sney.com [mailto:Thomas_Hatheway@sney.com]
Sent: Wednesday, December 19, 2001 3:04 AM
To: Tillotson Tess
Cc: ▆▆▆▆▆@▆▆▆
Subject: ▆▆▆Co., Ltd.
Importance: High

Ms. Tillotson,
Thank you for responding.  Any assistance you can provide in resolving any outstanding issues and bring closure to the examination will be greatly appreciated.
We received a notice of examination from Ms. Billy-Lera, dated May 11, 1999, for the following taxpayer:
   ▆▆▆▆▆▆
   EIN:  ▆▆
   Tax Year:  FYE 3/31/97
   Form:  1120-F
▆▆▆Co., Ltd.'s U.S. business:  ▆▆▆▆▆▆'s U.S. business consists of investments in U.S. rental real estate, utilizing independent management companies, and investments in a few U.S. real estate partnerships.  ▆▆▆▆▆▆, a foreign corporation with no office or place of business in the U.S., files Form 1120-F. ▆▆▆▆▆▆'s income/deductions are reported pursuant to information statements received

from independent management companies and Schedule K-1's.  Accordingly, there generally should be no potential adjustments to ▮▮▮▮▮ Co., Ltd.'s ▮▮ filings.

▮▮ warded Form 2848 to the attention of Ms. Billy-Lera on June 14, 1999 and attempted to contact her.  As the client is a foreign corporation, with no office or place of business in the U.S., we requested that our Honolulu office act as the taxpayer representative for the examination.  A representative from our Honolulu office, was in contact with Ms. Billy-Lera and coordinated the delivery of information per the IDR (Information Document Request - Form 4564).  This process took some time in order to translate some of the documents into English.

Ms. Billy-Lera performed a field audit in HI on August 22 - 29, 2001 and additional information was subsequently provided.  Prior to the field audit, our representative reiterated to Ms. Billy-Lera that client documents were not maintained in HI and, therefore, requested that Ms. Billy-Lera provide a list of documents and information to be made available during her visit.  Ms. Billy-Lera did not respond to this request prior to the field audit.  Furthermore, Ms. Billy-Lera did not keep the initially agreed upon date of August 20th, but instead phoned on August 21st indicating that she had just arrived in HI and would be visiting our Honolulu office on the 22nd.  For various reasons, which need not be addressed as this time, the field audit, and the overall examination process, have been handled very inefficiently.

At the conclusion of the field audit, Ms. Billy-Lera indicated that she would need to perform a field audit in Tokyo in early December (for approximately four days) and indicated that she would probably have to start her interview process over again because she does not understand what the company does or how it works.  She also indicated that she would need a tr▮▮ator to be present.

To ▮▮e, we still have not received any specific guidance as to what issues Ms. Billy-Lera may be focusing on, if any.

Based upon the developments outlined above, I have attempted to contact Ms. Billy-Lera on several occasions.  It is our intention to provide information and clarification necessary to bring this examination to closure.  However, as there generally should be no potential adjustments to ▮▮▮▮▮▮▮▮▮▮ tax filings, and further provided that Ms. Billy-Lera should address specific issues whereby we may provide responses, we believe that a field audit in Tokyo is unwarranted at this time.  I left a voice mail with Ms. Billy-Lera indicating our desire to assist in resolving the issues, but also indicating that we were not prepared to schedule a Tokyo field audit at present.  Ms. Billy-Lera's voice mail indicated that she would be out of the office from November 8 - December 17, 2001. Accordingly, I sent a fax to Ms. Billy-Lera's attention on December 18, 2001 indicating that I would like to discuss the issues with her.  Your e-mail (attached) indicates that Ms. Billy-Lera will be on leave until mid-January.

Please note that our client has incurred significant fees to date with respect to this examination.  Accordingly, and, in particular, given that there generally should be no potential adjustments to ▮▮▮▮▮▮▮▮▮▮ tax filings, our client is anxious to bring this examination to a close.

Any assistance you can provide in resolving any outstanding issues and bringing closure to the examination will be greatly appreciated.  We look forward to hearing your comments and suggestions.  Please note that I will be out of the office from December 22nd through January 6th.

Bes▮▮ards,

Thomas Hatheway
Ernst &amp; Young, Tokyo

3 of 5
12/13/02

**Internal Revenue Service**
**MEMORANDUM**

to:  Bernadette Billy-Lera, GS 13 Revenue Agent

date:  June 5, 2002

from:  Evelyn M. Stephens, Group Manager S:C:15: Terr.1

Subject:  Your Conduct and Behavior

Bernadette, this memorandum is written to capture my request for a case file that you refuse to give me on two occasions on June 4, 2002. Your behavior is a violation of the rule of conduct, not following the direction of your manager. The facts are summarized in the next paragraph.

We meet in the conference room to discuss a case that you planned to examine. During the discussion, you stated you received a Form 872 on another case, a 1998 return with a June 29, 2002 statute of limitation date. You mention this case, because I have been involved with monitoring the case statute date and audit activity. I had a lengthy conversation with the power of attorney that resulted in the extension being granted. I asked you two times to give me the case file and you refused. **The first time I asked for the file, you replied you would give it to me later in the day.** I responded that I had other things planned and wanted to document the activity record at that time. You then replied you had to stamp the Form 872 and do something else. I replied I would wait, **while I was waiting you stamped the Form 872, locked your files, picked up your water bottle and walked out of your cubicle.** I returned to my office on the third floor and observed you walking out of the Area Director area. I attempted to speak to you and you kept walking. I then went to the Vice-President of Chapter 83, Carl Tenny, and asked if he would accompany me to request the case file again. I briefed him of the issue during our travel period to the PROM level. When we arrived at your cubicle you were not there. We waited approximately 23 minutes for your return. When you returned, I asked you again for the case file to document the case activity record on the short statute case. **You refused to give me the file a second time.** You replied, " I do not come to work to be harassed". Carl attempted to say something to you and you responded you would bring the case to me in fifteen minutes. I left your cubicle and returned to my office. I advised the group secretary to bring me the case files as soon as you deliver it to me. You delivered the case to me approximately 2:20 P.M.

*12/11/02*

*346*

Bernadette this type of conduct and behavior is inexcusable and must be addressed. This is not the first time I have asked you for a case file and you did not provide as requested. Failure to follow the direction of your manager is a violation of the rules of conduct. If you have any questions on this memorandum or wish to discuss let me know.

This memorandum will be filed in your Employee Personnel Folder.

CC: Jeannie Fisher, Territory manager
    Jack Gregory, NTEU President Chapter 83

*347*

Stephens Evelyn M

| | |
|---|---|
| **From:** | Fisher Jeannie B |
| **Sent:** | Tuesday, September 04, 2001 5:57 PM |
| **To:** | Mosley Robert; Stephens Evelyn M |
| **Subject:** | RE: TRAVEL AND MOVING VOUCHERS |

*Jennie's response*

Folks, while it is important to be professional in all contacts, it is often more of a challenge with some of our employees. Let's put this behind and move forward. The bottom line is that we follow the travel handbook and IRM guidelines for all employees. Travel at the convenience/preference of the employee and/or for personal reasons are not part of the reimbursable expenses paid by the Gov't.

Evelyn, thank you for your assistance and taking actions as her manager. I do not plan on issuing a general memo to all employees unless there is some common practice that I am unaware of that impacts the entire territory. I believe it is best to address individual issues on an individual basis and I have no reason to think that this is a common practice among other employees. If you believe otherwise, please advise.

Jeannie

-----Original Message-----
**From:**     Mosley Robert
**Sent:**     Tuesday, September 04, 2001 3:26 PM
**To:**       Stephens Evelyn M
**Cc:**       Fisher Jeannie B
**Subject:**  RE: TRAVEL AND MOVING VOUCHERS

Thanks for your assistance. Your talk worked. Carl/Union is working with her now to compose the appropriate voucher. Robert

-----Original Message-----
**From:**     **Stephens Evelyn M**
**Sent:**     Tuesday, September 04, 2001 1:14 PM
**To:** Mosley Robert; Fisher Jeannie B
**Subject:**  RE: TRAVEL AND MOVING VOUCHERS

*M [initial] Mail to mgmt*

Robert,
After you left, I advised Bernadette to correct her voucher to the cost directly to CA. I also suggested she figure the cost to fly to CA directly from Washington on Monday and return on Friday to Washington. I explained to her that even though we do not do audit of travel voucher when we review them that we (managers) are concurring with the expenses when we approve.

On another note, I suggested she try to keep a professional tone and behavior when speaking with managers and others in the office, as I said to you on my way out of the area. I told Bernadette that she should try to communicate and get along with management and resolve issues at the lowest level. I further advised her for the future to travel direct to her audits unless she has approval to do otherwise. Employee Satisfaction is one of the critical elements that will be rated.

