UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
Bernadette S. Billy-Lera,                    )
   Plaintiff                                     )
                                )                  CA No.  05-1273 (JR)
      vs.                                     )
                                )
John W. Snow, Secretary                   )
US Department of the Treasury,      )
   Defendant                                )
_____ )

**Response to the Defendant's Motion for Summary Judgment**

      The Plaintiff, Bernadette Billy-Lera, through counsel, hereby opposes the

Defendant's motion for summary judgment.  Defendant contends, in essence, that the actions and

omissions alleged by Plaintiff to have been done to her by discriminatory officials at the Internal

Revenue Service ("IRS" or "agency") do not rise to the level of harm that is cognizable under

Title VII.  The Plaintiff responds that the totality of actions taken against her constitutes harm

and loss with respect to a term, condition, or privilege of employment as a result of prohibited

discrimination.  See *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205 (1972).

      Plaintiff's responsive pleading is supported, *inter alia*, by a 35-page sworn statement

from the Plaintiff (attached as Exhibit A) that enumerates harms, including harassment, that were

done to her by the agency's alleged discriminatory officials, principally Evelyn Stephens.  Under

1

Fed. R. Civ. P. 56, Plaintiff's statement is entitled to be taken at face value when evaluating and assessing the Defendant's Motion for Summary Judgment.  Plaintiff's responsive pleading is also supported by references to the Report of Investigation ("ROI") that was compiled by the agency's EEO investigator and by a sworn statement from a mortgage banker, attached as Exhibit B, who specifically verifies the Plaintiff's allegation that the suspension of her government credit card visited specific and serious harm upon her.

**Applicable Law**

Terms, conditions, or privileges of employment include hiring, termination, compensation, promotion, demotion, discipline, reasonable accommodation, appraisals, awards, training, benefits, assignments, overtime, leave and tours of duty. *Dyess v. U.S. Postal Service*, EEOC Appeal No. 01964103 (April 28, 1997).  Adverse employment actions extend beyond readily measurably losses, although minor or trivial employee complaints cannot form the basis of a discrimination suit.  *Williams v. Bristol Myers Squibb Co.*, 85 F. 3d 270 (7th Cir. 1996).

Harassment prohibited by Title VII consists of conduct that has the effect of interfering with an employee's work performance, or of creating an intimidating, hostile or offensive work environment.  The complained of conduct must be significant enough to alter the conditions of employment. *Hicks v. Gates Rubber Co.*, 833 F.2d 1406 (10th Cir. 1987); *Snell v. Suffolk Co.*, 782 F2d. 1094 (2nd Cir. 1986); *Rogers v. EEOC*, 454 F.2d 234 (5th Cir. 1974), cert denied, 406 U.S. (1972).

In determining whether a hostile environment is created sufficient to alter the conditions of employment, all of the circumstances and allegations must be reviewed in their totality,

2

including frequency and severity of conduct, and the question must be answered whether this conduct reasonably interferes with work performance.   No single factor is required.  *Harris v. Forklift Systems*, 510 U.S. 17 (1993).  A harassment complaint should not be dismissed for failure to state a claim unless it appears beyond reasonable argument that the plaintiff cannot prove a set of facts in support of the claim which would entitle the plaintiff to relief.  Further, all of the alleged harassing incidents must be viewed in the light most favorable to the plaintiff.  *Id.*

Federal employees may not be discriminated against because of their participation in Title VII activity.  Specifically prohibited is any adverse treatment that is based on a retaliatory motive that is "likely to deter the charging party or others from engaging in protected activity."  *EEOC Compliance Manual*, Section 8 (Retaliation) at page 8 (May 20, 1998).

Harassment is verbal or physical conduct that has the purpose or effect of creating an intimidating, hostile or otherwise untenable working environment; has the purpose or effect of unreasonably interfering with an individual's work performance; or otherwise adversely affects an individual's employment.  29 CFR Section 1606.8(b)(1).   Conduct is actionable for harassment based on all of the circumstances of the case with special emphasis on whether the conduct unreasonably compromises an individual's ability to perform his or her job.  See *Harris v. Forklift Systems*, supra; *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

Harassment that would not occur but for a prohibited motive is unlawful if it is sufficiently patterned, pervasive, or severe enough to significantly and adversely affect the employee's emotional or psychological well being, although a single incident is generally not sufficient to rise to such a level.  *EEOC Compliance Manual,* supra.

The Supreme Court recently gave employees substantially enhanced protection against

retaliations for complaining about discrimination on the job.  Justice Breyer wrote the opinion in

the case *Burlington Northern & Santa Fe Railway Company v. White* (No. 05-259).  The *White*

case interpreted the ant-retaliation provision in Title VII of the Civil Rights Act of 1964 and

defined retaliation broadly as any "materially adverse" employment action that "might have

dissuaded a reasonable worker" from making the complaint.  Id.