I am sorry you had the experience. I will issue a memo, unless, Jeannie issues one to all R/A's regarding travel.

*Evelyn M. Stephens*
*International Acting Manager 1111/2111*
*202-874-1683*

-----Original Message-----
**From:**  Mosley Robert
**Sent:**  Tuesday, September 04, 2001 11:48 AM
**To:**    Fisher Jeannie B

*RMS*
*13/11/02*
*356*

1

Cc:      Stephens Evelyn M
Subject: TRAVEL AND MOVING VOUCHERS

The meeting concerning Billy-Lera's moving voucher took place and she will contact the appropriate personnel to correct the matter this month. We also discussed the personal nature of the expenses found on travel voucher which took place on 8/5. I disallowed the voucher. She strongly disagreed with the items I listed to her. After discussing it with her I raised my voice and told her that she has two options which were the following;

1.      You can take this off your voucher or take it to the union.

I have the following concerns. She does not fully understand why this is considered personal. I believe that this is an indication that she has done this before and I did not catch it.

Jeanie I lost my temper and left her with Evelyn. Robert

2

351

# Travel Voucher

**Note:** (Falsification of an item in an expense account works a forfeiture of claim (28 U.S.C. 2514) and may result in a fine of not more than $10,000 or imprisonment or not more than 5 years or both (18 U.S.C. 287; Id. 1001).

Ba. Travel Advance Outstanding: Regular/Training

Read the Privacy Act statement on the back.

1. Social Security No.

2. Name (Use name as on payroll)
BERNADETTE BILLY-LEFFT

3. Mailing Address (Including ZIP Code)
15910 ELF STOVE CT
BOWIE MD 20716

4. Official Duty Station
WASHINGTON DC

5. Residence (City and State)
BOWIE, MD

6. Applicable Travel Authorization

c. Amount Paid

b. Amount To Be Applied

7. Period of Travel
From 7/19/2001 To 8/3/2001

Relocation — Total

b. Amount To Be Applied $ 605.50

d. Total Balance Outstanding $

INV. # 0038852

8. Government Transportation Requests (Attach passenger coupon. If cash is used and show claim on reverse. Also attach any unused portions of tickets. Staple copy of GTR to front.)

GTR No.

| | Agent's Valuation of Ticket | Issuing Carrier (Initials) | Mode, Class of Service and Accommodations | Date Issued |
|---|---|---|---|---|
| | $ 449.70 | DELTA | COACH | 7/19/01 |

9. Government Transportation Requests

10. Commercial vehicle used for official business during this voucher period for (include total amount in "Other" column be-black of voucher and attach receipt.)

| | Office Code | Activity Code | Program | Purpose Code | Type of Travel and Cost |
|---|---|---|---|---|---|
| Purpose | 539R | 1A | A013 | SAT | Administrative |
| Regular | | | | | |
| Training | | | | | |
| Relocation | | | | | |

Sum of above costs should equal amount on Line 2

11. Cost Identification (Refer to IRM 1823, Financial Management Codes Handbook)

12. I hereby assign to the United States any right I may have against other parties in connection with reimbursable carrier transportation charges described herein. I certify that this voucher is true and correct to the best of my knowledge and belief, and that payment or credit has not been received by me. When applicable, per diem claimed is based on the average cost of lodging incurred during the period covered by this voucher.

Traveler Sign Here ▶ Bernadette Billy-Leffa    Date 8/9/01

13. This voucher is approved. Long distance telephone calls, if any, are certified as necessary in the interest of the Government. (Note: If long distance telephone calls are included, the approving official must have been authorized in writing by the head of the department or agency to so certify (31 U.S.C. 680a).)

Approving Official Sign Here ▶

| | Amount Claimed | Differences, if any | Total Certified Correct and Proper for Payment (Signature and date) |
|---|---|---|---|
| | $605.50 | | |

Applied to Travel Advance

Tax Deducted (Federal)

Net to Traveler $

**FOR FISCAL MANAGEMENT USE ONLY**

| | FY | Oft. | P.C. | Act. |
|---|---|---|---|---|
| | | | | 2102 |
| | | | | 2103 |
| | | | | 2109 |
| | | | | 2121 |

Statistical/Sample No.

Batch No.

Total

Points of Travel — From — To

Washington, DC    N.Y., London R/T

Prescribed Form 1012 (Rev. 10-77) (IRS Rev. 2-81) "Fraction to SF 1012 Authorized by NARS 1-81"

## Schedule of Expenses and Amounts Claimed

| Date 4/6/2001 (a) | Previous Temporary Duty (Complete only if in a travel status immediately prior to period covered by this voucher.) Location: Description (Departure/arrival time (am/pm), subsistence computations, cost comparison, etc.) (b) | Breakfast (c) | Lunch (d) | Dinner (e) | Miscellaneous (f) | Lodging (Receipts required) (g) | Mileage Rate (h) | Number of Miles (i) | Mileage (j) | Subsistence (k) | Other (l) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/19 | Drive from Residence to Airport | | | | | | | | | | 55. |
| | Commercial plane (RH) ticket | | | | | | | | | | 93. |
| | 7/4 Mid B | | | | | | | | | | |
| | Taxi to Bildon | | | | | | | | | 34.00 | 35. |
| 7/20 | Taxi to JFK | | | | | | | | | | 30. |
| | Commercial plane | | | | | | | | | | 449. |
| | Sofa transaction fee | | | | | | | | | | 17. |
| 7/20-8/1 | taxi from airport to hotel ($46.17) | | | | | | | | | | 61. |
| 7/20-8/1 | Hotel ($216.50 See State substantiation) ($103 x 13) | | | | | | | | | 8695.22 | |
| 7/20-8/1 | taxi to audit RH (5 days) $2.00 RidesheD 6483.35 | | | | | | | | | | |
| 7/23-8/1 | Taxi to audit RH (5 days x $20) 1339.00 | | | | | | | | | | 229 |
| 7/21 | Phone card $50.00 | | | | | | | | | | 294 |
| 8/2 | phone calls $193.83 x 10.98335 | | | | | | | | | | 278. |
| 8/2 | taxi to airport $447 | | | | | | | | | | 61. |
| 3/4 | Miles | | | | | | | | | 78.00 | 61. |
| | Commercial Plane to NY | | | | | | | | | | |

Use Continuation Sheet if Needed (Column totals to be carried forward if necessary)

Column Totals ▼

Total Amount Claimed $ 6057.5...

359

Identify each type of travel, summar... and show... m 11 on front.

If continuation sheet is not necess... enter total of cols. (l), (k) and (l) an... in item 12 on front.

*U.S. Government Printing Office: 1988-220-999/81

In compliance with the Privacy Act of 1974, the following information is provided: Solicitation of the information on this form is authorized by 5 U.S.C. Chapter 57; E.O. 11609 of July 22, 1971, E.O. 11012 of March 27, 1962, E.O. 9397 of November 22, 1943, and 26 U.S.C. 6011(b) and 6109. The GSA requests the requested information to determine payment or reimbursement to eligible individuals for allowable travel and/or relocation expenses incurred under appropriate administrative authorization and to record and maintain costs of such reimbursements...

## Expenses and Amounts Claimed

**Previous Temporary Duty (Complete only if in a travel status immediately prior to period covered by this voucher):**

Location:

| Date (a) | Description (Departure/arrival time (am/pm), substance comparisons, cost comparison, etc.) (b) | Breakfast (c) | Lunch (d) | Dinner (e) | Miscellaneous (f) | Lodging (Receipts required) (g) | Mileage Rate (h) | Number of Miles (i) | Mileage (j) | Subsistence (k) | Other (l) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/12 | Taxi to B'klyn | | | | | | | | | | 30.00 |
| 2/13 | Taxi to the Guardia | | | | | | | | | | 85.00 |
| | Commercial plane | | | | | | | | | | $ |
| | Taxi to residence | | | | | | | | | | 55.00 |
| | $4 M+E | | | | | | 34 | | | | |

Use Continuation Sheet if Needed (Column totals to be carried forward if necessary)

**Column Totals** ▼

Total Amount Claimed: $ 6051.50

12    120

360

Standard Form 1012 (Rev. 10-77) IRS Rev. 2-81) "Exception to SF 1012 Approved by NARS 1-81"

If continuation sheet is not necessary, enter total of cols. (j), (k) and (l) in Item 12 on front.

Identify each type of travel, summarize and show in Item 12 on front.