**Competing Factual Allegations**

Whether or not harm to the Plaintiff's credit rating is sufficient to sustain a cause of

action under Title VII is, as far as I can determine, a question of first impression in this Circuit.

In any event, the Plaintiff makes a clear cut allegation: inappropriate delay in the processing of

her claim for reimbursement of official travel expenses resulted in the cancellation of her

government credit card.  This single action did significant damage to the Plaintiff's credit rating,

according to mortgage banker Aaron Asaraf.  See Exhibit B.  The magnitude of such harm is a

factual question that should be determined by a trier of act.  Similarly, whether or not the

suspension of the Plaintiff's credit card privileges was the result of discriminatory actions (in

contrast to a legitimate supervisory mistake) is a question of fact that should be determined by a

trier of fact.

The Defendant's summary judgment motion is premised on the over-arching theme that

the Plaintiff is a poor performing, rapacious and hectoring employee and, hence, that her

complaint is without merit.  To support the agency's motion, counsel largely relies on an artfully

drafted affidavit from Evelyn Stephens, the Plaintiff's supervisor and the alleged discriminatory

official in this matter.

Ms. Stephen's is not deserving of credibility. Indeed, one example that is contained in the ROI is sufficient to cast doubt on the credibility of the entirely of Ms. Stephens' statement. In her affidavit that is contained in the ROI, Ms. Stephens states that she removed a draft reprimand letter from the Plaintiff's Employee Personnel File (EPF). Indeed, Ms. Stephens stated in an affidavit that she "destroyed the original" in the Plaintiff's presence. Yet the EEO investigator, Nancy Dunford, found a **copy** of that same letter that was still in the EPF long after Ms. Stephens' claimed to have destroyed it. The investigator made a copy of that letter and documented her finding for the Investigative File. See Exhibit C, Extract of the ROI at 506. Further, two proposed witnesses of the Plaintiff -- Carolyn Pozorski and Jack Gregory -- are prepared to testify that Ms. Stephens has misused official personnel files on other occasions. The Agency's counsel asserts that the EPF is "solely the manager's file." Summary Judgment Memorandum at p. 31. This is misleading. Maintaining EPFs is a requirement of the Office of Personal Management with prescribed contents. Also, every EPF is a "complete system of records covered by the Privacy Act" and access by employees to these official agency records is a matter that has been negotiated between the National Treasury Employees Union and the agency. See Exhibit D, Extract from the IRS Internal Revenue Manual.

Summary judgment is appropriate only where there is no genuine issue of material fact. As affirmed in the attached affidavit from Ms. Billy-Lera, there are many areas of dispute between Ms. Billy-Lera and her manager that require specific findings of fact. Ms. Billy-Lera maintains that she is a productive employee who is only trying to do her job. The agency maintains otherwise.

Ms. Billy-Lera has established her prima facie case:

5

She is a member of a protective class, which is conceded by the agency.

She was performing her job in a satisfactory fashion, as demonstrated by her fourteen-year history of performance appraisals and performance awards and by the anticipated testimony of her former supervisors, Denis Bricker, Manual Brown and John Hawley.

She suffered a personal loss or harm with respect to a term, condition, or privilege of employment in that her completed cases were deliberately given an open status on agency computer files (thereby making it appear that her caseload is over-aged), her vouchers were deliberated delayed in processing (thereby causing her government credit card to be cancelled and rendering her unable to properly schedule business travel), and her departure rating unfairly disadvantaged her with regard to competing candidates for agency promotions.

Similarly situated employees not in a protected class were treated more favorably, as demonstrated by Ms. Billy-Lera's assertion that she was the **only** agent to be given a rated workload review by Mr. Mosley and her assertion that the travel vouchers of other agents do not suffer the same untoward delays.

and to assert that Ms. Billy-Lera's talents were needed elsewhere hardly meshes with the assertions throughout agency counsel's memorandum that she was contemptible.

Mr. Mosley's delays on Ms. Billy-Lera's travel vouchers were deliberate, vindictive, and retaliatory.  His response time on processing these documents increased dramatically after Ms. Billy-Lera's first contact with the EEO process. Ms. Billy-Lera submits that this is evidence of causation on her retaliation claim.  The departure rating given to Ms. Billy-Lera was improper in that it was never discussed with her.

6

For the foregoing reasons, the agency motion for summary judgment should be denied.


Respectfully submitted,

_____
Mark L. Leemon
11501 Georgia Ave., Suite 307
Wheaton, MD 20902
(301) 946-2112
DC Bar No. 338-699

*Certificate of Service*

I hereby certify that I mailed by first class mail a copy of the foregoing to defendant's

counsel on this ____ day of _____ 2006.

_____

Mark L. Leemon