**Privacy Act Statement:** Compliance with the Privacy Act of 1974, the following information is provided: Solicitation of the information on this form is authorized by E.O. 11609 of July 22, 1971, E.O. 11012 of March 27, 1962, E.O. 9397 of November 22, 1943, and 26 U.S.C. 6011(b) and 6109. The primary purpose of the requested information is to determine payment or reimbursement to eligible individuals for allowable travel and/or relocation expenses incurred under appropriate administrative authorization and to record and maintain costs of such reimbursements to the Government. The information will be used by officers and employees who have a need for the information in the performance of their official duties. The information may be disclosed to appropriate Federal, State, local or foreign agencies, when relevant to civil, criminal, or regulatory investigations or prosecutions, or when pursuant to a requirement by this agency in connection with the hiring or firing of an employee, the performance of a security clearance, or investigations of the performance of official duty while in Government service. Your Social Security Account Number (SSN) is solicited under the authority of the Internal Revenue Code (26 U.S.C. 6011(b), and 6109), and E.O. 9397, November 22, 1943, for use as a taxpayer and/or employee identification number; for verification of employee identification number in the processing of travel and/or relocation allowance expense claims; and other purposes. Disclosure of your SSN and other requested information is voluntary in all other instances; however, failure to provide the information (other than SSN) required to support the claim may result in delay or loss of reimbursement.

Mrs Bernadette Billy-Lera
950 L'Enfant Plauza
Washington, DC 20024
USA

# MILLENNIUM HOTEL
LONDON MAYFAIR

Room No.    : 604
Arrival     : 20.07.01
Departure   : 02.08.01
Cashier     : 34/ALEX
Page        : 1

A/R INVOICE No.  24-128596/1

Millennium Hotel Mayfair, 02.08.01 08:03
VAT Reg No 644 6995 88

| Date | Description | Debit | Credit |
|------|-------------|-------|--------|
| 20.07. | Accommodation | 135.00 | |
| 20.07. | Pine Bar Food #604   : CHECK #6757 | 10.50 | |
| 20.07. | -Telephone Auto | 6.38 | |
| 20.07. | Pine Bar Grats #604   : CHECK #6757 | 1.05 | |
| 21.07. | Accommodation | 135.00 | |
| 21.07. | R/S Dinner Food | 9.75 | |
|        |   ->#604  : CHECK #1237 | | |
| 21.07. | -Telephone Auto | 2.75 | |
| 21.07. | -Telephone Auto | 7.20 | |
| 22.07. | Accommodation | 135.00 | |
| 22.07. | -Telephone Auto | 1.50 | |
| 22.07. | -Telephone Auto | 5.30 | |
| 23.07. | Accommodation | 135.00 | |
| 23.07. | -Telephone Auto | 5.30 | |
| 23.07. | -Telephone Auto | 2.10 | |
| 23.07. | -Telephone Auto | 5.68 | |
| 23.07. | -Telephone Auto | 14.42 | |
| 24.07. | Accommodation | 135.00 | |
| 24.07. | Cafe Dinner Food | 37.50 | |
|        |   ->#604  : CHECK #2539 | | |
| 24.07. | Cafe Dinner Beverage | 5.45 | |
|        |   ->#604  : CHECK #2539 | | |
| 24.07. | -Telephone Auto | 4.54 | |
| 24.07. | -Telephone Auto | 9.48 | |
| 24.07. | Cafe Grats #604  : CHECK #2539 | 4.20 | |
| 25.07. | Accommodation | 135.00 | |
| 25.07. | R/S Dinner Food | 9.75 | |
|        |   ->#604  : CHECK #1426 | | |
| 25.07. | -Telephone Auto | 0.80 | |
| 25.07. | -Telephone Auto | 12.90 | |
| 25.07. | R/S Grats #604  : CHECK #1426 | 1.00 | |
| 26.07. | Accommodation | 135.00 | |
| 27.07. | Accommodation | 135.00 | |
| 27.07. | R/S Dinner Food | 19.50 | |
|        |   ->#604  : CHECK #1552 | | |

Grosvenor Square London W1K 2HP
Telephone 020 7629 9400
Facsimile 020 7629 7736
www.millennium-hotels.com
e-mail  reservations.mayfair@mill-cop.com

361

Mrs Bernadette Billy-Lera
950 L'Enfant Plauza
Washington, DC 20024
USA

# MILLENNIUM HOTEL
### LONDON MAYFAIR

| Room No. | : 604 |
|---|---|
| Arrival | : 20.07.01 |
| Departure | : 02.08.01 |
| Cashier | : 34/ALEX |
| Page | : 2 |

A/R INVOICE No.  24-128596/1

Millennium Hotel Mayfair, 02.08.01 08:03
VAT Reg No 644 6995 88

| Date | Description | Debit | Credit |
|---|---|---|---|
| 27.07. | -Telephone Auto | | |
| 27.07. | -Telephone Auto | 10.62 | |
| 27.07. | -Telephone Auto | 1.50 | |
| 27.07. | -Telephone Auto | 1.50 | |
| 27.07. | -Telephone Auto | 1.50 | |
| 27.07. | -Telephone Auto | 2.55 | |
| 27.07. | In Room Service(V) #604 | 1.45 | |
| 27.07. | R/S Grats #604  : CHECK #1552 | 8.95 | |
| 28.07. | Accommodation | 2.00 | |
| 28.07. | R/S Dinner Food | 135.00 | |
| | ->#604  : CHECK #1585 | 5.25 | |
| 28.07. | -Telephone Auto | | |
| 28.07. | R/S Grats #604  : CHECK #1585 | 5.30 | |
| 29.07. | Accommodation | 1.00 | |
| 29.07. | -In Room Service(m) | 135.00 | |
| 29.07. | -Telephone Auto | 7.75 | |
| 29.07. | -Telephone Auto | 0.80 | |
| 30.07. | Accommodation | 7.96 | |
| 30.07. | -Telephone Auto | 135.00 | |
| 30.07. | -Telephone Auto | 3.78 | |
| 30.07. | -Telephone Auto | 5.68 | |
| 30.07. | -Telephone Auto | 3.40 | |
| 30.07. | -Telephone Auto | 2.75 | |
| 30.07. | -Telephone Auto | 4.92 | |
| 30.07. | -Telephone Auto | 9.86 | |
| 30.07. | -Telephone Auto | 9.86 | |
| 30.07. | Business Centre 1 Disk | 6.44 | |
| 31.07. | Accommodation | 2.00 | |
| 31.07. | R/S Dinner Food | 135.00 | |
| | ->#604  : CHECK #1753 | 3.50 | |
| 31.07. | R/S Dinner Beverage | | |
| | ->#604  : CHECK #1753 | 4.50 | |
| 31.07. | -In Room Service(m) | | |
| 31.07. | -Telephone Auto | 6.70 | |
| 31.07. | -Telephone Auto | 3.40 | |
| | | 6.06 | |

Grosvenor Square London W1K 2HP
Telephone 020 7629 9400
Facsimile 020 7629 7736
www.millennium-hotels.com
e-mail  reservations.mayfair@mill-cop.com

*362*

# MILLENNIUM HOTEL
### LONDON MAYFAIR

Mrs Bernadette Billy-Lera
950 L'Enfant Plauza
Washington, DC 20024
USA

Room No.   : 604
Arrival    : 20.07.01
Departure  : 02.08.01
Cashier    : 34/ALEX
Page       : 3

A/R INVOICE No.   24-128596/1

Millennium Hotel Mayfair, 02.08.01 08:03
VAT Reg No 644 6995 88

| Date | Description | Debit | Credit |
|------|-------------|-------|--------|
| 31.07. | -Telephone Auto | | |
| 31.07. | -Telephone Auto | 4.92 | |
| 31.07. | R/S Grats #604  : CHECK #1753 | 3.40 | |
| 01.08. | Accommodation | 1.00 | |
| 01.08. | Cafe Dinner Food | 135.00 | |
|  | ->#604  : CHECK #2855 | 36.00 | |
| 01.08. | R/S B'fast Food | | |
|  | ->#604  : CHECK #1769 | 19.95 | |
| 01.08. | Cafe Dinner Beverage | | |
|  | ->#604  : CHECK #2855 | 11.40 | |
| 01.08. | -Telephone Auto | | |
| 01.08. | -Telephone Auto | 9.86 | |
| 01.08. | Cafe Grats #604  : CHECK #2855 | 7.20 | |
| 02.08. | Mastercard | 4.74 | |
|  | ->XXXXXXXXXXXX3442    07/03 | | 2161.50 |

Balance   £0.00

**VAT Breakdown**

| | | |
|---|---|---|
| Net at 17.5% | £ | 1826.82 |
| Net at 0.0% | £ | 14.99 |
| Total Amount Net | £ | 1841.81 |
| VAT 17.5% | £ | 319.69 |
| TOTAL BILL STERLING | | 2161.50 |
| TOTAL BILL EURO | | 3824.19 |

Approval Code: M097916
Card Number: 5568040000253442    Expiry: 07/03Swiped
Start Date:    Issue Number:
Transaction ID: 208661 SALE  Terminal ID: 00600849E85B

Merchant ID: 59234072

SIGNATURE: _____

Please debit my account by  the amount indicated above.

Grosvenor Square London W1K 2HP
Telephone 020 7629 9400
Facsimile 020 7629 7736
www.millennium-hotels.com
e-mail reservations.mayfair@mill-cop.com



# SatoTravel

```
SALES PERSON: 15        ITINERARY/INVOICE NO. 0038852      DATE: 19 JUL 01
CUSTOMER NBR: 340024                       QEKFHB          PAGE: 01

        TO: MAIL E-TICKET RECEIPT
            BERNADETTE BILLY-LERA
            1111 CONSTITUTION AVE NW
            RM 1415
            WASHINGTON,DC 20224

FOR: BILLY LERA/BERNADETTE   REF: 0,214,00024,205000


        *****************************************
        WHEN TICKETED THE FOLLOWING NON REFUNDABLE *
        TRANSACTION FEES WILL BE CHARGED           *
        TRANSACTION FEE 17.62                      *
20 JUL 01  -  FRIDAY
    AIR   AMERICAN AIRLINES    FLT:106    ECONOMY      MULTI MEALS
          LV NEW YORK JFK                 945A         EQP: AIRBUS A300-600
          DEPART: TERMINAL 8                           07HR 05MIN
          AR LONDON HEATHROW             950P          NON-STOP
          ARRIVE: TERMINAL 3                           REF: QEKFHB
          BILLY LERA/BERN    SEAT-27A

 AUG 01  -  FRIDAY
    AIR   AMERICAN AIRLINES    FLT:101    ECONOMY      MULTI MEALS
          LV LONDON HEATHROW             1000A         EQP: AIRBUS A300-600
          DEPART: TERMINAL 3                           07HR 55MIN
          AR NEW YORK JFK                1255P         NON-STOP
          ARRIVE: TERMINAL 8                           REF: QEKFHB
          BILLY LERA/BERN    SEAT-27A

04 AUG 01  -  SATURDAY
   OTHER WASHINGTON
          PLEASE ADD THE NON-REFUNDABLE TRANSACTION FEE OF 17.62 TO
          YOUR TICKET AMOUNT

AIR TICKET - AA7038073084      BILLY-LERA BERNADETT
                               BILLED TO ------------ 442        449.70*
                                                                ----------
                               SUB TOTAL                         449.70
                               NET CC BILLING                    449.70*
                                                                ----------
                               TOTAL AMOUNT DUE                    0.00
```

CONTINUED ON PAGE 2

364

COPY 1

# CITIBANK GOVERNMENT COMMERCE SERVICES
CARD STATEMENT

| Previous Balance | Payments and Credits | New Charges | New Balance |
|---|---|---|---|
| $3,762.81 | $3,762.81 | $4,761.99 | $4,761.99 |

FOR CUSTOMER SERVICE CALL 1-800-790-7206 OR WRITE P.O. BOX 45134, JACKSONVILLE, FL 32232-5134
OUTSIDE THE U.S. AND CANADA CALL COLLECT 904-954-7850
SEND PAYMENTS TO: CITIBANK GOVERNMENT COMMERCE SERVICES, P.O. BOX 6575, THE LAKES, NV 88901-6575

Agency Name:
Accounting Code: **TREASURY**
Billing Office Id:                                                   Account Number:                                    2
Discretionary Code:                                                 Agency/Org Id:
Single Purchase Limit:                      $0.00                    Tax Exempt #:
                                                                     Cycle Purchase Limit:          $0.00

| Sale Date | Post Date | MCC Code | Reference Number | | Description | | | Total Amount |
|---|---|---|---|---|---|---|---|---|
| 07/09 | 07/11 | 4812 | 1253923024453 | 1 | DIGITAL CONNECTION INC | NEW YORK | NY | 27.00 |
| 07/09 | 07/11 | 3058 | 1155180415666 | 2 | DELTA 0062125290296 BILLYLERA/BERNADETTE DCA DL M LGA | WASHINGTON DEPARTURE: 07/09/01 | DC | 93.00 |
| 07/16 | 07/16 | 0000 | 7970168960813 | 3 | PAYMENT RECEIVED -- THANK | YOU | | 2,748.00 py |
| 07/13 | 07/16 | 7011 | 4200497804123 | 4 | THE ROGER WILLIAMS 001523 | NEW YORK ARRIVAL: 07-09-01 | NY | 588.00 |
| 07/11 | 07/16 | 5812 | 4400001716333 | 5 | BELLEUCCI | NEW YORK | NY | 27.85 |
| 07/21 07/23 | 07/23 | 4121 | 3000077594878 | 6 | HEATHROW TAXIS (Foreign Currency) 46.70 GBP (Rate) 0.692067 | WALLINGTON | GBR | 67.48 |
| 07/19 | 07/23 | 3001 | 1661922049029 | 7 | AMERICAN 00170390730844 BILLY LERA/B JFK AA Y LHR AA Y JFK | LANHAM DEPARTURE: 07/20/01 | MD | 449.70 |

## ACCOUNT SUMMARY

| CURRENT PERIOD | | Previous Balance | Payments | Credits | Purchases and Advances | Taxes and Fees | New Balance |
|---|---|---|---|---|---|---|---|
| | Purchases | $3,762.81 | $3,762.81 | $0.00 | $4,761.99 | $0.00 | $4,761.99 |
| | Advances | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | TOTALS | $3,762.81 | $3,762.81 | $0.00 | $4,761.99 | $0.00 | $4,761.99 |

Memo Section

| | |
|---|---|
| Amount Over Credit Limit: | |
| Amount Past Due: | $0.00 |
| Net Total Charges: | $4,761.99 |
| Total Cash Advances: | $0.00 |
| Current Period Total: | $4,761.99 |

Approval Section

CARDHOLDER SIGNATURE _____

APPROVING OFFICIAL SIGNATURE (Except Travel) _____

A member of citigroup

365



5-3442

**B S BILLY LERA**
**TREASURY**

| Agency Name: | | **TREASURY** | | | Account Number: | | 5568-0400-0025-3442 |
|---|---|---|---|---|---|---|---|
| Accounting Code: | | | | | | | |
| Billing Office Id: | | | | | | | |
| Discretionary Code: | | | | | Agency/Org Id: | | |
| Single Purchase Limit: | | | $0.00 | | Tax Exempt #: | | |
| | | | | | Cycle Purchase Limit: | | $0.00 |

| Sale Date | Post Date | MCC Code | Reference Number | | Description | | | Total Amount |
|---|---|---|---|---|---|---|---|---|
| 07/19 | 07/23 | 3058 | 1155200513930 | 8 | DELTA   0062125292188 BILLYLERA/BERNADETTE DCA DL M LGA | WASHINGTON DEPARTURE: 07/19/01 | DC | 93.00 |
| 07/19 | 07/24 | 4511 | 4444005261430 | 9 | SATO TRA | ARLINGTON | VA | 17.62 |
| 07/25 | 07/25 | 0000 | 6206165790667 | 10 | PAYMENT - THANK YOU | | | 1,014.81 py |
| 08/01 | 08/03 | 3000 | 4830589071009 | 11 | UNITED  0167040115411 BILLY LERA/B JFK UA Y SFO UA Y JFK | LANHAM DEPARTURE: 08/06/01 | MD | 288.50 |
| 08/01 | 08/06 | 4511 | 5444005558535 | 12 | SATO TRA | ARLINGTON | VA | 13.62 |
| 08/02 08/07 | 08/07 | 7011 | 800009847983B | 13 | BRITANNIA HOTEL (Foreign Currency)  2,151.50  GBP | LONDON (Rate)  0.588335 | GBR | 3,095.22 |

*****TOTAL AMOUNT DUE: $4,761.99**

*9/10 - Daniel — Voucher*

366

A member of citigroup

# CITI

```
          ...........
             ⌐025-3442
```

**B S BILLY LERA
TREASURY**

| Agency Name: | | **TREASURY** | | | Account Number: | | **5568-0400-0025-3442** |
|---|---|---|---|---|---|---|---|
| Accounting Code: | | | | | | | |
| Billing Office Id: | | | | | Agency/Org Id: | | |
| Discretionary Code: | | | | | Tax Exempt #: | | |
| Single Purchase Limit: | | | **$0.00** | | Cycle Purchase Limit: | **$0.00** | |

| Sale Date | Post Date | MCC Code | Reference Number | | Description | | | Total Amount |
|---|---|---|---|---|---|---|---|---|
| 07/19 | 07/23 | 3058 | 1155200513830 | 8 | DELTA   0062125292188 BILLYLERA/BERNADETTE DCA DL M LGA | WASHINGTON   DC DEPARTURE: 07/19/01 | | 93.00 |
| 07/19 | 07/24 | 4511 | 4444005261430 | 9 | SATO TRA | ARLINGTON   VA | | 17.62 |
| 07/25 | 07/25 | 0000 | 6206165790667 | 10 | PAYMENT - THANK YOU | | | 1,014.61 py |
| 08/01 | 08/03 | 3000 | 4830589071009 | 11 | UNITED   0167040115411 BILLY LERA/B JFK UA Y SFO UA Y JFK | LANHAM   MD DEPARTURE: 08/06/01 | | 298.50 |
| 08/01 | 08/06 | 4511 | 5444006558535 | 12 | SATO TRA | ARLINGTON   VA | | 13.62 |
| 08/02 08/07 | 08/07 | 7011 | 9000096478838 | 13 | BRITANNIA HOTEL (Foreign Currency) 2,161.50 GBP | LONDON   GBR (Rate) 0.998335 | | 3,095.22 |

**\*\*\*\*\*TOTAL AMOUNT DUE: $4,761.99**

*9/10 - David — voucher*

367

**LICENSED TAXI RECEIPT**

Date _____

Fare _____

Signed _____

TRAVEL VOUCHER FOR:  BERNADETTE S BILLY-LERA
                SSN:

          FOR TRAVEL PERIOD 08/05/2001 TO 08/11/2001

ADDRESS FOR THIS VOUCHER
------------------------
  15910 ELF STONE COURT
                                    POST OF DUTY: WASHINGTON
  BOWIE, MD  20716-0000             RESIDENCE:    BOWIE

| TRAVEL AUTHORIZATION | AUTH DATE | AUTHORIZED FROM | TO | TYPE OF AUTHORIZATION |
|---|---|---|---|---|
| GTO #2 | 01/01/1991 | 08/05 | 08/11 | GENERAL TRAVEL ORDER #2 |

                    GTRS / TICKETS
                    --------------

HOW PAID: EMP GOVT CR CARD              DATE: 08/03/2001  AMOUNT: $   288.50

| ORIGINATION | DESTINATION | CARRIER USED | CLASS SERVICE |
|---|---|---|---|
| BROOKLYN, NY | SAN FRANCISCO, CA | UNITED | COACH/PULLMAN |

HOW PAID: EMP GOVT CR CARD              DATE: 08/11/2001  AMOUNT: $    45.75

| ORIGINATION | DESTINATION | CARRIER USED | CLASS SERVICE |
|---|---|---|---|
| SAN FRANCISCO, CA | WASHINGTON, DC | DELTA | COACH/PULLMAN |

                    EXPENSES
                    --------

| DATE | DESCRIPTION | MILEAGE | SUBSISTENCE | OTHER |
|---|---|---|---|---|
| 08/05 | RODE WITH SOMEONE | | | |
| | RODE WITH SOMEONE | | | |
| | PRIVATE AUTO -   65 MI. at .345 | 22.43 | | |
| | LEFT NY ON 08/06/01 FOR CA | | | |
| | TOLLS | | | |
| | DEPARTED: 01:00PM | | | 3.00 |
| | DESTINATION:  BROOKLYN, NY | | | |
| | SUBSISTENCE: (MAX RATE $216.00) | | | |
| | M&IE:    $ 34.50 FOR 3/4  DAY | | 34.50 | |
| 08/06 | COMMERCIAL PLANE - CREDIT CARD | | | 288.50 |
| | TAXI | | | 35.00 |
| | TAXI TO THE AIRPORT FOR CA. | | | |
| | TAXI | | | |
| | TAXI FROM AIRPORT TO HOTEL. | | | 45.00 |
| | TELEPHONE BOOT | | | 5.00 |
| | LODGING TAX/HOTEL ENERGY | | | 2.57 |
| | SURCHARGE | | | |
| | NON-REFUNDABLE TRANSACTION FEE TO | | | |
| | SATO TRAVEL FOR TICKET | | | 13.62 |
| | DESTINATION:  SAN FRANCISCO, CA | | | |

369

EXPENSES
--------

| DATE | DESCRIPTION | MILEAGE | SUBSISTENCE | OTHER |
|------|-------------|---------|-------------|-------|
| 08/06 | SU ISTENCE: (MAX RATE $205.00) | | 205.00 | |
| | LODGING: $159.00 | | | |
| | M&IE: $ 46.00 FOR FULL DAY | | | |
| 08/07 | TA XI TO AUDIT | | | 45.00 |
| | TA XI FROM AUDIT SITE | | | 40.00 |
| | PH E BOOTH AND HOTEL PHONE | | | 6.50 |
| | LO ING TAX/HOTEL ENERGY RCHARGE | | | 2.57 |
| | LO TION: SAN FRANCISCO, CA | | | |
| | SU ISTENCE: (MAX RATE $205.00) | | 205.00 | |
| | LODGING: $159.00 | | | |
| | M&IE: $ 46.00 FOR FULL DAY | | | |
| 08/08 | TA XI TO AUDIT SITE | | | 45.00 |
| | TA XI TO THE HOTEL FROM AUDIT | | | 40.00 |
| | TE PHONE CALLS | | | 25.16 |
| | LO ING TAX/HOTEL ENERGY RCHARGE | | | 2.57 |
| | LA DRY | | | 13.50 |
| | LO TION: SAN FRANCISCO, CA | | | |
| | SU ISTENCE: (MAX RATE $205.00) | | 205.00 | |
| | LODGING: $159.00 | | | |
| | M&IE: $ 46.00 FOR FULL DAY | | | |
| 08/09 | TA XI TO AUDIT | | | 46.00 |
| | TA XI FROM AUDIT TO HOTEL | | | 42.00 |
| | TE PHONE CARD | | | 5.00 |
| | TA XI TO AUDIT | | | 45.00 |
| | SU AY/COMMUTER TRAIN | | | 2.00 |
| | DE WITH SOMEONE | | | |
| | LO ING TAX/HOTEL ENERGY RCHARGE | | | 2.57 |
| | LC TION: SAN FRANCISCO, CA | | | |
| | SU ISTENCE: (MAX RATE $205.00) | | 205.00 | |
| | LODGING: $159.00 | | | |
| | M&IE: $ 46.00 FOR FULL DAY | | | |
| 08/10 | TA XI TO AIRPORT | | | 45.00 |
| | TA XI FROM AIRPORT IN NY TO OOKLYN | | | 35.00 |
| | LO TION: SAN FRANCISCO, CA | | | |

370

EXPENSES
--------

| DATE | DESCRIPTION | MILEAGE | SUBSISTENCE | OTHER |
|------|-------------|---------|-------------|-------|
| 08/10 | SU ISTENCE: (MAX RATE $205.00) | | 46.00 | |
| | M&IE:    $ 46.00 FOR FULL DAY | | | |
| 08/11 | TA | | | 35.00 |
| | XI TO LAGUARDIA AIRPORT | | | |
| | CC ERCIAL PLANE - CREDIT CARD | | | 45.75 |
| | T. PURCHASED IS FROM NY TO | | | |
| | SHINGTON | | | |
| | TA | | | 55.00 |
| | XI FROM NATIONAL AIRPOT TO | | | |
| | SIDENCE | | | |
| | AR VED AT POD/RES: 09:15PM | | | |
| | SU ISTENCE: (MAX RATE $205.00) | | 34.50 | |
| | M&IE:    $ 34.50 FOR 3/4  DAY | | | |
| | COLUMN TOTALS | 22.43 | 935.00 | 971.31 |

*311*

### *** ADVANCE APPLICATION ***

| | |
|---|---|
| TRAVEL ADVANCE OUTSTANDING ACCORDING TO ACCOUNTING RECORDS | $  3,571.15 |
| TRAVEL ADVANCE OUTSTANDING ACCORDING TO TRAVELER'S RECORDS | $  3,559.15 |
| TOTAL AMOUNT OF THIS VOUCHER | $  1,928.74 |
| AMOUNT OF THIS VOUCHER TO BE APPLIED TO THE OUTSTANDING ADVANCE | $  1,928.74 |
| AMOUNT OF OUTSTANDING ADVANCE TO BE PAID BY CHECK OR MONEY ORDER | $      0.00 |
| THE NEW OUTSTANDING ADVANCE WILL BE | $  1,630.41 |
| THE AMOUNT OF THE REIMBURSEMENT CHECK FROM THIS VOUCHER WILL BE | $      0.00 |

Follow procedures outlined in IRM 1763 Section 316 (2)
to resolve outstanding advance discrepancies.

### COST IDENTIFICATION

| OFFICE CODE | ACTIVITY CODE | APPROP CODE | PURPOSE CODE | PROG/PROJ NUMBER | PROJ TRACK | COST |
|---|---|---|---|---|---|---|
| S39Q | 7G | 0913 | C | | | $ 1,928.74 |

NOTE:  Falsification of an item in an expense account works a forfeiture
of claim (28 U.S.C.2514) and may result in a fine of not more
than $10,000 or imprisonment of not more than 5 years or both
(18 U.S.C.287; I.D. 1001).

I hereby assign to the United States any right I may have against other
parties in connection with reimbursable carrier transportation charges
described herein.  I certify that this voucher is true and correct to the
best of my knowledge and belief, and that payment or credit has not been
received by me.  When applicable, per diem claimed is based on the
average cost of lodging incurred during the period covered by this voucher.

| CERTIFICATION SIGNATURE | DATE OF CERTIFICATION | VOUCHER AMOUNT |
|---|---|---|
| BERNADETTE S BILLY-LERA | 08/16/2001 | $ 1,928.74 |

*372*

```
TRAVEL VOUCHER FOR:   BERNADETTE S BILLY-LERA
                      SSN:

                      FOR TRAVEL PERIOD 08/06/2001 TO 08/11/2001

      ADDRESS FOR THIS VOUCHER
      ------------------------
                                              POST OF DUTY:
                                              RESIDENCE:
```

| TRAVEL AUTHORIZATION | AUTH DATE | AUTHORIZED FROM | TO | TYPE OF AUTHORIZATION |
|---|---|---|---|---|
| GTO #2 | 01/01/1991 | 08/06 | 08/11 | GENERAL TRAVEL ORDER #2 |

```
                      GTRS / TICKETS
                      --------------

HOW PAID: EMP GOVT CR CARD          DATE: 08/03/2001   AMOUNT: $   288.50
```

| ORIGINATION | DESTINATION | CARRIER USED | CLASS SERVICE |
|---|---|---|---|
| JAMAICA, NY | SAN FRANCISCO, CA | UNITED | COACH/PULLMAN |
| SAN FRANCISCO, CA | JAMAICA, NY | UNITED | COACH/PULLMAN |
| SAN FRANCISCO, CA | JAMAICA, NY | UNITED | COACH/PULLMAN |

```
HOW PAID: EMP GOVT CR CARD          DATE: 08/10/2001   AMOUNT: $    45.75
```

| ORIGINATION | DESTINATION | CARRIER USED | CLASS SERVICE |
|---|---|---|---|
| QUEENS, NY | WASHINGTON, DC | DELTA | COACH/PULLMAN |

```
                            EXPENSES
                            --------
```

| DATE | DESCRIPTION | MILEAGE | SUBSISTENCE | OTHER |
|---|---|---|---|---|
| 08/06 | PAID $3.00 TOLLS AND 22.43 FOR GAS | | | 25.43 |
| | TAXI | | | |
| | TAXI TO KENNEDY AIRPORT IN NY | | | 35.00 |
| | RODE WITH SOMEONE | | | |
| | RODE WITH SOMEONE | | | |
| | COMMERCIAL PLANE - CREDIT CARD | | | 288.50 |
| | TAXI | | | |
| | TAXI FROM AIRPORT TO HOTEL | | | 45.00 |
| | TELEPHONE BOOTH | | | |
| | NON-REFUNDABLE TRANSACTION FEE TO | | | 5.00 |
| | SATO TRAVEL FOR TICKET | | | 13.62 |
| | LODGING TAX/HOTEL ENERGY | | | |
| | SURCHARGE | | | 2.57 |
| | DEPARTED: 05:00AM | | | |
| | DESTINATION:  SAN FRANCISCO, CA | | | |

*373*

EXPENSES

| DATE | DESCRIPTION | MILEAGE | SUBSISTENCE | OTHER |
|------|-------------|---------|-------------|-------|
| 08/06 | SUBSISTENCE: (MAX RATE $205.00) | | 193.50 | |
| | LODGING: $159.00 | | | |
| | M&IE:    $ 34.50 FOR 3/4   DAY | | | |
| | NOTE: FLEW OUT OF JAMAICA | | | |
| 08/07 | TAXI | | | |
| | TAXI TO AUDIT | | | 45.00 |
| | TAXI | | | |
| | TAXI FROM AUDIT | | | 40.00 |
| | TELEPHONE BOOTH AND HOTEL PHONE | | | 6.50 |
| | LODGING TAX/HOTEL ENERGY | | | 6.50 |
| | SURCHARGE | | | 2.57 |
| | LOCATION:  SAN FRANCISCO, CA | | | |
| | SUBSISTENCE: (MAX RATE $205.00) | | 205.00 | |
| | LODGING: $159.00 | | | |
| | M&IE:    $ 46.00 FOR FULL DAY | | | |
| 08/08 | TAXI | | | |
| | TAXI TO AUDIT | | | 45.00 |
| | TAXI | | | |
| | TAXI FROM AUDIT | | | 40.00 |
| | TELEPHONE CALLS | | | 25.16 |
| | LODGING TAX/HOTEL ENERGY | | | 2.57 |
| | SURCHARGE | | | |
| | LAUNDRY | | | 13.50 |
| | LOCATION:  SAN FRANCISCO, CA | | | |
| | SUBSISTENCE: (MAX RATE $205.00) | | 205.00 | |
| | LODGING: $159.00 | | | |
| | M&IE:    $ 46.00 FOR FULL DAY | | | |
| 08/09 | TAXI | | | |
| | TAXI TO AUDIT | | | 46.00 |
| | TAXI | | | |
| | TAXI TO HOTEL FROM AUDIT | | | 42.00 |
| | TELEPHONE CARD | | | 5.00 |
| | LODGING TAX/HOTEL ENERGY | | | 2.57 |
| | SURCHARGE | | | |
| | LOCATION:  SAN FRANCISCO, CA | | | |
| | SUBSISTENCE: (MAX RATE $205.00) | | 205.00 | |
| | LODGING: $159.00 | | | |
| | M&IE:    $ 46.00 FOR FULL DAY | | | |
| 08/10 | TAXI | | | |
| | TAXI TO REP OFFICE FOR REPORT | | | 45.00 |
| | TAXI | | | |
| | TAXI FROM AUDIT TO HOTEL | | | 40.00 |
| | TAXI | | | |
| | TAXI FROM HOTEL TO AIRPORT | | | 45.00 |
| | COMMERCIAL PLANE ~ CREDIT CARD | | | |
| | TAXI | | | |
| | TAXI TO REP | | | 45.00 |

*374*

EXPENSES
--------

| DATE | DESCRIPTION | MILEAGE | SUBSISTENCE | OTHER |
|------|-------------|---------|-------------|-------|
| 08/10 | TAXI | | | |
| |     TAXI FROM REP TO HOTEL | | | 40.00 |
| | TAXI | | | |
| |     TAXI FROM HOTEL TO AIRPORT | | | 45.00 |
| | COMMERCIAL PLANE - CREDIT CARD | | | |
| | TAXI | | | 35.00 |
| |     TAXI FROM JFK TO BROOKLYN. | | | |
| |     ARRIVAL TIME FROM S.F APPROX 11PM. | | | |
| |     SPENT NIGHT NY | | | |
| | TAXI | | | 35.00 |
| |     TAXI TO LAGUARDIA(8/11)TRAS WILL | | | |
| |     INCLUDE MI&E FOR 8/11,EXP INPUT | | | |
| |     ON 8/10 | | | |
| | COMMERCIAL PLANE - CREDIT CARD | | | 45.75 |
| | TAXI | | | 55.00 |
| |     TAXI TO RESIDENCE | | | |
| | ARRIVED AT POD/RES: 12:00PM | | | |
| | SUBSISTENCE: (MAX RATE $205.00) | | | |
| |     M&IE:   $ 34.50 FOR 3/4  DAY | | 34.50 | |
| | NOTE: FLEW OUT OF QUEENS | | | |
| | NOTE: FLEW INTO JAMAICA | | | |
| | TOOK EXPENSES INCURRED ON 8/11 TO 8/10 | | | |
| |     DATE TO AVOID MI&E INCLUSION ON 8/11 | | | |

| | MILEAGE | SUBSISTENCE | OTHER |
|--|---------|-------------|-------|
| COLUMN TOTALS | 0.00 | 843.00 | 1,161.74 |
| GRAND TOTAL | | | 2,004.74 |
| | | | ========= |

COST IDENTIFICATION

| OFFICE CODE | ACTIVITY CODE | APPROP CODE | PURPOSE CODE | PROG/PROJ NUMBER | PROJ TRACK | COST |
|-------------|---------------|-------------|--------------|------------------|------------|------|
| S39Q | 7G | 0913 | C | | | $ 2,004.74 |

*375*

```
TRAVEL VOUCHER FOR:  BERNADETTE S BILLY-LERA
                SSN:

        FOR TRAVEL PERIOD 08/05/2001 TO 08/11/2001

ADDRESS FOR THIS VOUCHER
------------------------
  15910 ELF STONE COURT              POST OF DUTY: WASHINGTON
                                     RESIDENCE:    BOWIE
  BOWIE, MD  20716-0000
```

```
                           AUTH     AUTHORIZED
                           DATE    FROM    TO
TRAVEL AUTHORIZATION                               TYPE OF AUTHORIZATION
---------------------      -------- -----  -----   -----------------------------
GTO #2                     01/01/1991 08/05  08/11  GENERAL TRAVEL ORDER #2
```

                          GTRS / TICKETS
                          --------------

HOW PAID: EMP GOVT CR CARD            DATE: 08/03/2001   AMOUNT: $   288.50

| ORIGINATION | DESTINATION | CARRIER USED | CLASS SERVICE |
|-------------|-------------|--------------|---------------|
| BROOKLYN, NY | SAN FRANCISCO, CA | UNITED | COACH/PULLMAN |

HOW PAID: EMP GOVT CR CARD            DATE: 08/11/2001   AMOUNT: $    45.75

| ORIGINATION | DESTINATION | CARRIER USED | CLASS SERVICE |
|-------------|-------------|--------------|---------------|
| SAN FRANCISCO, CA | WASHINGTON, DC | DELTA | COACH/PULLMAN |

                              EXPENSES
                              --------

| DATE | DESCRIPTION | MILEAGE | SUBSISTENCE | OTHER |
|------|-------------|---------|-------------|-------|
| 08/05 | RODE WITH SOMEONE | | | |
| | RODE WITH SOMEONE | | | |
| | PRIVATE AUTO    65 MI. at .345 | 22.43 | | |
| | LEFT NY ON 08/06/01 FOR CA | | | |
| | TOLLS | | | 3.00 |
| | DEPARTED: 01:00PM | | | |
| |   DESTINATION:  BROOKLYN, NY | | | |
| | SUBSISTENCE: (MAX RATE $216.00) | | 34.50 | |
| |   M&IE:  $ 34.50 FOR 3/4  DAY | | | |
| 08/06 | COMMERCIAL PLANE - CREDIT CARD | | | 288.50 |
| | TAXI | | | 35.00 |
| |   TAXI TO THE AIRPORT FOR CA. | | | |
| | TAXI | | | 45.00 |
| |   TAXI FROM AIRPORT TO HOTEL | | | |
| | TELEPHONE BOOT | | | 5.00 |
| | LODGING TAX/HOTEL ENERGY | | | 2.57 |
| |   SURCHARGE | | | |
| | NON-REFUNDABLE TRANSACTION FEE TO | | | 13.62 |
| |   SATO TRAVEL FOR TICKET | | | |
| | DESTINATION:  SAN FRANCISCO, CA | | | |

*376*

## EXPENSES

| DATE | DESCRIPTION | MILEAGE | SUBSISTENCE | OTHER |
|------|-------------|---------|-------------|-------|
| 08/06 | SUBSISTENCE: (MAX RATE $205.00) | | 205.00 | |
| | LODGING: $159.00 | | | |
| | M&IE:   $ 46.00 FOR FULL DAY | | | |
| 08/07 | TAXI | | | 45.00 |
| | TAXI TO AUDIT | | | |
| | TAXI | | | 40.00 |
| | TAXI FROM AUDIT SITE | | | |
| | PHONE BOOTH AND HOTEL PHONE | | | 6.50 |
| | LODGING TAX/HOTEL ENERGY | | | 2.57 |
| | SURCHARGE | | | |
| | LOCATION:  SAN FRANCISCO, CA | | | |
| | SUBSISTENCE: (MAX RATE $205.00) | | 205.00 | |
| | LODGING: $159.00 | | | |
| | M&IE:   $ 46.00 FOR FULL DAY | | | |
| 08/08 | TAXI | | | 45.00 |
| | TAXI TO AUDIT SITE | | | |
| | TAXI | | | 40.00 |
| | TAXI TO THE HOTEL FROM AUDIT | | | |
| | TELEPHONE CALLS | | | 25.16 |
| | LODGING TAX/HOTEL ENERGY | | | 2.57 |
| | SURCHARGE | | | |
| | LAUNDRY | | | 13.50 |
| | LOCATION:  SAN FRANCISCO, CA | | | |
| | SUBSISTENCE: (MAX RATE $205.00) | | 205.00 | |
| | LODGING: $159.00 | | | |
| | M&IE:   $ 46.00 FOR FULL DAY | | | |
| 08/09 | TAXI | | | 46.00 |
| | TAXI TO AUDIT | | | |
| | TAXI | | | 42.00 |
| | TAXI FROM AUDIT TO HOTEL | | | |
| | TELEPHONE CARD | | | 5.00 |
| | TAXI | | | 45.00 |
| | TAXI TO AUDIT | | | |
| | SUBWAY/COMMUTER TRAIN | | | 2.00 |
| | RIDE WITH SOMEONE | | | |
| | LODGING TAX/HOTEL ENERGY | | | 2.57 |
| | SURCHARGE | | | |
| | LOCATION:  SAN FRANCISCO, CA | | | |
| | SUBSISTENCE: (MAX RATE $205.00) | | 205.00 | |
| | LODGING: $159.00 | | | |
| | M&IE:   $ 46.00 FOR FULL DAY | | | |
| 08/10 | TAXI | | | 45.00 |
| | TAXI TO AIRPORT | | | |
| | TAXI | | | 35.00 |
| | TAXI FROM AIRPORT IN NY TO | | | |
| | BROOKLYN | | | |
| | LOCATION:  SAN FRANCISCO, CA | | | |

*377*

EXPENSES
--------

| DATE | DESCRIPTION | MILEAGE | SUBSISTENCE | OTHER |
|------|-------------|---------|-------------|-------|
| 08/10 | S ISTENCE: (MAX RATE $205.00) | | 46.00 | |
| | M&IE:   $ 46.00 FOR FULL DAY | | | |
| 08/11 | T. XI TO LAGUARDIA AIRPORT | | | 35.00 |
| | C ERCIAL PLANE - CREDIT CARD | | | 45.75 |
| | T. PURCHASED IS FROM NY TO | | | |
| | 3HINGTON | | | |
| | T. XI FROM NATIONAL AIRPOT TO | | | 55.00 |
| | SIDENCE | | | |
| | A VED AT POD/RES: 09:15PM | | | |
| | S ISTENCE: (MAX RATE $205.00) | | 34.50 | |
| | M&IE:   $ 34.50 FOR 3/4  DAY | | | |
| | COLUMN TOTALS | 22.43 | 935.00 | 971.31 |

378

### *** ADVANCE APPLICATION ***

RAVEL ADVANCE OUTSTANDING ACCORDING
TO ACCOUNTING RECORDS                          $  3,571.15

RAVEL ADVANCE OUTSTANDING ACCORDING
TO TRAVELER'S RECORDS                          $  3,559.15

OTAL AMOUNT OF THIS VOUCHER                     $  1,928.74

MOUNT OF THIS VOUCHER TO BE APPLIED
TO THE OUTSTANDING ADVANCE                      $  1,928.74

MOUNT OF OUTSTANDING ADVANCE TO BE
PAID BY CHECK OR MONEY ORDER                    $     0.00

HE NEW OUTSTANDING ADVANCE WILL BE              $  1,630.41

HE AMOUNT OF THE REIMBURSEMENT CHECK
FROM THIS VOUCHER WILL BE                       $     0.00

ollow procedures outlined in IRM 1763 Section 316 (2)
o resolve outstanding advance discrepancies.

### COST IDENTIFICATION

| O  CE E | ACTIVITY CODE | APPROP CODE | PURPOSE CODE | PROG/PROJ NUMBER | PROJ TRACK | COST |
|---|---|---|---|---|---|---|
| S3 | 7G | 0913 | C | | | $ 1,928.74 |

NOTE   Falsification of an item in an expense account works a forfeiture
of claim (28 U.S.C.2514) and may result in a fine of not more
than $10,000 or imprisonment of not more than 5 years or both
(18 U.S.C.287; I.D. 1001).

I he by assign to the United States any right I may have against other
part   in connection with reimbursable carrier transportation charges
desc   ed herein. I certify that this voucher is true and correct to the
best   my knowledge and belief, and that payment or credit has not been
rece   d by me. When applicable, per diem claimed is based on the
aver   cost of lodging incurred during the period covered by this voucher.

| CERT  CATION SIGNATURE | DATE OF CERTIFICATION | VOUCHER AMOUNT |
|---|---|---|
| BERN  TTE S BILLY-LERA | 08/16/2001 | $ 1,928.74 |

*379*

your help.
Jeannie

-----Original Message-----

| | |
|---|---|
| From: | Stephens Evelyn M |
| Sent: | Monday, October 01, 2001 12:30 PM |
| To: | Fisher Jeannie B |
| Cc: | Billy-Lera Bernadette |
| Subject: | Travel Issue |

Jeannie,

I regret to have to involve you with a travel issue that I think is simple but complex in terms of past practices and prior approval.  I am  elevating this situation to you as information and input if you deem necessary.

Bernadette has three vouchers (1 TRAS, 2 manual) that's pending approval at date.  Her previous manager had some questions on one of the voucher (TRAS Voucher) and did not approve.  I have asked her to remove some expenses (M.& IE for the period in N.Y.)and she has agreed.  After the questionable expenses are removed, I will approve that voucher.  The others I have asked for a written explanation why she traveled to and New York for business to her audits.

Bernadette is a seasoned and experienced Revenue Agent that has been traveling from New York to some of her audit sites for some time.  Most of the travel from New York was for west coast and/or overseas travel.  Bernadette has advised me that a previous manager, John Hawley, O.K.ed her traveling from New York.  Her last manager approved her  vouchers in the same manner.  Her reasons for traveling from New York instead of Washington/National or BWI was based on cost and travel accommodations, it was cheaper to travel from New York.  In addition, due to problems experienced with connecting flights, she flew direct from New York.

I have discussed with Bernadette travel guidelines and advised her to fly from the Washington area on workdays unless approved is granted otherwise.   When I review a voucher I look at ALL cost, the M &IE, time, and airline cost in determining if it's cheaper.  The R/A's time is very key in this review, per my understanding.

The manual voucher will be approved based on my understanding of the travel guidelines,past practice and approval.

Please advise if think I am not handling this correct.

*Evelyn M. Stephens*
*International Acting Manager  1111/2111*
*202-874-1683*

*380*

**Internal Revenue Service**
**MEMORANDUM**

to:     Bernadette Billy-Lera
        Revenue Agent

date:   October 1, 2001

from:   Evelyn M. Stephens,
        Acting Manager 1111

Subject: Performance of Travel

Bernadette, this memorandum is written to recap our discussion of
expenses claimed on a TRAS voucher for the periods August 5-11, 2001,
and two manual vouchers for the periods July 19 through August 3, 2001,
and August 19-31, 2001. When you make the discussed changes to these
vouchers, I will approve them.

The main issue discussed concerned you flying out of New York directly
to San Francisco and other audit locations instead of the Washington D.C
area. Your tax home is Bowie, MD and business office is Washington
D.C., which means you, should be flying from these areas directly to your
audits. You stated you chose to fly out of New York JFK mainly because
of the direct fly service and arrival and departure times in and out of
San Francisco.

IRM 1763 section 410 provides general guidelines for scheduling travel
and section 431 provides general guidelines on common carrier Service.
Please reframe from using the previous practice of flying out of New York
instead of local airports. If you have a situation that requires you to fly
different than the travel guidelines, please get manager approval.

If you have any questions on this memorandum or need to discuss the
subject further please let me know.

_381_

Bernadette Kelly-Spica                California trip
August 19 - 31, 2001

August 19, Tuesday 3:30 pm leaved C to N.Y.

August 20, Monday 1:00 noon leave N.Y. to LA
LA to Honolulu    Honolulu 7:41

Why didn't you leave N Y around 9 AM?
or
leave D C @ ~~around~~ 8 Am

August 29
Wednesday    12 noon leave ~~Honolulu~~ to SF
8/30    L SF    to N Y   why
Why not fly back to Washington

Change discussed
ends

382

- Travel Vouchers — England trip
  July 19 - August 3, 2001

Expenses 7/19/2001

7/19/2001 Thursday  Taxi to Brooklyn — $35.00
  "  "  JFK — 30.00
  Airfare to NY  93.00
7/20  Taxi to JFK — 30.00

8/2  Taxi to Brooklyn — 30.00
  "  "  the Studio — 35.00

- ?? M I & E on 7/19 & 8/3/00

  Travel date 7/19 or 7/20 — not ~~both~~

??? Same thing on the return — 8/2
  " " full day travel  no expenses for
  M I & E on 8/3

It appears the
$2,161.50 receipt
exclude food cost included (to) plus
lodging.

135
13
405
35
1955 lodging

383

MEMORANDAUM

Date: October 1, 2001

To: Evelyn Stephens, Acting Group Manager, Group 1111

From: Bernadette Billy-Lera, Revenue Agent, Group 1111

---

Ref.: Travel Vouchers dated 8/19/2001 – 8/31/2000 & 7/19/2001 –8/3/2001

Per our discussion pertaining to the travel voucher dated 7/19/200 to 8/3/2000 to London, United Kingdom the following applies:

- Due to reasonable accommodations, and the time factor of the flights from New York City, this is the route I usually take travelling to the United Kingdom. Travel to London taking this route was always approved on prior vouchers.

- Travel dated 8/19/2001 – 8/31/2001 from Washington to Honolulu  the following

- Honolulu is in the Pacific Time zone, 6 hours behind Eastern Standard Time. San Francisco is 3 hours behind Eastern Standard Time. Per Sato travel I was told that all flights from Honolulu to San Francisco does not leave until noon. Upon my arrival in San Francisco 7: 49p.m. (San Francisco Time) it was necessary to spend the night in San Francisco instead of travelling to my POD.

*384*

**Stephens Evelyn M**

| | |
|---|---|
| **From:** | Moss Ellis D |
| **Sent:** | Tuesday, October 02, 2001 5:04 PM |
| **To:** | Stephens Evelyn M |
| **Cc:** | Billy-Lera Bernadette |
| **Subject:** | TRAS Voucher |

The TRAS voucher for Bernadette has not been signed.  Therefore you will not be able to approve the voucher until she has done so.

Ellis Moss
TRAS Administrator

1

*385*

**Internal Revenue Service**
**MEMORANDUM**

to:   Bernadette Billy-Lera

date:   October 30, 2001

from:   Evelyn M. Stephens, Acting Manager 1111

Subject:   Travel and Relocation Issues

Bernadette, first I would like to address the manner/form of
communications on the above subject. I prefer face to face discussion that
affords each person involved the opportunity to ask questions and
exchange information for a clear understanding, to be on one accord. I
issued the memorandums on the subject because I am acting and my detail
will be ending November 30,2001 and I wanted the permanent manager to
have documentation on the discussion and for follow-up, if necessary.

Second, in regards to the date you submitted your vouchers to me, you
were instructed to take the New York travel expenses off the TRAS
voucher by Acting Manager, Robert Mosley. When I received the TRAS
and manual vouchers, they all had New York expenses on them that were
questionable and required corrections and/or explanation. When you
revised the TRAS voucher and re-entered it, you locked the voucher,
which prevented me from approving. I call the TRAS Coordinator, Ellis
Moss and asked him to unlock your voucher. Mr. Moss sent you a
message with a copy to me that your voucher was locked and unsigned. I
also called you at home on two occasions and left messages that I had
questions on your vouchers. Bernadette, I was disappointed that you
would state I did not timely approve your voucher when they were
submitted with expenses that had to be corrected by you. In addition, you
duplicated expenses on the voucher dated 7/19-8/3/01, you claimed meal
expenses that was on your hotel bill in addition to the maximum meal
allowance per day for the area. Please know I would have approved your
voucher if you had followed your previous manager instruction, removed
the New York expenses and filed them without questions and errors. It is
true one of your manual vouchers, was approved without you making
corrections, even though you were asked to correct. I approved because of
the problem you stated you was experiencing with the government credit
card company, the cut-off of travel due to fiscal yearend, and for the good
of the service. The same questionable expenses were on that voucher. I
concluded to approve and issue the memorandum. I also suggested you
submit an advance to pay the credit card bill during one of our discussions.

386

-2-

Third, you may be correct in that your tax home is not reference in the travel manual, however, the bottom line is **ALL** expenses associated with you flying out of an airport not in the area of your official duty station must be considered. When we discussed this issue, you did not consider your **time, MI & E**, and **additional local transportation** where you stated in New York.

Fourth, I am sorry you feel that following the travel requirements in claiming expenses are retaliatory measures. The corrections had to be made because approving a voucher means you agree. I am here to provide support, leadership, and assistance, not to punish. I am an adult and a professional. I do not practice the inhuman behavior you stated, "punish". The discussions and memorandums on the subject were not meant to insult you or be offense, as you stated in your memorandum.

Finally, your previous manager, Robert Mosley, asked you to resolve and/or repay the government for the outstanding relocation expenses in the meeting over six week ago. It is my understanding you are working with someone on resolving the issue. I asked you to provide me with an update with supporting documents to demonstrate the issue is being resolved. See memorandum to you dated October 25, 2001; subject "Outstanding Moving Expenses". I am still waiting for you to comply with the request. The memorandum dated October 29, 2001 does not satisfy my request, there was no documentation attached.

I am sending territory manager, Jeannie Fisher and area director, Richard Valdez a copy of this memorandum because you sent them a copy of your memorandum stating I untimely approved your voucher, which is NOT the total truth. The vouchers contained questionable, duplicated, and/or unallowable expenses that created the delay in approving. I am hopeful you will not have to involve upper management with issues of this kind and we work together to resolve any differences, if any.

CC:  Jeannie Fisher
     Richard Valdez

*389*